50614-RET

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| B.F.G., by his parents and next friends, | ) | |
| R.G. and B.G., and R.G., and B.G., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| **v.** | ) | **08 C 1565** |
| | ) | |
| WILLIE BLACKMON, Investigator, Division | ) | JUDGE SUZANNE B. CONLON |
| Of Child Protection ("DCP"), of the Illinois, | ) | |
| Department of Children and Family Services | ) | MAGISTRATE JUDGE NOLAN |
| ("DCFS"), et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO DISMISS BY VILLAGE OF WILLOW SPRINGS, ROBERT TABORDON**
**AND CRAIG WIDLACKI**

Now come the Defendants, Village of Willow Springs ("Willow Springs"), Willow

Springs Police Detective Robert Tabordon ("Tabordon"), incorrectly sued as "Detective

Tibordan," and former Willow Springs Police Officer Craig Widlacki ("Widlacki") (collectively

"Defendants"), and hereby move the Court for an order dismissing specific portions of the

Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  In support thereof, Defendants state as follows:

**INTRODUCTION**

The Complaint asserts 16 Counts against various groups of defendants.  Regarding the

Defendants herein, Plaintiffs R.G., B.G., and B.F.G. (by his parents R.G. and B.G.) have brought

claims based on 42 U.S.C. § 1983 for substantive due process against Tabordon (Count IV),

based on 42 U.S.C. § 1983 for unlawful arrest against both Tabordon and Widlacki (Count V),

based on 42 U.S.C. § 1983 for conspiracy against both Tabordon and Widlacki regarding the

alleged unlawful arrest and the subsequent administrative hearing (Count VII), for state law

malicious prosecution against both Tabordon and Widlacki (Count VIII), for state law

conspiracy against both Tabordon and Widlacki regarding the alleged unlawful arrest and the subsequent administrative hearing (Count IX), for state law defamation per se against Widlacki only (Count X), for state law intentional infliction of emotional distress against Widlacki only (Count XI), and for state law false light invasion of privacy against Widlacki only (Count XII). Plaintiffs have also made state law claims against Willow Springs based on respondeat superior (Count XV) and for payment of damages under 745 ILCS 10/9-102 (Count XVI).

Reduced to its essence, the Complaint alleges that Widlacki on January 16, 2007, received a report from the parents of two children who alleged they had been sexually abused by B.F.G. while he babysat them. (Complaint at Para. 15-17). According to the Complaint, Widlacki contacted DCFS with this information on the same day. (Complaint at Para. 18). DCFS investigated and on January 25, 2007, found that the charge of sexual exploitation against B.F.G. was supported by credible evidence and was therefore "indicated." (Complaint at Para. 34). According to the Complaint, Widlacki arrested B.F.G. that same day at the direction of Tabordon, for sexual assault, although the Complaint claims this arrest was without probable cause. (Complaint at Para. 36). The Complaint alleges Widlacki later wrote a letter to B.F.G.'s school falsely stating B.F.G. was charged with criminal sexual assault. (Complaint at Para. 37). After the Cook County State's Attorney's Juvenile Division declined to charge B.F.G. with sexual assault, B.F.G. brought an administrative appeal to have the "indicated" finding expunged from the DCFS central register. (Complaint at Para. 36, 40). The complaint alleges that Tabordon and Widlacki conspired with other Defendants to prevent the administrative appeal from being fair. (Complaint at Para. 81). Although the Complaint alleges many specific acts on the part of other defendants that made the hearing unfair (Complaint at Para. 42), the complaint does not allege that Tabordon or Widlacki actually performed any of these acts.

2

For the reasons set forth below, the claims against Tabordon, Widlacki and Willow Springs must be dismissed with prejudice. Additionally, Plaintiffs' prayers for relief seeking attorneys' fees for the state law claims must be dismissed.

**ARGUMENT**

A.    **COUNT IV AGAINST TABORDON FOR SUBSTANTIVE DUE PROCESS FAILS BECAUSE BY STATUTE, DCFS, RATHER THAN THE POLICE, DETERMINE WHETHER A CHARGE IS "INDICATED."**

Plaintiffs allege that Willow Springs Detective Tabordon violated B.F.G.'s liberty interest without due process by "indicating" him on charges of sexual exploitation without credible evidence. However, by statute, the "indicated" determination is made by DCFS employees rather than the police.  Illinois statute requires that "the Child Protective Service Unit shall determine, within 60 days, whether the report [of abuse or neglect] is 'indicated' or 'unfounded' and report it forthwith to the central register." 325 ILCS 5/7.12. The statute defines "Child Protective Service Unit" as "certain specialized State employees of the Department [of Children and Family Services] assigned by the Director to perform the duties and responsibilities as provided under Section 7.2 of this Act [which instructs the DCFS employees to perform the functions the Act assigns them and only such others as would further the purposes of the Act.]"

As alleged by the complaint, Tabordon was a Willow Springs police detective, not a member of the Child Protective Service Unit or DCFS, which makes the determination of whether a charge is "indicated." Even assuming the determination that a charge was "indicated" violated B.F.G.'s rights, the facts alleged by the Complaint show Tabordon was not a member of the group that made that determination. As such, the claim against Tabordon based on the "indicated" finding must fail.

3

B.    **COUNT V AGAINST BOTH TABORDON AND WIDLACKI FOR UNLAWFUL ARREST FAILS BECAUSE PROBABLE CAUSE IS APPARENT ON THE FACE OF THE COMPLAINT.**

If probable cause exists for an arrest, that probable cause serves as an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution. *Jerricks v. Bresnahan*, 880 F. Supp. 521 (D. Ill. 1995). Accordingly, Plaintiffs allege that Tabordon and Widlacki caused B.F.G. to be arrested without probable cause. "[S]o long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest." *Jenkins v. Keating,* 147 F.3d 577, 585 (7th Cir. 1998). This holds true in sexual assault cases, such as *Jerricks v. Bresnahan*, 880 F. Supp. 521 (D. Ill. 1995), where the court held the oral and written statements of the victim provided probable cause for the arrest of the accused.

In another case, the court held that "The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. If so, the arrest is lawful even if the belief would have been mistaken. Thus probable cause has been described as a zone within which reasonable mistakes will be excused." *Kelley v. Myler*, 139 F.3d 641, 646 (7th Cir. 1998). In *Kelley*, the court held that police had probable cause to arrest an alleged trespasser, who turned out to be violating no law, having in fact been on the public right-of-way. *Id.* at 644. In making its determination, the court considered whether the officers were reasonable in believing the crime had been committed, based on what they observed or were told by third parties they had reason to believe were telling the truth. *Id.* at 647. The court noted "this fact-intensive, on-the-spot determination of probable cause often involves an exercise of judgment, which turns on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules. Therefore, courts evaluate probable cause not on the facts as

4

an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer - seeing what he saw, hearing what he heard." *Id.* at 646.

According to the Plaintiffs' allegations in our own case, the parents of the alleged victims reported their children's detailed accusations to Widlacki. These included that the children had been abused by B.F.G., who while babysitting, had forced toy objects into the anuses of both children, made one child do naked flips during games of truth or dare, and that B.F.G. had committed some of these acts upon and in the presence of his own younger siblings. (Complaint at Para. 15-16). According to Plaintiffs' complaint, Widlacki contacted DCFS with the allegations of abuse. (Complaint at Para. 18). Although not mentioned in Plaintiffs' Complaint, this reporting is required by statute (see 325 ILCS 5/4, discussed in more detail below). DCFS investigated by, among other things, interviewing all four of the alleged victims. (Complaint at Para. 19, 28). Following these interviews, DCFS on January 25, 2007, found that a charge of sexual exploitation against B.F.G. was supported by credible evidence, and was therefore "indicated." (Complaint at Para. 34). The complaint then alleges that Widlacki, at the direction of Tabordon, arrested B.F.G. that same day, but without probable cause. (Complaint at 36).

The complaint alleges that before B.F.G.'s arrest, DCFS failed to collect or examine certain competing evidence during its investigation, and that Widlacki failed to forensically test the two toys he was given, which purportedly had been inserted into one child's anus. (Complaint at Para. 17, 27). However, in *Kelly*, the Plaintiff claimed she told the officers that she was on the public right-of-way, and the officers failed to investigate this assertion before arresting her. *Kelly* at 646. The court refused to add such an "extra requirement" to the probable cause determination, but rather decided that if an officer had established probable cause that a

5

crime had been committed, "he need not continue investigating in order to test the suspect's claim of innocence." *Id.*

Similarly in *Collier v. Baker*, 1999 U.S. Dist. Lexis 11373, the Plaintiff was arrested for carjacking and sexual assault based on the victim's identification of him and the fact that his business card holder was recovered from the stolen car. Plaintiff contended there was no probable cause for his arrest a month later, arguing that if the defendants had conducted a better investigation in the intervening period, they would have learned that he had a solid alibi and that that information would have destroyed probable cause. The court held that "all of that may be true. But, [Plaintiff] does not have a constitutional right to perfect or immediate police work; the police are under no obligation to investigate a crime after probable cause exists." *Id.* at 11-12.

As in *Kelly* and *Collier*, Plaintiffs in this case cannot destroy probable cause by alleging DCFS or even the Willow Springs police officers should have investigated differently or collected additional evidence. According to the complaint, the parents of the children B.F.G. allegedly sexually abused reported their detailed allegations regarding the sexual abuse to Widlacki. Widlacki conveyed the sexual abuse allegations to DCFS. DCFS investigated and found a sexual exploitation charge against B.F.G. was supported by credible evidence and therefore "indicated." Widlacki arrested B.F.G. Based on the allegations in the Complaint and the case law cited, probable cause existed and the Plaintiffs' Section 1983 claim for unlawful arrest must fail.

## C.     COUNT VII AGAINST TABORDON AND WIDLACKI FOR CONSPIRACY FAILS BECAUSE THE ALLEGATIONS OF THE COMPLAINT SHOW NO AGREEMENT OR MEETING OF THE MINDS.

Plaintiffs allege that Tabordon and Widlacki conspired with other Defendants to cause B.F.G. to be falsely arrested, falsely "indicated" and deprived of his right to a fair administrative

hearing. If Counts IV and V fail, the conspiracy count as against Tabordon and Widlacki fails automatically, as it simply alleges that Tabordon and Widlacki conspired to perform the acts alleged in Counts IV and V.

Apart from this, a conspiracy to deprive a Plaintiff of Constitutional rights must include both "(1) an express or implied agreement among defendants to deprive plaintiff of secured [C]onstitutional rights and (2) an actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Fantasia v. Kinsella*, 956 F.Supp. 1409, 1415 (D. Ill. 1997). Plaintiffs' claims of conspiracy therefore fail for two reasons: (1) Plaintiffs' allegations show no agreement among Tabordon, Widlacki and the other Defendants, and (2) Plaintiffs allege no acts by Tabordon or Widlacki  that actually resulted in a deprivation of Constitutional rights.

Although Plaintiffs state that Tabordon and Widlacki acted in concert with the other Defendants, the facts as alleged by Plaintiffs show no agreement or meeting of the minds, the essential element of conspiracy. In fact, the only communication Plaintiffs allege between Tabordon and Widlacki and the other Defendants is Widlacki's report of the abuse allegations to DCFS, which is required by statute. "Any … law enforcement officer … having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to the Department [of Children and Family Services]." 325 ILCS 5/4. Far from serving as the basis of a conspiracy claim, the good-faith reporting required by law actually immunizes from liability the person making the report. "Any person … participating in good faith in the making of a report or referral shall have immunity from any liability, civil, criminal or that otherwise might result by reason of such actions. For the purpose of any proceedings, civil or criminal, the good faith of

any persons required to report or refer … cases of suspected child abuse or neglect … shall be presumed." 325 ILCS 5/9.

The allegations of the complaint give no other inference that Widlacki and Tabordon came to an agreement or reached a meeting of the minds with the other Defendants. Further, the facts alleged by the complaint show no overt act by Tabordon or Widlacki to falsely arrest, falsely indicate or deprive B.F.G. of his right to a fair administrative hearing. The allegations of false arrest and false "indication" are addressed above. Regarding the hearing, the allegations of the complaint state various overt acts that other Defendants performed to prevent B.F.G. from receiving a fair hearing. (Complaint at Para. 42).  However, neither Tabordon nor Widlacki performed any of these acts. Nevertheless, Plaintiffs in Count VII simply throw these two officers into the mix of individuals they allege participated in the conspiracy to deprive B.F.G of a fair administrative hearing. As such, the Plaintiffs' allegations show neither the agreement nor the overt acts resulting in actual deprivation of rights that would be needed to pursue a conspiracy count against Tabordon or Widlacki, and this count must fail.

**D.    COUNT VIII AGAINST TABORDON AND WIDLACKI FOR STATE LAW MALICIOUS PROSECUTION FAILS BECAUSE BY STATUTE, DCFS, RATHER THAN THE POLICE, DETERMINE WHETHER A CHARGE IS "INDICATED."**

The only allegation against Tabordon and Widlacki in this Count is that they falsely "indicated" charges against B.F.G. As explained above regarding Count IV, by statute, at 325 ILCS 5/7.12, the decision of whether a charge is "indicated" is made by DCFS employees rather than police officers. As such, the facts as alleged by Plaintiffs fail to show that Tabordon or Widlacki "indicated" charges against B.F.G., and this Count must be dismissed.

8

**E.      COUNT IX AGAINST TABORDON AND WIDLACKI FOR STATE LAW CIVIL CONSPIRACY FAILS BECAUSE THE ALLEGATIONS OF THE COMPLAINT SHOW NO AGREEMENT OR MEETING OF THE MINDS.**

Plaintiffs allege that Tabordon and Widlacki participated in a civil conspiracy with other Defendants under state law to cause B.F.G. to be falsely arrested, falsely "indicated" and deprived of his right to a fair administrative hearing. "In order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill.2d 102, 133 (1999). Because the state civil conspiracy claim, just as the federal conspiracy claim, requires an agreement and an act in furtherance of the agreement, Plaintiffs' state civil conspiracy claim fails for the same reasons (described above) that their federal conspiracy claim fails.

**F.      COUNT X AGAINST WIDLACKI FOR STATE LAW DEFAMATION PER SE FAILS BECAUSE WIDLACKI'S LETTER CONTAINS NO FALSE STATEMENT.**

Plaintiffs assert that Widlacki sent a letter to B.F.G.'s school administrators containing the false allegation that B.F.G. had been charged with sexual assault. (Complaint at Para. 37, 95). To state a claim for defamation, a plaintiff must set out sufficient facts to show that the defendants made a false statement concerning him, that there was an unprivileged publication to a third party with fault by the defendants, which caused damage to the plaintiff. *Krasinski v. United Parcel Service, Inc.*, 124 Ill.2d 483, 490 (1988).

In our own case, Plaintiffs do not attach a copy of the letter they allege contained the false statement that B.F.G. "had been charged with sexual assault."  Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the Plaintiff's Complaint and are central to his claim, so that the motion to dismiss is not converted into a motion for summary judgment. *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987

F.2d 429, 431 (7th Cir. 1993). This prevents a Plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves that his claim has no merit. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). When a document that is part of the pleading contradict the pleading to which it is attach, the document's facts or allegations trump those in the pleading. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004).

In this case, a copy of the May 8, 2007, letter through which Widlacki informed B.F.G.'s school of the sexual assault allegations is attached to this motion in Group Exhibit A. (Plaintiffs' Complaint, at Para. 37, refers to this letter as being sent "around April 2007.") This letter is addressed to the school's attorney, Dana Fattore Crumley, and makes reference to the fact that it is being provided in response to her own request for information on behalf of the school. Because this letter cannot be properly read in context without Ms. Crumley's request dated May 7, 2007, that correspondence is also included in Group Exhibit A.

Widlacki's letter does not contain the false statement that Plaintiffs allege in their Complaint, that B.F.G. had been charged with sexual assault. Further, the letter contains only the information that 105 ILCS 5/22-20 requires Widlacki to disclose to B.F.G.'s school after B.F.G. was detained for a criminal offense. That information includes "the basis for detaining the child, circumstances surrounding the events which led to the child's detention, and status of proceedings." 105 ILCS 5/22-20.

The letter at issue here states only that after Widlacki received the report of sexual assault, he found probable cause that sexual assault had occurred and referred the matter to the Juvenile State's Attorney. The letter says nothing about whether the State's Attorney filed any charges or what those charges might have been. The letter states the screening disposition

assigned B.F.G. to counseling and 180 days of parental supervision, but it does not contain the false statement that B.F.G. "had been charged with sexual assault." Because this false statement is an essential element in Plaintiff's claim for defamation per se, that claim fails.

**G.    COUNT XI AGAINST WIDLACKI FOR STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS BECAUSE THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT SHOW NO CONDUCT THAT IS EXTREME AND OUTRAGEOUS.**

Plaintiffs allege Widlacki's conduct during the DCFS investigation and administrative hearing amounted to intentional infliction of emotional distress. Illinois courts have held this tort occurs when (1) the conduct was truly extreme and outrageous, (2) the actor intended that his conduct inflict severe distress or knew that there was a high probability that his conduct would inflict such distress, and (3) the conduct in fact caused severe emotional distress. *Schiller v. Mitchell*, 357 Ill.App.3d 435, 447 (2nd Dist. 2005). "Liability arises only where the conduct complained of was atrocious, and utterly intolerable in a civilized community." *Id.* The Illinois Supreme Court has described actionable conduct as follows: "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility. *Knierim v. Izzo*, 22 Ill.2d 73, 85 (1961) (*emphasis added.*)

According to the Complaint's allegations, Widlacki reported the allegations of sexual abuse to DCFS upon receiving them, and he wrote a letter falsely informing B.F.G.'s school administrators he had been charged with sexual assault. Widlacki's reporting to DCFS was required by 325 ILCS 5/4, and the letter (which in fact did not contain the claimed false statement) was required by 105 ILCS 5/22-20. Widlacki performed the duties imposed on him by law. The allegations pled by Plaintiffs do not show that Widlacki engaged in extreme and outrageous behavior that was "atrocious," "utterly intolerable in a civilized community," and

"wholly lacking in social utility." On the contrary, the law imposes these obligations on Widlacki because of their social utility. As a result, Plaintiffs claim against him for intentional infliction of emotional distress must fail.

**H.     COUNT XII AGAINST WIDLACKI FOR STATE LAW FALSE LIGHT INVASION OF PRIVACY FAILS FOR LACK OF PUBLICITY.**

Plaintiffs allege that Widlacki's communication of the false allegations against B.F.G. to his school administrators constitutes false light invasion of privacy. In recognizing the tort of false light invasion of privacy, the Illinois Supreme Court quoted the Restatement (Second) of Torts, "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Lovgren v. Citizens First Nat'l Bank*, 126 Ill.2d 411, 423 (1989), quoting Restatement (Second) of Torts Section 652, at 374 (1977).

In *Comment a* to this section, with regard to the element of publicity, the Restatement (Second) of Torts, states "Any publication in a newspaper or magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section." Publicity in an invasion of privacy tort "means communicating the matter to the public at large or to so many persons that the matter must be regarded as one of general knowledge." *Chisholm v. Foothill Capital Corp.*, 940 F.Supp. 1273, 1285 (D. Ill. 1996).

By way of contrast in our own case, Widlacki sent a letter to the attorney representing B.F.G.'s school district. Leaving aside for the moment that the false statement alleged by Plaintiffs' Complaint does not actually appear in the letter, the letter hardly fits the definition of "publicity" for purposes of false light invasion of privacy. In addition, the statute that obligated Widlacki to send the letter provides that "The information derived thereby shall be kept separate from and shall not become a part of the official school record of such child and shall not be a public record. Such information shall be used solely by the principal, counselors and teachers of the school to aid in the proper rehabilitation of the child and to protect the safety of students and employees in the school." 105 ILCS 5/22-20. Because the facts alleged by the complaint do not show Widlacki publicized the contents of his letter, the false light invasion of privacy claim fails.

I.     **COUNT XV FOR RESPONDEAT SUPERIOR AND COUNT XVI FOR INDEMNIFICATION AGAINST WILLOW SPRINGS FAIL, AS WILLOW SPRINGS IS IMMUNE FROM LIABILITY AND BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW.**

Plaintiffs allege Willow Springs is liable under a theory of respondeat superior and liable for indemnification based on 745 ILCS 10/9-102 for the wrongful acts of its employees, Tabordon and Widlacki. As an initial matter, the Willow Springs is immune from state law Counts X, XI and XII.  Under the Tort Immunity Act, Willow Springs is absolutely immunized against: "injury caused by any action of its employees that is libelous or slanderous or for the provision of information . . . ." 745 ILCS 10/2-107.  Additionally, it is immunized against injury caused by . . . misrepresentation of its employees, whether or not such promise or misrepresentation is negligent or intentional. 745 ILCS 10/2-106.

Counts X, XI and XII are all premised on the allegation that Widlacki made a false statement to B.F.G.'s school administrators that B.F.G. had been charged with sexual assault.

However, if those statements were indeed false, then they would be misrepresentations, or some other libelous or slanderous actions, against which Willow Springs is absolutely immunized. *See Ramos v. City of Peru*, 333 Ill. App. 3d 75, 80, 775 N.E.2d 184, 188-89 (Ill. App. Ct. 2002) (Section 2-107 of the Tort Immunity Act defeats claim for false light invasion of privacy and contains no exceptions).

In the context of respondeat superior liability, an employer may be liable for the negligent, willful, or malicious acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer. *Stern v. Ritz Carlton Chicago*, 299 Ill.App.3d 674, 677 (1st Dist. 1998). However, as the Plaintiffs' Complaint in this case fails to state a claim for any such acts, there can be no respondeat superior liability on the part of Willow Springs.

The indemnification statute empowers and directs a local public entity to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable. 745 ILCS 10/9-102. However, once all state law claims are dismissed from the case, 745 ILCS 10/9-102 is inapplicable. *See, e.g., Sassak v. City of Park Ridge*, 2006 U.S. Dist. LEXIS 15546, *31-34 (N.D. Ill. Mar. 2, 2006) (Moran, J.) (refusing to dismiss Section 10/9-102 indemnification claim against one defendant where state law claims survived, but dismissing same claim as to another defendant where no state law claim survived).

**J.   PLAINTIFFS' PRAYERS FOR ATTORNEYS' FEES FOR THE STATE LAW CLAIMS MUST BE STRICKEN**

Each of Plaintiffs' state law claims includes a prayer for attorneys' fees. Illinois generally follows the "American Rule": absent statutory authority or a contractual agreement between the

parties, each party to litigation must bear its own attorney fees and costs, and may not recover those fees and costs from an adversary. *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill.2d 560, 572 (2000). Because Plaintiffs are not entitled to recover attorneys fees in connection with the state law claims pled, Plaintiffs' prayer for attorneys' fees for the state law claims must be stricken.

## CONCLUSION

For the forgoing reasons, the Defendants, Robert Tabordon, Craig Widlacki and the Village of Willow Springs respectfully request that the Court dismiss Counts IV, V, VII, VIII, IX, X, XI, XII, XV and XVI with prejudice. Additionally, the Defendants respectfully request any and all such other relief as the Court deems appropriate.

Respectfully Submitted,

/s/ Paul A. Rettberg
**One of the Attorneys for Defendants,
Village of Willow Springs, Robert
Tabordon, and Craig Widlacki**

Paul Rettberg
Jason Callicoat
QUERREY & HARROW, LTD.
175 W. Jackson, Ste. 1600
Chicago, IL 60604
312-540-7000

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on April 22, 2008, the foregoing document was served, pursuant to L.R. 5.9 and the General Order on Electronic Filing, via the Court's Electronic Case Filing System, to:

All Counsel of Record.


The following persons were served via U.S. Mail:

Rhonda L. Casady
Attorney at Law
200 South Michigan Ave.
Suite 1240
Chicago, Illinois 60604-2430

Program Manager Danielle Butts
Children's Advocacy Center of Southwest Cook County
8651 South 79th Avenue
Justice, Illinois 60458


By: <u>/s/ Paul A. Rettberg</u>

Document #: 1320812

8255 Willow Springs Road
Willow Springs, Illinois 60480

# Willow Springs Police

May 8, 2007

300 South Wacker Drive
Suite 3400
Chicago, Illinois 60606

Dear Dana Fattore Crumley:

I am relaying the following information per your request dated 05/07/2007.

On 01/16/2007 it was reported to the Willow Springs Police that Benny Garcia was committing sexual assaults on children he was babysitting for. I am a Juvenile Officer and was assigned to the case. I found probable cause that the sexual assaults had taken place and the matter was referred to the Juvenile States Attorney. I received a screening disposition from the Bridgeview courthouse dated 04/05/2007 assigning Benny to counseling and 180 days of parental supervision.

Sincerely,

Ofc Widlacki
Juvenile Officer

*Confidential*


EXHIBIT
Group
A

# FRANCZEK SULLIVAN P.C.
## ATTORNEYS AT LAW

300 SOUTH WACKER DRIVE
SUITE 3400
CHICAGO, ILLINOIS 60606
PHONE 312-986-0300
FAX 312-986-9192
http://www.franczek.com

DANA FATTORE CRUMLEY
312-786-6583
dfc@franczek.com

May 7, 2007

VIA FACSIMILE

Officer Widlacki
Willow Springs Police Department
8255 Willow Springs Road
Willow Springs, IL 60480

Re: Request for Report

Dear Officer Widlacki:

As I indicated during our phone conversation, this law firm represents Pleasantdale School District 107. Section 22-20 of the Illinois School Code provides that law enforcement agencies shall inform the principal when a student enrolled in the principal's school is detained for proceedings under the Juvenile Court Act or for any criminal offense. 105 ILCS 5/22-20. I have attached a copy of this provision for your convenience.

Pursuant to the requirements of this section, we are requesting a report regarding the charges filed against Ben and/or Max Garcia by John Scaramella.

Thank you for your prompt attention to this matter. Should you have questions, do not hesitate to contact me.

Very truly yours,

Dana Fattore Crumley

Dana Fattore Crumley

Enclosure

cc: Meg Pokorny, Principal, Pleasantdale Middle School

105 ILCS 5/22-20) (from Ch. 122, par. 22-20)

Sec. 22-20. All courts and law enforcement agencies of the State of Illinois and its political subdivisions shall report to the principal of any public school in this State whenever a child enrolled therein is detained for proceedings under the Juvenile Court Act of 1987, as heretofore and hereafter amended, or for any criminal offense or any violation of a municipal or county ordinance. The report shall include the basis for detaining the child, circumstances surrounding the events which led to the child's detention, and status of proceedings. The report shall be updated as appropriate to notify the principal of developments and the disposition of the matter.

The information derived thereby shall be kept separate from and shall not become a part of the official school record of such child and shall not be a public record. Such information shall be used solely by the principal, counselors and teachers of the school to aid in the proper rehabilitation of the child and to protect the safety of students and employees in the school.
(Source: P.A. 89-610, eff. 8-6-96.)

405 /1-7 (A)(8)