50614-RET

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

B.F.G., by his parents and next friends, )
R.G. and B.G., and R.G., and B.G., )
 )
      Plaintiffs, )
 )
v. ) 08 C 1565
 )
WILLIE BLACKMON, Investigator, Division ) JUDGE SUZANNE B. CONLON
Of Child Protection ("DCP"), of the Illinois, )
Department of Children and Family Services ) MAGISTRATE JUDGE NOLAN
("DCFS"), et al., )
 )
      Defendants. )

### MOTION TO DISMISS BY VILLAGE OF WILLOW SPRINGS, ROBERT TABORDON AND CRAIG WIDLACKI

Now come the Defendants, Village of Willow Springs ("Willow Springs"), Willow Springs Police Detective Robert Tabordon ("Tabordon"), and former Willow Springs Police Officer Craig Widlacki ("Widlacki") (collectively "Defendants"), and hereby move the Court for an order dismissing specific portions of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support thereof, Defendants state as follows:

### INTRODUCTION

Plaintiffs assert 16 Counts against various groups of Defendants. Regarding Tabordon and Widlacki, Plaintiffs have brought the following claims:

*     Unlawful arrest under 42 U.S.C. §1983 (Count V);
*     Conspiracy to unlawfully arrest, falsely "indicate" and deny a fair administrative hearing under 42 U.S.C. §1983 (Count VII);
*     State law conspiracy to unlawfully arrest, falsely "indicate" and deny a fair administrative hearing (Count IX); and
*     State law intentional infliction of emotional distress (Count XI).

Plaintiffs have also made state law claims against Willow Springs based on respondeat superior (Count XV) and for payment of damages under 745 ILCS 10/9-102 (Count XVI).

The Amended Complaint makes the following allegations. Widlacki on January 16, 2007, received a report from the parents of two children who alleged they had been sexually abused by B.F.G. while he babysat them. (Para. 15-17). Widlacki contacted DCFS with this information on the same day. (Para. 18-19). DCFS investigated and on January 25, 2007, found that the charge of sexual exploitation against B.F.G. was supported by credible evidence and was therefore "indicated." (Para. 35). Widlacki without probable cause arrested B.F.G. that same day at the direction of or with the approval of Tabordon, for sexual assault. (Para. 37). Unspecified defendants at an unspecified time informed B.F.G.'s school that he had been detained for proceedings under the Juvenile Court Act or for a criminal offense. (Para. 38). Widlacki then responded to the school's request for information by informing the school he had found probable cause that B.F.G. committed sexual assault on the children he babysat, that the matter was referred to the Juvenile State's Attorney, and that Widlacki had received a disposition from the Bridgeview courthouse assigning B.F.G. to counseling. (Para. 38). Plaintiffs claim this information was "misleading." (Para. 39).

After the Cook County State's Attorney's Juvenile Division declined to charge B.F.G. with sexual assault, B.F.G. brought an administrative appeal to have the "indicated" finding expunged from the DCFS central register. (Para. 37, 41). Tabordon and Widlacki conspired with other Defendants to remove B.F.G. from the home, falsely arrest him, falsely "indicate" him, and prevent the administrative appeal from being fair. (Para. 82). Widlacki had no probable cause to arrest B.F.G. even after J.S. and K.S. reported to Widlacki their children's statements of being sexually abused by B.F.G., and even after the DCFS investigators found the charge of sexual exploitation against B.F.G. was supported by credible evidence. (Para. 18, 35,

82). Although the other defendants committed certain acts that made the administrative hearing unfair (Para. 42), Plaintiffs do not allege that Tabordon or Widlacki performed any of these acts.

For the reasons set forth below, the claims against Tabordon, Widlacki and Willow Springs must be dismissed with prejudice. Additionally, Plaintiffs' prayers for relief seeking attorneys' fees for the state law claims must be dismissed.

## ARGUMENT

### A. COUNT V FOR UNLAWFUL ARREST FAILS BECAUSE PROBABLE CAUSE IS APPARENT ON THE FACE OF THE AMENDED COMPLAINT.

If probable cause exists for an arrest, that probable cause serves as an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution. *Jerricks v. Bresnahan*, 880 F. Supp. 521 (D. Ill. 1995). Accordingly, Plaintiffs allege that Tabordon and Widlacki caused B.F.G. to be arrested without probable cause. However, Plaintiffs also allege that J.S. and K.S. on January 16, 2007, reported to Widlacki their children's specific descriptions of being sexually abused by B.F.G., and that DCFS subsequently found a charge of sexual exploitation against B.F.G. to be supported by credible evidence. (Para. 18, 35). Only then did Widlacki arrest B.F.G. (Para. 37).

"[S]o long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest." *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998). This holds true in sexual assault cases, such as *Jerricks v. Bresnahan*, 880 F. Supp. 521 (D. Ill. 1995), where the court held the oral and written statements of the victim provided probable cause for the arrest of the accused.

In another case, the court held that "The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. If so, the arrest is lawful even if the belief would have been mistaken. Thus probable cause has been described as a zone within which reasonable mistakes will be excused." *Kelley v. Myler*, 139 F.3d 641, 646 (7th Cir. 1998). In *Kelley*, the court held that police had probable cause to arrest an alleged trespasser, who turned out to be violating no law, having in fact been on the public right-of-way. *Id.* at 644. In making its determination, the court considered whether the officers were reasonable in believing the crime had been committed, based on what they observed or were told by third parties they had reason to believe were telling the truth. *Id.* at 647. The court noted "this fact-intensive, on-the-spot determination of probable cause often involves an exercise of judgment, which turns on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules. Therefore, courts evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer - seeing what he saw, hearing what he heard." *Id.* at 646.

According to the Plaintiffs' allegations in our own case, the parents of the alleged victims reported their children's detailed accusations to Widlacki. These included that the children had been abused by B.F.G., who while babysitting, had forced toy objects into the anuses of both children, made one child do naked flips during games of truth or dare, and that B.F.G. had committed some of these acts upon and in the presence of his own younger siblings. (Para. 15-16). Widlacki contacted DCFS with the allegations of abuse. (Para. 19). Although not mentioned in Plaintiffs' Amended Complaint, this reporting is required by statute (see 325 ILCS 5/4, discussed in more detail below). DCFS investigated by, among other things, interviewing

all four of the alleged victims. (Para. 20, 29). Following these interviews, DCFS on January 25, 2007, found that a charge of sexual exploitation against B.F.G. was supported by credible evidence, and was therefore "indicated." (Para. 35). Widlacki, at the direction of or with the knowledge of Tabordon, arrested B.F.G. that same day, but allegedly without probable cause. (Para. 37).

Plaintiffs allege that before B.F.G.'s arrest, DCFS failed to collect or examine certain competing evidence during its investigation, and that Widlacki failed to forensically test the two toys he was given, which purportedly had been inserted into one child's anus. (Para. 18, 28). However, in *Kelly*, the Plaintiff claimed she told the officers that she was on the public right-of-way, and the officers failed to investigate this assertion before arresting her. *Kelly*, 139 F.3d at 646. The court refused to add such an "extra requirement" to the probable cause determination, but rather decided that if an officer had established probable cause that a crime had been committed, "he need not continue investigating in order to test the suspect's claim of innocence." *Id.*

Similarly in *Collier v. Baker*, 1999 U.S. Dist. Lexis 11373, the Plaintiff was arrested for carjacking and sexual assault based on the victim's identification of him and the fact that his business card holder was recovered from the stolen car. Plaintiff contended there was no probable cause for his arrest a month later, arguing that if the defendants had conducted a better investigation in the intervening period, they would have learned that he had a solid alibi and that that information would have destroyed probable cause. The court held that "all of that may be true. But, [Plaintiff] does not have a constitutional right to perfect or immediate police work; the police are under no obligation to investigate a crime after probable cause exists." *Id.* at 11-12.

5

As in *Kelly* and *Collier*, Plaintiffs in this case cannot destroy probable cause by alleging DCFS or even the Willow Springs police officers should have investigated differently or collected additional evidence. The parents of the children B.F.G. allegedly sexually abused reported their detailed allegations regarding the sexual abuse to Widlacki. Widlacki conveyed the sexual abuse allegations to DCFS. DCFS investigated and found a sexual exploitation charge against B.F.G. was supported by credible evidence and therefore "indicated." Widlacki arrested B.F.G. Based on Plaintiffs' allegations and the case law cited, probable cause existed and the Section 1983 claim for unlawful arrest must fail.

### B. COUNT VII FOR CONSPIRACY FAILS BECAUSE THE ALLEGATIONS SHOW NO AGREEMENT OR MEETING OF THE MINDS.

Plaintiffs allege that Tabordon and Widlacki conspired with other Defendants to cause B.F.G. to be falsely arrested without probable cause. However, if Count V for false arrest fails, the claim for conspiracy to commit false arrest fails automatically. Plaintiffs also lump Tabordon and Widlacki into a group with all the other individual Defendants and allege the group conspired to remove B.F.G. from his home without cause, to falsely "indicate" him and to deprive him of his right to a fair administrative hearing. However, the Plaintiffs accuse only the other Defendants, not Tabordon or Widlacki, of removing B.F.G. from his home, falsely "indicating" him and preventing him from receiving a fair administrative hearing.

Apart from this, a conspiracy to deprive a plaintiff of Constitutional rights must include both "(1) an express or implied agreement among defendants to deprive plaintiff of secured [C]onstitutional rights and (2) an actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Fantasia v. Kinsella*, 956 F.Supp. 1409, 1415 (D. Ill. 1997). Plaintiffs' claims of conspiracy therefore fail for two reasons: (1) Plaintiffs' allegations show no

agreement among Tabordon, Widlacki and the other Defendants, and (2) Plaintiffs allege no acts by Tabordon or Widlacki that actually resulted in a deprivation of Constitutional rights.

Although Plaintiffs state that Tabordon and Widlacki acted in concert with the other Defendants, the facts Plaintiffs alleged show no agreement or meeting of the minds, the essential element of conspiracy. In fact, the only communication Plaintiffs allege between Tabordon and Widlacki and the other Defendants is Widlacki's report of the abuse allegations to DCFS, which is required by statute. "Any ... law enforcement officer ... having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to the Department [of Children and Family Services]." 325 ILCS 5/4. Far from serving as the basis of a conspiracy claim, the good-faith reporting required by law actually immunizes from liability the person making the report. "Any person ... participating in good faith in the making of a report or referral shall have immunity from any liability, civil, criminal or that otherwise might result by reason of such actions. For the purpose of any proceedings, civil or criminal, the good faith of any persons required to report or refer ... cases of suspected child abuse or neglect ... shall be presumed." 325 ILCS 5/9. The Amended Complaint contains no allegations or inferences that Tabordon and Widlacki came to an agreement or reached a meeting of the minds with the other Defendants.

Further, the facts Plaintiffs allege show no overt act by Tabordon or Widlacki to cause B.F.G. to be removed from his home without cause, falsely arrested, falsely indicated or deprived of the right to a fair administrative hearing. The allegation of false arrest is addressed above. As to the removal from the home, the Plaintiffs allege that B.F.G. was removed from his home by DCFS, not by the Willow Springs officers. (Para. 25). Plaintiffs do not allege that the

arrest of B.F.G. resulted in his being removed from the home, and in fact, the arrest did not result in B.F.G. being removed from the home.

Although Plaintiffs allege that Tabordon and Widlacki conspired with the other defendants to falsely "indicate" B.F.G., by statute, the "indicated" determination is made by DCFS employees rather than the police. Illinois statute requires that "the Child Protective Service Unit shall determine, within 60 days, whether the report [of abuse or neglect] is 'indicated' or 'unfounded' and report it forthwith to the central register." 325 ILCS 5/7.12. The statute defines "Child Protective Service Unit" as "certain specialized State employees of the Department [of Children and Family Services]." Plaintiffs allege that Tabordon and Widlacki were Willow Springs police officers, not members of the Child Protective Service Unit or DCFS. Even assuming the determination that a charge was "indicated" violated B.F.G.'s rights, the facts that Plaintiffs allege show neither Tabordon nor Widlacki was a member of the group that made that determination, so the claim that they conspired to falsely "indicate" B.F.G. must fail.

Regarding the administrative hearing, Plaintiffs list various overt acts that other Defendants performed to prevent B.F.G. from receiving a fair hearing. (Para. 43). However, the Amended Complaint does not allege that Tabordon or Widlacki performed any of these acts. Nevertheless, Plaintiffs in Count VII simply throw these two officers into the mix of individuals they allege participated in the conspiracy to deprive B.F.G of a fair administrative hearing. Because Plaintiffs' allegations show neither the agreement nor the overt acts resulting in actual deprivation of rights that would be needed to pursue a conspiracy count against Tabordon or Widlacki, this count must fail.

**C. COUNT IX FOR STATE LAW CIVIL CONSPIRACY FAILS BECAUSE PLAINTIFFS' ALLEGATIONS SHOW NO OVERT ACT AND NO AGREEMENT OR MEETING OF THE MINDS.**

Plaintiffs again lump Tabordon and Widlacki in with all of the other individuals named as Defendants and allege that everyone participated in a civil conspiracy under state law to perform a laundry list of torts and civil rights violations against B.F.G. (Para. 92). Plaintiffs accuse Tabordon and Widlacki of conspiring to subject B.F.G. to malicious prosecution. (Para. 92). At the same time however, Plaintiffs remove Tabordon and Widlacki from the count alleging malicious prosecution (Count VIII). Plaintiffs accuse Tabordon and Widlacki of conspiring to subject B.F.G. to defamation per se. (Amended Complaint at Para. 92). At the same time, Plaintiffs remove Widlacki from the count alleging defamation per se (Count X). (Tabordon was never included in the defamation per se count of the original complaint.) Plaintiffs accuse Tabordon and Widlacki of conspiring to subject B.F.G. to false light invasion of privacy, but at the same time remove Widlacki from the count alleging false light invasion of privacy (Count XII). (Tabordon was never included in the false light invasion of privacy count of the original complaint.)

Plaintiffs' Amended complaint further accuses Tabordon and Widlacki of conspiring to suppress exculpatory evidence, present false testimony, and cause B.F.G. to be falsely "indicated." (Para. 92). However, Plaintiffs' Amended Complaint elsewhere accuses only the various other Defendants, not Tabordon or Widlacki, of suppressing exculpatory evidence, presenting false testimony, and causing B.F.G. to be falsely "indicated." (Para. 28, 35, 36, 43).

A conspiracy count fails when the count for the underlying tort itself fails. *Lee v. Radulovic*, 1994 U.S. Dist. LEXIS 9871 (N.D. Ill. 1994). Alleging a conspiracy to commit an underlying tort rather than alleging the tort itself is simply "relabeling" the tort, which is not to be permitted. *Tierney v. Vahle*, 304 F.3d 734, 743 (7th Cir. 2002). Where the underlying tort is

defeated (or in our case not alleged), the same tort "dressed up in the language of conspiracy" is also defeated. *Id.*

Further, "in order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill.2d 102, 133 (1999). Because the state civil conspiracy claim, just as the federal conspiracy claim, requires an agreement and an act in furtherance of the agreement, Plaintiffs' state civil conspiracy claim fails for the same reasons (described above) that their federal conspiracy claim fails.

### D. COUNT XI FOR STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS BECAUSE THE PLAINTIFFS' ALLEGATIONS SHOW NO CONDUCT THAT IS EXTREME AND OUTRAGEOUS.

As in the conspiracy counts, Plaintiffs simply lump Tabordon and Widlacki in with the other individual Defendants and allege that everyone's conduct during the DCFS investigation, arrest and administrative hearing amounted to intentional infliction of emotional distress. At the same time, Plaintiffs' allegations do not indicate that Tabordon or Widlacki performed any extreme and outrageous act as part of the DCFS investigation or the administrative hearing.

Illinois courts have held intentional infliction of emotional distress occurs when (1) the conduct was truly extreme and outrageous, (2) the actor intended that his conduct inflict severe distress or knew that there was a high probability that his conduct would inflict such distress, and (3) the conduct in fact caused severe emotional distress. *Schiller v. Mitchell*, 357 Ill.App.3d 435, 447 (2nd Dist. 2005). "Liability arises only where the conduct complained of was atrocious, and utterly intolerable in a civilized community." *Id.* The Illinois Supreme Court has described actionable conduct as follows: "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions

wholly lacking in social utility. *Knierim v. Izzo*, 22 Ill.2d 73, 85 (1961) (*emphasis added.*)

As described above, Plaintiffs allege that J.S. and K.S. on January 16, 2007, reported to Widlacki their children's specific descriptions of being sexually abused by B.F.G., and that DCFS subsequently found a charge of sexual exploitation against B.F.G. to be supported by credible evidence. (Para. 18, 35). Only then did Widlacki arrest B.F.G., allegedly at Tabordon's direction or with his approval. (Para. 37). For the reasons explained in more detail above, Widlacki had probable cause to make this arrest. The act of arresting a person when there is probable cause to do so can hardly be considered "extreme and outrageous," "atrocious," "utterly intolerable in a civilized community," or "wholly lacking in social utility." As such, the intentional infliction of emotional distress count against Tabordon and Widlacki must fail.

Even assuming Plaintiffs meant to include Widlacki's letter to B.F.G.'s school in the somewhat ill-defined course of conduct they claim to be extreme and outrageous, Widlacki's provision of that letter to B.F.G.'s school pursuant to statute simply does not qualify as extreme and outrageous. Plaintiffs allege Widlacki sent the letter to B.F.G.'s school in response to the school's direct request that Widlacki provide certain information. That letter and the school's request for that letter are attached hereto as Group Exhibit A. Widlacki's letter providing this information was required by 105 ILCS 5/22-20, and Widlacki simply performed the duties imposed on him by law.

Despite Plaintiffs' penchant for using hyperbolic adjectives (e.g., outrageous and preposterous" allegations, "wild and obviously false" accusations, "bizarre and unsubstantiated" hearsay, and "bizarre, obviously fabricated, and wildly inconsistent" allegations), Plaintiffs quite mildly characterize Widlacki's letter as containing "misleading statements." Illinois statute entitles B.F.G.'s school to be informed of the "circumstances surrounding the events which led

to the child's detention." 105 ILCS 5/22-20. Alleging that Widlacki informed the school of these circumstances but some of the information was "misleading" falls far short of showing that Widlacki engaged in extreme and outrageous behavior that was "atrocious," "utterly intolerable in a civilized community," and "wholly lacking in social utility." On the contrary, the law requires Widlacki to inform B.F.G.'s school of the circumstances surrounding his detention specifically because the Illinois Legislature has determined there is social utility in this requirement. The plain language of the statute provides that this information is to be used "to aid in the proper rehabilitation of the child and to protect the safety of students and employees in the school." 105 ILCS 5/22-20. As a result, any claim for intentional infliction of emotional distress based on Widlacki's letter must fail.

### E. COUNT XV FOR RESPONDEAT SUPERIOR AND COUNT XVI FOR INDEMNIFICATION AGAINST WILLOW SPRINGS FAIL, AS WILLOW SPRINGS IS IMMUNE FROM LIABILITY AND BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UNDER STATE LAW.

Plaintiffs allege Willow Springs is liable under a theory of respondeat superior and liable for indemnification based on 745 ILCS 10/9-102 for the wrongful acts of its employees, Tabordon and Widlacki. As an initial matter, Willow Springs is immune from state law Count XI based on any allegedly "misleading" information provided by Widlacki. Under the Tort Immunity Act, Willow Springs is absolutely immunized against: "injury caused by any action of its employees that is libelous or slanderous or for the provision of information . . . ." 745 ILCS 10/2-107. Additionally, it is immunized against injury caused by misrepresentation of its employees, whether or not such promise or misrepresentation is negligent or intentional. 745 ILCS 10/2-106.

In the context of respondeat superior liability, an employer may be liable for the negligent, willful, or malicious acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer. *Stern v. Ritz Carlton Chicago*, 299 Ill.App.3d 674, 677 (1st Dist. 1998). However, as the Plaintiffs' Amended Complaint in this case fails to state a claim for any such acts by Tabordon or Widlacki, there can be no respondeat superior liability on the part of any entity employing them, much less a local public entity. By statute, Willow Springs is not liable for any act or omission of its employee where the employee is not liable. 745 ILCS 10/2-109. Because Plaintiffs' fail to state a claim against Tabordon or Widlacki, the Village of Willow Springs is immune for any acts or omissions on their part.

The indemnification statute empowers and directs a local public entity to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable. 745 ILCS 10/9-102. However, once all state law claims are dismissed from the case, 745 ILCS 10/9-102 is inapplicable. *See, e.g., Sassak v. City of Park Ridge*, 2006 U.S. Dist. LEXIS 15546, 31-34 (N.D. Ill. Mar. 2, 2006) (Moran, J.) (refusing to dismiss Section 10/9-102 indemnification claim against one defendant where state law claims survived, but dismissing same claim as to another defendant where no state law claim survived).

F. **PLAINTIFFS' PRAYERS FOR ATTORNEYS' FEES FOR THE STATE LAW CLAIMS MUST BE STRICKEN**

Each of Plaintiffs' state law claims includes a prayer for attorneys' fees. Illinois generally follows the "American Rule": absent statutory authority or a contractual agreement between the parties, each party to litigation must bear its own attorney fees and costs, and may not recover those fees and costs from an adversary. *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill.2d 560,

572 (2000). Because Plaintiffs are not entitled to recover attorneys fees in connection with the state law claims pled, Plaintiffs' prayer for attorneys' fees for the state law claims must be stricken.

## CONCLUSION

For the forgoing reasons, the Defendants, Robert Tabordon, Craig Widlacki and the Village of Willow Springs respectfully request that the Court dismiss Counts V, VII, IX, XI, XV and XVI with prejudice. Additionally, the Defendants respectfully request any and all such other relief as the Court deems appropriate.

Respectfully Submitted,

/s/ Jason Callicoat
**One of the Attorneys for Defendants,
Village of Willow Springs, Robert
Tabordon, and Craig Widlacki**

Paul Rettberg
Jason Callicoat
QUERREY & HARROW, LTD.
175 W. Jackson, Ste. 1600
Chicago, IL 60604
312-540-7000

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on May 28, 2008, the foregoing document was served, pursuant to L.R. 5.9 and the General Order on Electronic Filing, via the Court's Electronic Case Filing System, to:

All Counsel of Record.

The following persons were served via U.S. Mail:

Rhonda L. Casady
Attorney at Law
200 South Michigan Ave.
Suite 1240
Chicago, Illinois 60604-2430

Program Manager Danielle Butts
Children's Advocacy Center of Southwest Cook County
8651 South 79th Avenue
Justice, Illinois 60458

By: /s/ Jason Callicoat

Document #: 1327707

8255 Willow Springs Road
Willow Springs, Illinois 60480

# Willow Springs Police

May 8, 2007

300 South Wacker Drive
Suite 3400
Chicago, Illinois 60606

Dear Dana Fattore Crumley:

I am relaying the following information per your request dated 05/07/2007.

On 01/16/2007 it was reported to the Willow Springs Police that Benny Garcia was committing sexual assaults on children he was babysitting for. I am a Juvenile Officer and was assigned to the case. I found probable cause that the sexual assaults had taken place and the matter was referred to the Juvenile States Attorney. I received a screening disposition from the Bridgeview courthouse dated 04/05/2007 assigning Benny to counseling and 180 days of parental supervision.

Sincerely,

Ofc Widlacki
Juvenile Officer

*Confidential*


EXHIBIT Group A

# FRANCZEK SULLIVAN P.C.
### ATTORNEYS AT LAW

300 SOUTH WACKER DRIVE
SUITE 3400
CHICAGO, ILLINOIS 60606
PHONE 312-986-0300
FAX 312-986-9192
http://www.franczek.com

DANA FATTORE CRUMLEY
312-786-6583
dfc@franczek.com

May 7, 2007

**VIA FACSIMILE**

Officer Widlacki
Willow Springs Police Department
8255 Willow Springs Road
Willow Springs, IL 60480

Re: Request for Report

Dear Officer Widlacki:

As I indicated during our phone conversation, this law firm represents Pleasantdale School District 107. Section 22-20 of the Illinois School Code provides that law enforcement agencies shall inform the principal when a student enrolled in the principal's school is detained for proceedings under the Juvenile Court Act or for any criminal offense. 105 ILCS 5/22-20. I have attached a copy of this provision for your convenience.

Pursuant to the requirements of this section, we are requesting a report regarding the charges filed against Ben and/or Max Garcia by John Scaramella.

Thank you for your prompt attention to this matter. Should you have questions, do not hesitate to contact me.

Very truly yours,

Dana Fattore Crumley

Dana Fattore Crumley

Enclosure

cc: Meg Pokorny, Principal, Pleasantdale Middle School

105 ILCS 5/22-20) (from Ch. 122, par. 22-20)

Sec. 22-20. All courts and law enforcement agencies of the State of Illinois and its political subdivisions shall report to the principal of any public school in this State whenever a child enrolled therein is detained for proceedings under the Juvenile Court Act of 1987, as heretofore and hereafter amended, or for any criminal offense or any violation of a municipal or county ordinance. The report shall include the basis for detaining the child, circumstances surrounding the events which led to the child's detention, and status of proceedings. The report shall be updated as appropriate to notify the principal of developments and the disposition of the matter.

The information derived thereby shall be kept separate from and shall not become a part of the official school record of such child and shall not be a public record. Such information shall be used solely by the principal, counselors and teachers of the school to aid in the proper rehabilitation of the child and to protect the safety of students and employees in the school. (Source: P.A. 89-610, eff. 8-6-96.)

405 /1-7 (A)(8)

50614-RET

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| B.F.G., by his parents and next friends, R.G. and B.G., and R.G., and B.G., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 08 C 1565 |
| WILLIE BLACKMON, Investigator, Division Of Child Protection ("DCP"), of the Illinois, Department of Children and Family Services ("DCFS"), et al., | ) ) ) ) ) | JUDGE SUZANNE B. CONLON MAGISTRATE JUDGE NOLAN |
| Defendants. | ) | |

### NOTICE OF MOTION

On **June 4, 2008** at **9:00 A.M.** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable JUDGE CONLON, ROOM 1743,** or any judge sitting in her stead, in the courtroom usually occupied by her in the United States Courthouse, Dirksen Building, 219 S. Dearborn St., Chicago, Illinois, and shall then and there move the Court in accordance with the attached **"Defendants Widlacki, Tabordon and Village of Willow Springs' Motion to Dismiss Plaintiffs' Amended Complaint."**

**Respectfully Submitted**

BY: /s/ Jason Callicoat
Jason Callicoat

Paul A. Rettberg, Esq.
Stacey McGlynn Atkins, Esq.
Jason Callicoat, Esq.
QUERREY & HARROW, LTD.
175 West Jackson Blvd., Suite 1600
Chicago, IL 60604-2827
(312) 540-7000

## **CERTIFICATE OF SERVICE**

      The undersigned attorney certifies that on May 28, 2008, the foregoing document was served, pursuant to L.R. 5.9 and the General Order on Electronic Filing, via the Court's Electronic Case Filing System, to:

All Counsel of Record.

The following persons were served via U.S. Mail:

Rhonda L. Casady
Attorney at Law
200 South Michigan Ave.
Suite 1240
Chicago, Illinois 60604-2430

Program Manager Danielle Butts
Children's Advocacy Center of Southwest Cook County
8651 South 79th Avenue
Justice, Illinois 60458

                                              By:  /s/ Jason Callicoat

Document #: 1330777