**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| B.F.G., etc., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-01565 |
| | ) | |
| WILLIE BLACKMON, etc., et al., | ) | Judge Conlon |
| | ) | |
| Defendants. | ) | Magistrate Judge Nolan |

**MEMORANDUM IN SUPPORT OF DEFENDANTS, J.S.'S AND K.S.'S,
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Daniel M. Noland
Sonia A. Desai
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois  60606
312.876.1700

Attorneys for Defendants,
J.S. and K.S.

Defendants J.S. and K.S. ("Defendants"), by their attorneys, Dykema Gossett PLLC, in support of their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), state:

## INTRODUCTION

In this lawsuit, Defendants, J.S. and K.S., are vilified by the accused abuser of their children and his parents for the steps they have taken to protect their seven year-old boy and nine year-old girl from sexual abuse. After their children told them they were victims of abuse by Plaintiff B.F.G., after participating in Department of Children and Family Services ("DCFS") proceedings relative to the case and while worrying continuously about whether their children will regain a healthy childhood, J.S. and K.S. now must also defend a lawsuit.

Plaintiffs allege seven claims based in Illinois state law and two claims under 42 U.S.C. § 1983 against J.S. and K.S. In addition to suing the parents of the victims in this situation, Plaintiffs have brought their fourteen-count Amended Complaint against various governmental individuals and entities. Counts VI, VII, VIII, IX, X, XI, XII, XIII and XIV, as alleged against J.S. and K.S, are insufficient and should be dismissed with prejudice.

First, both of Plaintiffs' conspiracy claims fail to state a claim because the Complaint does not include allegations that J.S. and K.S. agreed with the other defendants to conspire to deprive Plaintiffs of their constitutional rights or to take concerted action with an unlawful purpose. Second, Plaintiffs' due process claim cannot be asserted against J.S. and K.S. because Plaintiffs have not, and could not, establish that J.S.'s and K.S.'s alleged conduct is actionable under Section 1983. Third, Plaintiffs' malicious prosecution claim fails because Plaintiffs do not plead the required elements of a malicious prosecution claim and the Abused and Neglected Child Reporting Act immunizes them from liability for their good faith reporting of the suspected sexual abuse of their children. Fourth, Plaintiffs do not have causes of action for defamation *per se* or false light invasion of privacy because they never allege a particular defamatory or false statement attributable to J.S. and K.S. Fifth, Plaintiffs have not alleged facts sufficient to support a claim of intentional infliction of emotional distress because J.S. and K.S. did not engage in "extreme and outrageous" conduct according to the facts alleged. Sixth, Plaintiffs' negligent supervision claim should be dismissed because J.S. and K.S. neither had the ability to control what their children said outside their presence nor had knowledge of prior instances of such conduct. Seventh, and, finally, J.S. and K.S. could not be liable under the Parental Responsibility Law because their children were only ages seven and nine at the time of the events alleged in Plaintiffs' Complaint.

## BACKGROUND

On March 18, 2008, Plaintiff B.F.G., by his parents and next friends R.G. and B.G., and Plaintiffs R.G. and B.G. filed their Amended Complaint at Law ("Complaint") suing the following individuals and entities: Willie Blackmon, Investigator, Division of Child Protection ("DCP") of DCFS, in his individual capacity; Kimberly Smith-Foote, Investigative Supervisor (DCP) of DCFS, in her individual capacity; Danielle Butts, Supervisor, Child Advocacy Center of Southwest Cook County Illinois ("CAC"), in her individual capacity; Rhonda Casady, attorney for DCFS, in her individual capacity; Detective Tabordon and Officer Widlacki, police officers, Willow Springs Police Department, in their individual capacities; Village of Willow Springs, Illinois, a Municipal Corporation; and J.S. and K.S.

In their Amended Complaint, Plaintiffs have sued J.S. and K.S. in the following counts: Count VI—§ 1983 due process.; Count VII—§ 1983 conspiracy; Count VIII—malicious prosecution under state law; Count IX—civil conspiracy under state law; Count X—defamation *per se* under state law; Count XI—intentional infliction of emotional distress under state law; Count XII—false light invasion of privacy under state law; Count XIII—negligent supervision of minors under state law; and Count XIV—parental liability under 740 ILCS 115 *et seq.*.

Defendants J.S. and K.S. are the parents of J.L.S. and N.S. who were seven and nine at the time of the events alleged in Plaintiffs' Complaint. Plaintiff, B.F.G., currently a high school freshman, occasionally babysat J.L.S. and N.S. from July through November 2006. (*Id.* at ¶ 4, 15.) Plaintiffs allege that J.L.S. and N.S. said that B.F.G. had forced toy objects into J.L.S.'s and N.S.'s anuses and made N.S. do naked flips during games of "truth or dare." (*Id.*) On January 16, 2007, J.S. and K.S. reported their children's accounts of abuse by B.F.G. to Officer Widlacki of the Willow Springs Police Department. (*Id.* at ¶ 18.) That same day, Officer Widlacki contacted the DCFS. (*Id.* at ¶ 19.) The next day, DCFS investigator, Willie Blackmon, and DCFS supervisor, Kimberly Smith-Foote, were assigned to the case. (*Id.*) On January 23, 2007, Danielle Butts conducted Victim Sensitive Interviews ("VSI") of J.L.S. and N.S. at the CAC. (*Id.* at ¶ 29, 31.)

On January 25, 2007, Blackmon concluded that the charge against B.F.G. was supported by credible evidence. (*Id.* at 35.) This "indicated" finding of sexual exploitation placed B.F.G. on the State Central Register. (*Id.*) That same day, Officer Widlacki, with approval of Detective Tabordon, arrested B.F.G. for criminal sexual assault. (*Id.* at 37.) The case was tendered to the Cook County State's Attorney Juvenile Division, which allegedly decided not to pursue charges

2

against B.F.G. (*Id.*) B.F.G. requested an administrative appeal of his "indicated" finding. (*Id*. at 42.) After the administrative hearing, the Administrative Law Judge found that DCFS had not met its burden in proving the allegations against B.F.G. (*Id.* at ¶ 44.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule 12(b)(6) should be granted if the challenged pleading fails to state a claim upon which relief can be granted. *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989). Such a motion tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Although when considering a motion to dismiss a court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom (*see Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)), a court is not obligated to accept a complaint that merely raises the possibility of relief. *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In addition, a court should not strain to find inferences not plainly apparent from the face of the complaint. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). The factual allegations must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *Concentra Health*, 496 F.3d at 776 (*quoting Bell Atlantic*, 127 S. Ct. at 1965, 1973 n. 14). With regard to Section 1983 claims, a complaint must set forth sufficient allegations to place the court and the defendants on notice of the gravamen of the complaint. *McCormick v. City of Chicago*, 230 F.3d 319, 323-24 (7th Cir. 2000).

## ARGUMENT

Plaintiffs have failed to meet the legal standards necessary to assert their various claims against J.S. and K.S. These claims are factually unsupported and legally unfounded, and, thus, should be dismissed. Plaintiffs have also asserted a number of claims under Section 1983 that do not name J.S. and K.S. directly but are asserted against "Defendants." (*See* Compl. at Counts I, II III, IV, and V). To the extent Plaintiffs intend to assert these claims against J.S. and K.S., these claims should also be dismissed because, as discussed in parts IA and II, *infra*, J.S. and K.S. are private persons whose actions cannot be fairly attributable to the State under a Section 1983 claim for conduct done under the "color of law."

Additionally, Plaintiffs' prayer for attorney fees in connection with their state claims should be stricken as Illinois law does not permit a party to recover fees and costs from its

3

adversary in litigation absent statutory authority or a contractual agreement. *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill.2d 560, 572 (2000).

### I. Plaintiffs Do Not State a Cause of Action in Either of Their Conspiracy Claims Against J.S. and K.S.

Causes of action for conspiracy, under state law and Section 1983, require factual allegations that support a finding of conspiracy; a mere assertion that one exists is insufficient. A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* And, even more stringently in the context of conspiracy claims, courts require specific facts to support mere conclusions of law. *See Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985).

#### A. Plaintiffs' Section 1983 Conspiracy Claim Is Factually Insufficient.

To establish that defendants, who are private individuals, acted pursuant to a conspiracy involving state action, plaintiffs must "allege facts sufficient to show that there was an agreement between the parties to inflict a wrong or injury upon another and an overt act that resulted in damages." *Koch v. Schneider*, 550 F.Supp. 846, 850 (N.D. Ill. 1982) (internal quotations omitted). In *Sarkan v. Kane-Kendale Mental Health Center*, the plaintiff's complaint alleged that the community counseling center, hospital, and private doctor acted in concert with DCFS "by contacting DCFS to determine state procedures for the emergency commitment of minors and by having Tammy admitted to the hospital pursuant to the procedures even though she knew she did not need hospitalization." 1987 WL 11833, at *2. The court found these allegations "were simply insufficient, under the law, to show the existence of a conspiracy with state actors so as to withstand a motion to dismiss." *Id.* Indeed, the Seventh Circuit has found that "merely filing a report of child neglect with a state actor, even if false, is insufficient to create liability under Section 1983." *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000). The claim would have to be supported by facts supporting a reasonable inference that an *agreement* existed among the state actors and the private individual, and that those defendants then jointly acted in furtherance of the conspiracy. *See id.* "[M]ere allegations that the parties acted in concert,

4

without any of the necessary factual averments, are insufficient to defeat a motion to dismiss." *Sarkan*, 1987 WL 11833, at *2.

Here, Plaintiffs allege that Defendants Casady, Blackmon, Smith-Foote, Butts, Tabordon, Widlacki, J.S. and K.S. acted in concert (Compl. ¶ 82), but Plaintiffs never allege how these defendants acted in concert (*see id.* at ¶¶ 43 (a) – (i), 80 – 83, *and passim*.) The bare assertion that the Defendants acted in concert "through false testimony and the willful suppression of key exculpatory evidence" neither gives "the defendant[s] fair notice of what the claim is and the grounds upon which it rests" nor raises Plaintiffs' "right to relief above the speculative level." *See Bell*, 127 S. Ct. at 1964-65. The bare and conclusory allegation of a conspiracy is pure speculation and simply will not suffice under the standard established by the Seventh Circuit and the Supreme Court. Therefore, Count VII should be dismissed with prejudice.

### B. Plaintiffs' State Law Conspiracy Claim Is Factually Insufficient.

The elements of state law civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston*, 209 Ill.2d 302, 317 (2002). Similar to the pleading requirements for conspiracy under Section 1983, the Illinois Supreme Court requires that a claim for civil conspiracy "contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Id.* at 318. "The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 23 (1998).

The complaint must allege that the defendants "knowingly and voluntarily participated in the common scheme at the heart of the alleged civil conspiracy." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill.App.3d 912, 924 (1st Dist. 2007). Because the participation must be both knowing and voluntary, the Illinois Supreme Court has held that "[a]ccidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 133-34 (1999). Most importantly, in order to connect a defendant to an alleged civil conspiracy, the complaint must allege the "necessary and important element" of the existence of an agreement. *Redelmann*, 375 Ill.App.3d at 923.

For example, in *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, the plaintiffs alleged the third-party defendants, Risk Management

5

Association, and its president agreed and conspired with Ernst & Young to prepare inaccurate, untruthful, and deceptive reports for the purpose of misrepresenting the true financial condition of a worker's compensation pool. 884 N.E.2d 700, 711 (4th Dist. 2008). The court held that these allegations were "nothing more than a conclusion that a conspiracy existed and fail[ed] to satisfy the pleading requirements to state a cause of action for civil conspiracy." *Id.*

Plaintiffs' state-law conspiracy claim also consists of mere conclusions that J.S. and K.S. "acted in concert" with the other defendants. At best, the allegations are nothing more than a "mere characterization of a combination of acts as a conspiracy," which is insufficient. Accordingly, Count IX should be dismissed with prejudice.

## II. Plaintiffs' Due Process Claim Fails Because J.S. and K.S. are Not State Actors

To state a claim under 42 U.S.C. § 1983, a plaintiff must show both that (1) the offending conduct was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of rights secured by the United States Constitution. *Moore v. Marketplace*, 754 F.2d 1336, 1352 (7th Cir. 1985). As a general rule, a private party's conduct is not actionable under Section 1983 as that conduct was not under the color of law. *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936 (1982). In order for a private person to be liable under Section 1983, that person's conduct must be "fairly attributable" to the State. *Id.* at 937. The Supreme Court in *Lugar* held that a private person may fairly be said to be a state actor only if 1) "he is a state official," 2) "he has acted together with or has obtained significant aid from state officials," or 3) "his conduct is otherwise chargeable to the State." *Id.* If limitations were not placed on private parties' potential liability under Section 1983, individuals "could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Id.*

None of the three limited circumstances established in *Lugar* apply here. As to the first, J.S. and K.S. are not state officials and Plaintiffs do not allege they are. The third circumstance in *Lugar* also is not met because J.S. and K.S. did not engage in conduct chargeable to the state. This prong, also called the "public function" test, applies where the private party "performs functions that are traditionally the exclusive prerogative of the State." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996); *See also Terry v. Adams*, 345 U.S. 461, 468-70 (1953) (conducting elections of public officials); *Marsh v. Alabama*, 326 U.S. 501, 505-09 (1946) (operation of a company town). More often, the Supreme Court has declined to find an exclusive state function. *See Blum v. Yaretsky*, 457 U.S. 991 (1982) (operation of a nursing home); *Rendell-Baker v. Kohn*, 457 U.S.

6

830 (1982) (education of children); *Flagg Bros., Inc.*, 436 U.S. 149 (1978) (enforcement of statutory lien). J.S. and K.S., as complainants to the DCFS regarding abuse of their children and witnesses in the proceedings that followed, certainly do not fall within the Supreme Court's contemplation of persons performing functions "traditionally and exclusively performed by the State."

The second limited circumstance set forth in *Lugar* also does not apply because J.S. and K.S. were not acting together or with aid from state officials. Courts sometimes call this third prong of *Lugar* the "joint action" theory. *Cunningham v. Southlake Center for Mental Health*, 924 F.2d 106, 107 (1991). The court's analysis of whether the joint action doctrine applies parallels the court's analysis under a Section 1983 conspiracy claim. *See id.* at 107-08 ("A charge of joint action amounts to alleging some agreement between private and public actors to violate plaintiff's constitutional rights.").

In Count VI, Plaintiffs allege that Defendants, Casady, J.S. and K.S., violated B.F.G.'s rights by "suppressing, and conspiring among themselves to suppress, exculpatory evidence, and by refusing to cooperate with the Court's investigation of the suppression." (Compl. ¶ 77.) As previously discussed as to Plaintiffs' conspiracy claim, Plaintiffs have set forth no facts that would constitute circumstantial evidence that J.S. and K.S. "somehow reached an understanding to deny the plaintiffs their constitutional rights." *See Moore*, 753 F.2d at 1352.

Moreover, "[m]ere use of the courts by a private party" does not constitute governmental action for purposes of § 1983. *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984). J.S. and K.S. reported the abuse of their children by B.F.G., DCFS personnel conducted victim sensitive interviews of J.L.S. and N.S. and a conclusion was made following these interviews that the charge against B.F.G. was supported by credible evidence (i.e., it was "indicated"). As witnesses at the hearing, J.S. and K.S. cannot be said to have engaged in governmental action. *See Barnes v. Maytag Corp.*, 799 F.Supp. 926, 931 (S.D. Ill. 1992). In such situations, "the state officers are not joint participants with the litigant or the complainant." *Id*. In doing so, the state officers exercise independent judgment—e.g., DCFS decides whether or not probable cause exists to pursue a report of abuse and the judge decides who should prevail among litigants. *See id.* Even if, *arguendo,* the investigator failed to exercise proper judgment or conduct his own investigation, the private individual could not suddenly become liable as a state actor because of the state actor's alleged neglect of his duties. *See Wilson v. McCrae's* 413 F.3d 692

(7th Cir. 2005) (finding that a department store could not be sued under Section 1983 when it had a suspected shoplifter arrested even though the police officer admitted that he did not do his own independent investigation before making the arrest.)  Accordingly, J.S's. and K.S.'s conduct could not be fairly attributable to the State and, therefore, it is not actionable under Section 1983.  Count VI should be dismissed with prejudice.

### III. Plaintiffs' Malicious Prosecution Claim Should Be Dismissed Because the Required Elements of the Claim are Not Met and, as an additional basis, Defendants are Immune From Liability

In their claim of malicious prosecution in Count XIII, Plaintiffs attempt to hold J.S. and K.S. liable for causing judicial proceedings to be initiated against B.F.G. "when they caused false sex abuse charges to be indicted against B.F.G. without probable cause and with malice." (Compl. ¶ 85.)  Plaintiffs' malicious prosecution claim should be dismissed because a report to police cannot be the basis of a malicious prosecution claim, Plaintiffs fail to allege that plaintiffs did not have probable cause to report, and policy evidenced by Illinois statute prohibits liability for good faith reports of child abuse.

Malicious prosecution suits are disfavored by law because of the potential deterrent effect on the reporting of crime.  *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921 (7th Cir. 2001).  Thus, to prevail on a malicious prosecution claim under Illinois law, a plaintiff must show each of the following: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages.  *Id.* at 921-22.  The absence of even one of these elements will preclude recovery for malicious prosecution.  *Id.* at 922 (*citing Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997)).  In Illinois, criminal proceedings are commenced by the filing of a complaint, an indictment, or an information.  *Id.*; *See* 725 ill. Comp. Stat. Ann.N. 5/111-1 (West 1996).  A private citizen must take some official action to "commence a prosecution"—he does not do so by merely giving false information to the proper authorities.  *Id.*; see also *Kiswani v. Phoenix Security Agency, Inc.*, 529 F.Supp.2d 949 (N.D.Ill. 2008.  Typically, a private citizen institute*s* a criminal judicial proceeding by filing a complaint.  *Logan*, 246 F.3d at 922 (*citing Schwartz v. Coulter*, No. 91-C7954, 1993 WL 398578 at *8 (N.D.Ill. Oct.6, 1993)).  Plaintiffs never allege that J.S. and K.S. initiated the proceedings in any way other than reporting their suspicion of abuse to the police.  Such action is insufficient to support a malicious prosecution claim.

Additionally, the existence of probable cause is a complete defense to a malicious prosecution claim. *Id.* at 926. Probable cause is defined as " 'a state of facts ... that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.' " *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill.App.3d 30, 684 N.E.2d 935, 944 (1997). Plaintiffs' allegations themselves support J.S. and K.S.'s reasonable suspicion that their children had been sexually abused. Plaintiffs offer no facts in support of their allegation of malice, nor do they allege any facts showing that J.S. and K.S. were not acting in good faith when they reported their suspicion. Plaintiffs do allege, however, that DCFS investigators conducted VSIs and found that the charges were "indicated." The DCFS independent investigation was based on interviews of B.F.G., E.G., M.G., J.L.S., and N.S. Probable cause, however, is far less than a finding based upon investigation—it need only be a reasonable suspicion. The state of facts as Plaintiffs plead them—two young children tell their mother a babysitter has sexually abused him—would lead a parent of ordinary care to at least *suspect* that the offense occurred. That suspicion is sufficient to defeat Plaintiffs' malicious prosecution claim.

Furthermore, the terms within the Abused and Neglected Child Reporting Act evidence a policy that seeks to protect individuals such as J.S. and K.S. from litigation arising from their good faith efforts to protect their children from sexual abuse. *See Evans v. Torres*, No. 94 C 1078, 1996 WL 5319, at *8 (1996) ("Section 9 [of the Act] grants immunity to those acting in good faith."). The Abused and Neglected Child Reporting Act is intended to "provide for the reporting and investigation of child abuse and neglect" in instances such as this where an individual has reason to suspect a caregiver abused a child. 325 ILCS 5/2. Accordingly, the Act encourages persons other than mandated reporters to make reports of abuse or neglect if the person has reasonable cause to believe a child may be abused or neglected. 325 ILCS 5/9. Furthermore, the Reporting Act provides immunity from liability for "[a]ny person . . . under this Act, participating in good faith in the making of a report or referral." 325 ILCS 5/9. *See also*, *Evans,* 1996 WL 5319, at *8.

As used in the Reporting Act and the corresponding DCFS administrative procedures, one has "reasonable cause to believe" abuse is occurring simply when he or she "suspect[s]" abuse is occurring. *Doe v. Dimovski*, 783 N.E.2d 193, 198 (2nd Dist. 2003). J.S. and K.S. are afforded immunity from liability as they had reason to suspect that B.F.G. sexually abused their children by virtue of their children's statements.

9

Plaintiffs' hyperbolic and factually unsupported attack of J.S. and K.S. for reporting suspected sexual abuse of their children is in direct contravention of the public policy inherent in the Abused and Neglected Child Reporting Act. Plaintiffs have made no factual allegation that J.S. and K.S. should have ignored their children's complaints. For policy reasons and, moreover, because Plaintiffs do not plead the required elements of a malicious prosecution claim, Count VIII should be dismissed with prejudice.

### IV. **Plaintiffs' Defamation *Per Se* and False Light Invasion of Privacy Claims Are Factually Insufficient.**

Claims for defamation and false light invasion of privacy must be supported by specificity as to the alleged defamatory or false statement. Plaintiffs have provided no specificity as to what was said by J.S. and K.S., when any alleged statements were made or to whom any alleged statements were made.

#### A. **Plaintiffs' Defamation *Per Se* Claim Requires Specific Facts to Support It.**

Without specificity as to the alleged defamatory statements, a claim of defamation will not survive a motion to dismiss. *Dry Enterprises, Inc. v. Sunjut AS*, No. 07 C 1657, 2008 WL 904902, at *4 (N.D. Ill. Mar. 31, 2008) Some courts have required plaintiffs to specifically state the words alleged to be actionable. *Id.* (*citing Woodward v. Am. Family Mut. Ins. Co.*, 950 F.Supp. 1382, 1388 (N.D. Ill. 1997); *Seaphus v. Lilly*, 691 F.Supp. 127, 134 (N.D. Ill. 1988)). Other courts have found that "general knowledge of the exact language used is necessary to form responsive pleadings." *Id.* (emphasis added) (*quoting Chisolm v. Foothill Capital Corp.*, F.Supp. 1273, 1284 (N.D. Ill. 1996)).

Thus, courts require some level of detail. *See id.* In *Cozzi v. Pepsi-Cola General Bottlers, Inc.*, the plaintiff alleged that the defendant "black-balled" plaintiff to prospective employers and made accusations and caused the circulation of rumors among the plaintiff's former colleagues, friends, and prospective employers that all of her assets were frozen, her assets at her home were seized, her motor vehicles were impounded, she was taken from her home in handcuffs and she misappropriated money from her former employer. No. 95 C 3648, 1997 WL 308841, at *6 (N.D. Ill. June 2, 1997). The court dismissed the plaintiff's defamation claim on other grounds, but also found that these allegations were insufficiently specific to meet pleading standards as they lacked detail, such as the dates the statements were made, to whom they were said, the context, the timing and the words used. *Id.*

10

### B. Plaintiffs' False Light Invasion of Privacy Claim Requires Specific Facts to Support It.

To support a false-light claim, generally, a plaintiff must prove that he was placed in a false light before the public as a result of the defendant's action, that the false light in which he was placed would be highly offensive to a reasonable person, and that the defendant acted with knowledge that the information he published was false or with reckless disregard for whether the information was true or false. *Hurst v. Capital Cities Media, Inc.*, 323 Ill.App.3d 812, 816 (5th Dist. 2001). "Absent some allegation as to what *specific* statement was false," however, "a claim based on false-light invasion of privacy fails to satisfy a basic element of the cause of action." *Id.* (emphasis added) (finding that plaintiff's failure to identify which specific statement in newspaper article formed basis of false-light claim permitted dismissal of action.

### C. Plaintiffs' Defamation *Per Se* and False Light Invasion of Privacy Claims Fail Because They Lack Specific Factual Support.

Plaintiffs claim that J.S.'s and K.S.'s allegedly false reports about B.F.G.'s abuse became public "through communication with the children's school administrators and classmates, and communication with neighbors." (Compl. ¶ 101.) Even in the background facts, Plaintiffs never allege what J.S. and K.S. said. (*Id.* at ¶ 45). The only statement alleged is about the children: J.L.S.'s and N.S.'s alleged reference to B.F.G. as a child molester and a person who "does bad sex things." J.L.S. and N.S. are not defendants and their statements cannot be used to support the claims against J.S. and K.S. Indeed, Plaintiffs do not allege any facts sufficient to support a false-light claim or defamation *per se* claim against J.S. and K.S.. Thus, Counts X and XII should be dismissed with prejudice.

### V. Plaintiffs' Claim of Intentional Infliction of Emotional Distress in Insufficient

Plaintiffs fail to state a cause of action for intentional infliction of emotional distress because the facts do not show that J.S. and K.S. engaged in "extreme and outrageous" conduct. To state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. *Cangemi v. Advocate South Suburban Hosp.*, 364 Ill.App.3d 446, 470 (1st Dist. 2006). In addition, the complaint "must be specific and detailed beyond what is normally considered permissible in pleading a tort action." *Welsh v. Commonwealth Edison Co.,* 306 Ill.App.3d 148, 155, 713 N.E.2d 679 (1st Dist. 1999).

J.S.'s and K.S.'s conduct, if the allegations of Plaintiffs' Amended Complaint are taken as true, does not reach the required standard of "extreme and outrageous." Liability arises only where the conduct complained of was "atrocious, and utterly intolerable in a civilized community." *Pavlik v. Kornhaber*, 326 Ill.App.3d 731, 743-44 (2001) (*quoting* Restatement (Second) of Torts § 46, Comment d, at 73 (1965)). When the Illinois Supreme Court originally recognized the tort in *Knierim v. Izzo*, it described actionable conduct as follows: "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions <u>wholly</u> <u>lacking</u> in social utility." *Schiller v. Mitchell*, 357 Ill.App.3d 435, 447 (2nd Dist. 2005) (emphasis added) (*quoting Knerim v. Izzo*, 22 Ill.2d 73, 85 (1961)). The conduct under scrutiny in *Knierim* was the defendant's threat to murder the plaintiff's husband and the fulfillment of the threat. *Id.* "Although one may suffer horror, grief, shame, humiliation or worry, these mental conditions alone are not actionable." *Public Finance Corporation v. Davis*, 66 Ill.2d 85, 90 (1977).

J.S.'s and K.S.'s conduct in reporting the suspected abuse of their children to DCFS and allegedly informing community members of the abuse would not rise to the level of "extreme and outrageous behavior" that is "wholly lacking in social utility." In addition, the claim is not detailed and specific as is required. Therefore, Count IX should be dismissed with prejudice.

### VI. Plaintiffs Fail to State a Claim for Negligent Supervision of Minors

Plaintiffs' allegations in support of their negligent supervision claim do not give rise to a cause of action under Illinois law. Plaintiffs ask this Court to find that J.S. and K.S. are liable for words that, allegedly, their seven year old and nine year old children said to other classmates at school and to peers in the neighborhood. Plaintiffs provide no basis for their claim other than the parent-child relationship between Defendants and their children, which does not amount to a cause of action. Parents in Illinois are not liable for the torts of their minor children merely because of the parent-child relationship. *Lott v. Strang*, 312 Ill.App.3d 521, 523-24 (4th Dist. 2000).

To state a claim for negligent supervision, a plaintiff must show that (1) the defendants were aware of specific instances of prior conduct sufficient to put them on notice that the act complained of was likely to occur and (2) defendants had the opportunity to control their children. *Appelhans v. McFall*, 325 Ill.App.3d 232, 239 (2d Dist. 2001). Plaintiffs have not alleged that J.S. and K.S. were aware of specific instances of prior conduct to put them on notice. And, moreover, the facts, taken in the light most favorable to Plaintiffs, do not show that J.S. and K.S. had the ability or opportunity to control what their children said outside their presence.

In Illinois, parental liability for the torts of minor children is premised on Section 316 of the Restatement (Second) of Torts. *Bland v. Candioto*, No. 04 C 8361, 2006 WL 2735501, at *4 (N.D.Ill. 2006); *Lott*, 312 Ill.App.3d at 523-24. Restatement Section 316 states:

> A parent is under the duty to exercise reasonable care so [as] to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent: (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity or opportunity for exercising such control.

Restatement § 316, at 123-24. As Illinois courts have explained, Restatement Section 316 "imposes a duty on parents when they are in a position to exercise *immediate* control over their children to prevent some foreseeable harm." *Bland*, 2006 WL 2735501, at *4 (*citing Lott*, 312 Ill.App.3d at 524).

### A. Plaintiffs Do Not Allege Defendants Had Knowledge of Specific Prior Instances of Conduct.

As a threshold matter, Plaintiffs' negligent supervision claim fails because Plaintiffs never allege that K.S. and J.S. knew of specific prior instances in which their children spoke openly at school or in the neighborhood about B.F.G.'s abuse or why they were not allowed to play with E.G. and M.G. *See Appelhans*, 325 Ill.App.3d at 234, 241 (claim based on five-year old boy colliding with plaintiff on his bike dismissed because plaintiff had not alleged that defendant parents were aware of a specific prior instances of where the boy negligently struck a pedestrian while on a bicycle).

### B. K.S. and J.S. Could Not Have Controlled What Their Children Said, and Plaintiffs Do Not Show How They Could Have.

Even if Plaintiffs had alleged that J.S. and K.S. had knowledge of specific prior instances of conduct, it still would not give rise to a duty to control under Restatement 316. *See Lott*, 312 Ill.App.3d at 526. To illustrate, in *Lott*, the plaintiffs were involved in an automobile collision with a minor, who was allegedly intoxicated at the time, and they sued his parents for negligent supervision. *Id.* at 523. The defendants were allegedly aware that their son had previously been at fault in a traffic accident where he struck a deputy sheriff. *Id.* The court found that even accepting all allegations contained in the plaintiffs' complaint as true, the plaintiffs failed to state a cause of action because the parents' knowledge of their son's prior accident did not give rise to a duty pursuant to Section 316 of the Restatement. *Id.* at 526. The court noted that Section 316 of

13

the Restatement does not require parents to "prevent their children from ever entering into a situation where they might commit a negligent act." *Id.* at 525.

The following illustration from Restatement Section 316 clarifies the type of circumstances under which a duty to control is intended to arise:

> A is informed that his six-year-old child is shooting at a target in the street with a .22 rifle, in a manner which endangers the safety of those using the street. A fails to take the rifle away from the child, or to take any other action. The child unintentionally shoots B, a pedestrian, in the leg. A is subject to liability to B.

*Lott*, 312 Ill.App.3d at 525 (*quoting* Restatement § 316, Illustration, at 124 (1965)). Far from a six year old with a gun or even a teenager with a habit of reckless and injurious driving, Plaintiffs are seeking to hold J.S. and K.S. liable for words that their seven and nine year old children allegedly said to other children at school and while playing in the neighborhood. Plaintiffs argue that J.S. and K.S. should have known that by discussing the allegations of abuse with "anyone," J.L.S. and N.S were engaging in "tortious and unlawful conduct." (Compl. ¶ 108.) The issue, however, is not whether J.S. and K.S. knew that such speech constituted tortious and unlawful conduct, but whether they had the ability to control such conduct while their children were at school and out in the neighborhood.

Also relevant to the question of control is that this is, in general, the conduct of seven and nine year olds. J.L.S.'s and N.S.'s ages are relevant to the type of conduct at issue and the parents' ability to control it. As Illinois courts have held, when a child is between 7 and 14 years old, the trier of fact must consider the "age, capacity, intelligence, and experience of the child" in light of the rebuttable presumption that a child between the ages of 7 and 14 is incapable of negligence. *Savage v. Martin*, 256 Ill.App.3d 272, 281 (1993). The plaintiff in *Appelhans* argued that the different standard applied to younger children only implies that the parents of younger children should be on notice that closer supervision is necessary, but the court rejected that argument. 325 Ill.App.3d at 239-40. According to the court, by contending that parents should be liable for all negligent acts of their younger children, plaintiff was attempting to hold parents strictly liable for failing to prevent their child's negligence, which "is unreasonable and unsupported by the law." *Id.* at 239.

Similarly, Plaintiffs are attempting to hold J.S. and K.S. liable for what their seven and nine year old said during a time when the parents did not have the opportunity to be with their children, unless Plaintiffs expected them to attend elementary school alongside both of their

14

children. Holding a parent liable for not adequately controlling everything their seven and nine year old children, who as a matter of law, are "incapable of negligence," tell their friends at school is beyond reason.

Plaintiffs have no factual support anywhere in their Complaint for their conclusory allegation that "K.S. and J.S., at all relevant times, had the ability to control their children." (Compl. ¶ 107.) As repeatedly noted in Illinois courts, Restatement section 316 only "imposes a duty on parents when they are in a position to exercise *immediate* control over their children to prevent some foreseeable harm." *Lott*, 312 Ill.App.3d at 524 (emphasis added); *see also, e.g.*, *Bland*, 2006 WL 2735501, at *4. No conceivable facts could support Plaintiffs' proposition that parents have the ability to control what their seven and nine year-old children tell their peers while at school or playing in the neighborhood, particularly when they were not put on notice that their children had said such things in those contexts previously. For all these reasons, Count XIII should be dismissed with prejudice.

**VII. The Illinois Parental Responsibility Statute Plainly Does Not Permit Liability in This Case**

Plaintiffs' statutory claim for parental liability under the Illinois Parental Responsibility Law is precluded by the plain terms of the statute and must be dismissed. *See* 740 ILCS 115/2. The statute imposes liability on parents for damages attributable to the willful or malicious injury to person or property occasioned by unemancipated minor children who are *between 11 and 19 years of age* and reside with the parents. 740 ILCS 115/2 (emphasis added); 740 ILCS 115/3.

So, even if, *arguendo*, this Court were to accept Plaintiffs' characterization of words said by children at school as "willful and malicious injury to person or property", the statute explicitly does not apply to the actions of J.L.S. and N.S. because they were ages nine and seven at the time of the events described in Plaintiffs' Complaint (Compl. ¶ 15). *See Duncan v. Rzonca*, 133 Ill.App.3d 184, 200 (2nd Dist. 1985.) It is clear from the statute alone that plaintiffs do not have a claim under the Illinois Parental Responsibility Law, and Count XIV should be dismissed with prejudice.

## CONCLUSION

For all the reasons stated above, Counts VI, VII, VIII, IX, X, XI, XII, XIII and XIV as alleged against Defendants J.S. and K.S. should be dismissed with prejudice.

Dated: May 30, 2008                                    Respectfully submitted,

                                                                                 s/ Molly E. Thompson (ARDC No. 6293942)
Daniel M. Noland                                        One of the Attorneys for Defendants,
Sonia A. Desai                                              J.S. and K.S.
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
312.876.1700

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2008, I electronically filed the foregoing **Memorandum in Support of Defendants, J.S.'s And K.S.'s, Motion to Dismiss Plaintiffs' Amended Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

James G. Sotos & Associates, Ltd.
550 East Devon
Suite 150
Itasca, Illinois  60143
630.735.3300
630.773.0980 (facsimile)

James C. Stevens, Jr.
Office of the Illinois Attorney General
100 West Randolph Street, Suite 11-200
Chicago, Illinois  60601
312.814.6788
312.814.6885 (facsimile)

Querrey & Harrow, Ltd.
175 West Jackson Boulevard
Suite 1600
Chicago, Illinois  60604
312.540.7000
312.540.0578 (facsimile)

Ettinger, Besbekos, & Schroeder, P.C.
12413 South Harlem Avenue
Suite 203
Palos Heights, Illinois  60463
708.923.0368
708.598.0041 (facsimile)

Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, Illinois  60805
708.424.5678
708.425.1898 (facsimile)

s/ Molly E. Thompson (ARDC No. 6293942)
Molly E. Thompson

.
CHICAGO\2453304.3
ID\METH