IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| B.F.G., by his parents and next friends, R.G and B.G., and R.G., and B.G., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIE BLACKMON, etc., et al., <br><br><br><br><br> Defendants. | No. 08 C 1565 <br><br> Judge Conlon <br> Magistrate Judge Nolan <br><br> Jury Demand |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO WILLOW SPRINGS, OFFICER WIDLACKI AND DETECTIVE TABORDON, AND J.S. AND K.S.' MOTIONS TO DISMISS

Plaintiffs B.F.G., by his parents and next friends, R.G. and B.G., and R.G. and B.G., by and through their attorneys, James G. Sotos and Julie K. Bisbee of JAMES G. SOTOS & ASSOCIATES, LTD., and Lance D. Northcutt of BERG NORTHCUTT & BERG, in Opposition to Defendants Willow Springs, Officer Widlacki, Detective Tabordon and J.S. and K.S.' Motions to Dismiss, state as follows:

### I. BACKGROUND

Plaintiffs are a minor child, B.F.G., and his parents, R.G and B.G., who, before B.F.G. was falsely accused and "indicated" on a charge of sexual exploitation, were all well respected members of their local neighborhood and school communities. (Am. Compl. ¶¶ 4-5.) On January 15, 2007, Plaintiffs' minor neighbors, J.L.S. and N.S., then nine and seven years old, respectively, were caught by their grandmother touching each others' genitals in their basement, and using sexually inappropriate language. (*Id.* ¶¶16-17.) When confronted by their mother, the

1

children purportedly attempted to explain their conduct by claiming that they had been abused by B.F.G. when he had babysat them (*Id.*) At the time, both J.L.S. and N.S. had histories of lying and acting out sexually which predated the onset of B.F.G.'s having babysat them. (*Id.* ¶ 18.)

On January 16, 2007, J.L.S. and N.S.' parents, Defendants J.S. and K.S., reported the alleged abuse to the Willow Springs, Illinois Police Department, and provided the police with toy objects which had purportedly been inserted into J.L.S.'s anus. J.S. and K.S. did not relay their knowledge of their childrens' histories of lying and engaging in sexually inappropriate behavior. (*Id.* ¶¶ 17-18.) No forensic testing testing was ever done on the toy objects. (*Id.* ¶ 18.)

Following Defendants J.S. and K.S.' report to the police, Officer Widlacki of the Willow Springs Police Department referred the matter to the Department of Children and Family Services ("DCFS"). (*Id.* ¶ 19.) During the ensuing DCFS investigation, the DCFS investigator, Defendant Blackmon, violated several important DCFS protocols intended to safeguard against false accusations of sexual abuse, including failing to interview the accusers or their father, lying about the substance of interviews he did conduct, ignoring compelling evidence which undermined the accusers' contentions, failing to inspect the locations of the alleged abuse, failing to collect and/or test physical evidence, and falsifying records to cover up his failure to complete key investigative tasks. (*Id.* ¶ 28 (a)-(p).) Subsequently, Defendant Butts conducted fundamentally flawed victim sensitive interviews (VSI's) of the minor accusers during which she also failed to adhere to routine and well established procedures and protocols designed specifically to minimize the risk that innocent persons will be falsely charged with debilitating charges of sexual abuse. (*Id.* ¶ 29 (a)-(e).) Moreover, during the VSI's, the minor accusers made additional outlandish allegations for the first time which included that B.F.G. had anally assaulted them with a stick of toy butter. (*Id.* ¶ 31.) During ensuing medical examinations, the

childrens' accusations became even more bizarre and unbelievable, and included a claim, again for the first time, that B.F.G. had punched N.S. in the nose causing her to bleed, and that the plastic toys allegedly used to sodomize her had caused anal bleeding. (*Id.*) Medical examinations failed to corroborate these allegations. (*Id.*)

The subsequent VSI's of B.F.G.'s younger siblings revealed additional evidence which further undermined the minor accusers' outlandish contentions. (*Id.* ¶ 32.) Nonetheless, Defendant Blackmon inexplicably found the charge of sexual exploitation "indicated." (*Id.* ¶35.) After DCFS made its "indicated finding," Officer Widlacki and Detective Tabordon, also defendants in this matter, arrested B.F.G. (*Id.* ¶ 37.) However, the state's attorney's office declined to pursue criminal charges against B.F.G. (*Id.*)

After baselessly being "indicated" of child abuse by DCFS, B.F.G.'s name was placed on the State Central Register. (*Id.* ¶ 35.) B.F.G. contested the "indicated finding" through an administrative hearing. (*Id.* ¶¶ 41-44.) Defendants Casady, J.S., and K.S. conspired to prevent B.F.G. from receiving a fair administrative hearing by working in concert to hide important exculpatory evidence from the court which, in part, caused the proceeding to drag out over the course of five months. (*Id.* ¶ 43 (a)-(i).) Ultimately, B.F.G. defeated the "indicated finding" lodged against him. (*Id.* ¶ 44.) However, he and his family have heretofore been, and continue to be, subjected to debilitating defamation and the utter destruction of their good name and standing in their communities as a result of the pervasive false public statements by Defendants J.S., K.S., and their children, J.L.S. and N.S., including that Plaintiff B.F.G. is a "child molester" and "does bad sex things." (*Id.* ¶¶ 45-47.)

## II. STANDARD OF REVIEW

When deciding a motion to dismiss, the Court must accept as true plaintiff's well-

3

pleaded allegations. *Albright v. Oliver*, 510 U.S. 266, 268 (1994) The Court must also "draw all inferences and resolve all ambiguities in the plaintiff's favor." *Dimming v. Wahl*, 983 F.2d 86, 87 (7th Cir. 1993). The complaint must "describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(*citing Bell Atlantic Corp. v. Twombly*, ---U.S.---, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Further, the allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Id.*

A plaintiff may state a claim arising under 42 U.S.C. § 1983 against a person who, under color of law, subjects, or causes to be subjected, a citizen to a deprivation of constitutional rights. *Johnson v. Larabida Children's Hosp.*, 372 F.3d 894, 896 (7th Cir. 2004). A private actor may be liable under Section 1983 if his actions are "fairly attributable to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003).

III. **ARGUMENT**

    A. **Plaintiffs Have Adequately Pled a False Arrest Claim Against Officers Tabordon and Widlacki (Count V).**

Willow Springs police Officer Widlacki and Detective Tabordon (Willow Springs Defendants) contend that Count V alleging false arrest is deficient because "probable cause is apparent on the face of the Amended Complaint." (Willow Springs Mot. to Dismiss, p. 3.)

A lack of probable cause is an essential predicate for a plaintiff's Section 1983 claim for unlawful arrest. *Kelly v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Probable cause exists when the facts and circumstances within a police officer's knowledge at the time of the arrest "and of which they have reasonably trustworthy information, . . . are sufficient to warrant a prudent person [to believe] that a suspect had committed or was committing an offense." *Id.* Typically,

4

the existence of probable cause is a question for the jury unless "there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Neimen v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000). A complaint of a "single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to become suspicious, in which case the officer has a further duty to investigate." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003). As the Seventh Circuit has pointed out, whether an officer has reason to believe a complaint is "fishy" becomes an important qualification to his claim of probable cause. *See Guzell v. Hiller*, 223 F.3d 518, 520 (7th Cir. 2000).

Against a backdrop of those principles, Defendants' effort to establish probable cause on the face of the Complaint must fail. Defendants contend probable cause exists as a matter of law because (1) the accusers' parents told Widlacki their seven and nine year old children claimed they were assaulted by Plaintiff B.F.G., and (2) they relied on DCFS's "indicated" finding of sexual exploitation before arresting B.F.G. (Am. Compl. ¶¶ 35-37.) As explained below, however, neither the parents' complaint nor the DCFS finding supports a finding of probable cause as a matter of law.

Initially, Defendants do not contend that Defendants' J.S. and K.S.' report of the alleged crime alone gave them probable cause to arrest. Indeed, all Defendant Widlacki received was a second hand report of a possible crime from J.S. and K.S. that B.F.G. had assaulted their children. There is no indication from the Amended Complaint that Defendant Widlacki was told anything about the circumstances of the childrens' "outcry," particularly that J.L.S. and N.L.S. had just been caught by their grandmother in the incredibly embarrassing act of touching each other's genitals in the basement, and using sexually inappropriate language while doing so. At a

minimum, those circumstances would have led any competent police officer to question, not only whether B.F.G. had committed any crime, but whether any crime was committed at all. Indeed, the childrens' purported effort to somehow blame B.F.G. for their behavior should have caused any competent law enforcement officer to question whether the children were employing the all too familiar strategy, particularly utilized by young children, of minimizing their culpability by deflecting blame for their actions to an innocent third party. Thus, this was not a case in which it was apparent that a crime had occurred, and the only remaining question was identifying the perpetrator. Under such circumstances, the courts are understandably reluctant to discredit a police officer's reliance on the identification of a known victim or witness with no apparent bias or other reason to lie. *See, e.g., Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 525 (7th Cir. 2001).

Moreover, other circumstances surrounding the outcry in this matter would have raised additional suspicions about the reliability of the information he was receiving if Defendant Widlacki had inquired before referring the matter to DCFS. For instance, the fact that both accusers had prior histories of acting out sexually and lying about their conduct would have alerted a reasonably competent officer to conduct further inquiries, particularly in light of the fact that Widlacki did not even talk to the accusers themselves, but rather, was receiving the information in a hearsay form from the parents. And, while Plaintiff does not assert that hearsay cannot inform a probable cause determination, it is well known that there are heightened risks in relying upon the hearsay claims of children in an analogous context. *See Cortez v. McCauley*, 478 F.3d 1108, 1118-1119 (10th Cir. 2007) (finding that a reasonable officer should know that a double hearsay allegation of child abuse, from a two year old child, does not give rise to probable cause to arrest, and that, in such a case, further investigation is necessary). Similarly, in

6

this matter, the hearsay contentions of J.L.S. and N.S. against B.F.G., as reported to the police, clearly could not alone support a finding of probable cause.

In any event, Defendants do not appear to contend that the parents' initial report, on its own, provided them with probable cause to arrest. Instead, they attempt to deflect responsibility for their decision to arrest B.F.G. to the DCFS Defendants, by contending that they simply notified DCFS of the allegations in accordance with their statutory obligation, and only arrested B.F.G. after DCFS had completed its own investigation which resulted in the "indicated" against B.F.G. on the charge of sexual exploitation. (Am. Compl. ¶¶ 35-37.)

Defendants' contention is fundamentally misguided. Specifically, while the Willow Springs Defendants correctly point out that they were duty bound to report the parents' accusations to DCFS, they were never under any duty, and in fact, had no right, to arrest the minor Plaintiff, B.F.G., until they had concluded that probable cause was present. Indeed, nothing about the DCFS decision to indicate the charge of sexual exploitation against B.F.G. required the Willow Springs Defendants to do anything, let alone arrest B.F.G. and attempt to have him charged with a crime. Rather, the Willow Springs Defendants could have simply presented the case to the State's Attorney's office to determine whether charges would be approved before arresting B.F.G, or they could have awaited the outcome of B.F.G.'s administrative challenge to the indicated finding before taking any action. However, having made the decision to arrest B.F.G. immediately after Defendant Blackmon "indicated" the sexual exploitation charge, Willow Springs Defendants cannot abdicate responsibility for that decision by attempting to rely on the horribly misguided and mishandled DCFS investigation which resulted in that finding. Indeed, Plaintiff's complaint is replete with allegations that undermine any attempt to establish, on the face of the pleadings, that DCFS's investigation provided

probable cause, including, in addition to the highly suspicious circumstances surrounding the childrens' initial outcry:

1. The accusations changed and were wildly embellished with each subsequent recitation (Am. Compl. ¶¶ 17-18, 21);

2. though alleged to have been present for and subjected to some of the same abuse as the accusers, B.F.G.'s younger siblings, E.G. and M.G., spontaneously and credibly denied the accusations without having had any opportunity to be manipulated or coached by their brother or parents (*Id.* ¶¶ 21-22);

3. the accusers had a history of sexually inappropriate behavior and lying about their conduct which predated the onset of B.F.G.'s having babysat them, including playing "naked theater" and J.L.S. playing with others with his pants down (*Id.* ¶ 24);

4. the VSI's of the accusers violated key protocols intended to test the reliability of reports of abuse (*Id.* ¶ 29);

5. No effort was made during the VSI's to assess the reliability of the children and/or their accusations (*Id.*); and

6. medical evidence undermined the accusations of physical abuse (*Id.* ¶¶ 31, 35.)

Against that backdrop, the Amended Complaint alleges that the Willow Springs Defendants arrested the minor Plaintiff for a serious crime without having conducted the most rudimentary of investigations, in sole reliance on an inherently suspicious complaint, and an "indicated" DCFS finding reached after a fundamentally flawed investigation. There was no urgency which required an arrest at the time, and, not surprisingly, the State's Attorney's office promptly declined any charges against Plaintiff B.F.G. after the matter was presented to them. As it turned out, the State's Attorney's office was the only public agency which tread cautiously in this matter, and demonstrated any concern whatsoever, for the plight of a minor who has had his life irrevocably damaged by the slipshod and reckless decisions made by these Defendants. This Honorable Court should deny the Willow Springs Defendants' Motion to Dismiss Count V.

## B. Plaintiffs Have Stated Conspiracy Claims Against the Willow Springs Defendants Under Section 1983 (Count VII) and Illinois Common Law (Count IX).

A section 1983 conspiracy claim requires allegations that "defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding." *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000). Traditional notice pleading standards apply to conspiracy claims. *Orange v. Burge*, No. 04-C0168, 2005 U.S. Dist. 742641, at *14 (N.D. Ill. March 30, 2005). It is "enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Similarly, under Illinois law, a claim for civil conspiracy "must include allegations of an agreement and a tortuous act committed in furtherance of that agreement." *Theriault v. Village of Schaumburg*, No. 02-7058, U.S. Dist. WL 31803826, at *4 (N.D. Ill. Dec. 12, 2002).

The Willow Springs Defendants assert that Plaintiffs' conspiracy claims are deficient because they fail to sufficiently a meeting of the minds between themselves and other Defendants and they allege no overt acts by Defendants in furtherance of the agreement. (Willow Springs Defs.' Mot. to Dismiss, pp. 6-10.) To the contrary, Plaintiffs' allegations do in fact allege an agreement among defendants "to deprive B.F.G. of his right to be free from false arrest." (Am. Compl. ¶ 82.) Specifically, the Complaint alleges that, following the completion of the VSI's, Defendants Blackmon of DCFS and Defendant Butts of the Child Advocacy Center, attempted to coerce a confession from B.F.G suggesting he would only be charged as a minor if he confessed. (Am. Compl. ¶34.) The Complaint further alleges that, after B.F.G. refused to confess, Blackmon immediately "indicated" the charge of sexual exploitation, and the Willow Springs defendants arrested B.F.G. that very same day. (*Id.* ¶¶ 35-37.) These allegations clearly support the inference that the Willow Springs Defendants worked in concert with the

9

DCFS and CAC Defendants to cause B.F.G. to be arrested without probable cause in order to coerce a confession from him, and persuade him to reconsider his refusal to confess. It was only the State's Attorney's office's refusal to pursue any criminal charges which derailed Defendants' plans.

The above allegations sufficiently describe the parties, general purpose, and approximate date of the conspiracy so that defendants have notice of what they are charged with. *Walker, supra*, 288 F.3d at 1007. The Willow Springs Defendants' Motion to Dismiss Count VII and Count IX of the Amended Complaint should, therefore, be denied.

### C. Plaintiffs Have Stated an IIED Claim Against the Willow Springs Defendants.

The basis of Plaintiffs' claim against Widlacki and Tabordon is that they unlawfully arrested B.F.G. in order to coerce him to confess to a crime he did not commit, and then knowingly provided misleading information to B.F.G.'s school about whether he had been subjected to any criminal charges. Defendants contend that such allegations do not describe conduct that is extreme and outrageous as a matter of law. (Willow Springs Defs.' Mot. to Dismiss, pp. 10-12.)

When considering whether an unlawful arrest rises to the level of "extreme and outrageous" as required for a claim for IIED, "whether the false arrest was totally lacking in justification will be considered." *Id.* Conduct may be considered "outrageous" if it would "cause outrage in every member of the community." *Vavaris v. Delia*, No. 96-1904, 1996 U.S. Dist. WL 951287, at *4 (N.D. Ill. Sept. 11, 1996). Further, whether or not conduct is outrageous "can arise from abuse of a position of power, such as that held by police officers." *Id.*

Taking into account the fact that there was no reasonable justification for B.F.G.'s arrest, Widlacki and Tabordon's conduct was extreme and outrageous. Indeed, Plaintiffs allege much

more than simply an instance of mistaken probable cause. *See DuFour*, 969 F.Supp. at 1123. Specifically, Plaintiffs have described above a myriad of factors which would have led any police officer who had even the slightest concern for a child whose life he was about to irrevocably damage, to exercise a modicum of caution before arresting him, particularly where, as here, there was no need for the Willow Springs Defendants to do anything. The end result was a needless arrest which, when combined with Defendant Widlacki's knowing provision of misleading information to Plaintiff's school district, caused Plaintiffs extreme, enduring, and debilitating emotional distress. Accordingly, the Willow Springs Defendants' Motion to Dismiss Count XI should be denied.

### D. Plaintiffs Have Sufficiently Alleged that J.S. and K.S. Conspired to Deprive B.F.G. of his Due Process Right to a Fair Administrative Hearing (Count VI).

Defendants J.S. and K.S. do not dispute that Plaintiff B.F.G. had a due process right to a fair administrative proceeding. *See Peters v. Kiff*, 407 U.S. 493, 501 (1972). Rather, Defendants contend that Plaintiffs fail to sufficiently allege that, as private actors, they engaged in conduct which is fairly attributable to the state for purposes of subjecting them to liability under section 1983. (Motion to Dismiss, pp. 6-8.) This contention is incorrect. Plaintiffs have more than adequately alleged that these Defendants conspired with DCFS counsel Ms. Rhonda Casady to derail Plaintiffs' right to a fair administrative hearing. (Am. Compl. pp. 20-21.)

Plaintiffs have alleged that J.S. and K.S. acted in concert with Defendant Casady, to deny B.F.G. a fair administrative hearing through a calculated pattern of lies and deceit, intended to hide key physical evidence, and then, when their conduct was discovered, to alter their testimony in order to cover up their suppression of the missing evidence. (Am. Compl. ¶ 42.) Contrary to Defendants' contention, these allegations are more than sufficient to provide Defendants with

11

notice of the parameters, purpose, acts in furtherance of, and general time frame of the conspiracy.[2]

Moreover, Defendants' effort to avoid responsibility for their roles in the conspiracy by contending they are not state actors misses the mark. Though private actors, J.S. and K.S. may be held liable under Section 1983 as state actors when a "symbiotic relationship" exists between the state and the private actor, or when a "nexus" exists between the private act and the state action. *See Air Line Pilots Ass'n, Int'l v. Department of Aviation*, 45 F.3d 1144, 1145 (7th Cir. 1995)

The "nexus test" is satisfied when the state commands or encourages the private discriminatory action. *Air Line Pilots Ass'n.*, 45 F.3d at 1145. State action exists if the government "has exercised coercive power or has provided . . . significant encouragement, either overt or covert," in effecting the challenged action. *Id.,* quoting *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 546(1987) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004(1982)). Here, the pattern of events outlined by the Amended Complaint supports the inference that Defendant Casady, in her concerted efforts to deprive B.F.G. of his right to a fair hearing, encouraged J.S. and K.S. to lie repeatedly to the tribunal about the missing evidence.

Further, the symbiotic relationship between a state actor, Defendant Casady, and defendants J.S. and K.S., is evident. As stated in Plaintiffs' First Amended Complaint, the Defendants went to great lengths together to hide exculpatory evidence, conceal and lie about that evidence, and then evade the administrative law judge's attempts to learn the truth about what had occurred. (Am. Compl. ¶ 42.) Accordingly, J.S. and K.S.' conduct during B.F.G.'s

---

[2] These same allegations of conspiracy likewise require the denial of Defendants K.S. and J.S.'s motions to dismiss Plaintiffs' conspiracy claims under section 1983 (Count VII) and Illinois common law (Count IX).

administrative hearing is fairly attributable to the state, and Defendants may be liable for depriving B.F.G. of his rights under Section 1983.

### E. Plaintiffs Have Sufficiently Stated a Claim for Malicious Prosecution (Count VIII) against Defendants J.S. and K.S.

Defendants contend Plaintiffs' malicious prosecution claim fails because (1) their Report of a crime cannot constitute the "commencement of a prosecution;" (2) probable cause for their report was present as a matter of law; and (3) the Abused and Neglected Child Reporting Act immunizes good faith reports of a crime. None of these contentions warrant the dismissal of Plaintiffs' malicious prosecution claim.

Initially, J.S. and K.S. cite *Kiswani v. Phoenix Security Agency, Inc.*, 529 F.Supp.2d 949 (N.D.Ill 2008) for the proposition that a person does not satisfy the "commencement of a prosecution" element of malicious prosecution by "merely giving false information to the proper authorities." (Defendants' motion to dismiss, p. 8.) While *Kiswani* says as much, the court distinguished situations where a person knew the information they were providing was false, from one where it simply turned out later that a person had unknowingly provided incorrect information. Indeed, the *Kiswani* court explained that, in order to satisfy the commencement element, a plaintiff must demonstrate that the defendant "1) instituted the proceedings against the plaintiff, 2) knowingly made false statements to the police, or 3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Kiswani*, 529 F.Supp. at 956-57, *citing Randall v. Lemke,* 311 Ill.App.3d 848, 244 Ill. Dec. 587, 726 N.E.2d 183, 185 (2000).

In this matter, Plaintiffs' Complaint does not allow Defendants' efforts to argue, at this stage of the proceedings, that they simply provided information in good faith to authorities and let the chips fall where they may. To the contrary, the Complaint alleges Defendants provided

13

false information to authorities, and further failed to disclose their childrens' past sexually inappropriate activity and propensity for lying. (Am. Compl. ¶¶ 17-18, 35-36, 41-45.) Whether both Defendants, or either Defendant, subjectively knew, at the time they reported the accusations, that they were untrue, will be a topic of discovery, but in no event should that inquiry be decided on a motion to dismiss.

Further, the culpability of the Defendants went well beyond the time of their initial report to Defendant Widlacki and extended throughout the entire course of the administrative hearing. Defendants J.S. and K.S.' initial complaint to the Willow Springs Police Department initiated the DCFS investigation and led to Plaintiff B.F.G.'s arrest and the indicated charge of sexual exploitation. However, their continued lies (*Id.* ¶ 42) and manipulation of testimony and evidence (*Id.* ¶ 42), disrupted and deprived B.F.G. of his right to a fair administrative hearing. While J.S. and K.S., in their Motion to Dismiss, incorrectly characterize their involvement in the "commencement or continuance of an original criminal or civil action" as consisting only of their initial reporting of what they describe as suspected sexual abuse, the Complaint thus reveals much more.

These same variances between Plaintiffs' Complaint and Defendants' characterizations of their conduct in their Motion to Dismiss similarly undermine Defendants' efforts to claim good faith immunity under the Abused and Neglected Child Reporting Act, and their effort to have the issue of probable cause decided on a motion to dismiss. While each of these arguments may surface again at the conclusion of discovery in connection with a motion for summary judgment, it is simply too early in the proceedings for Defendants to ask this Honorable Court to make rulings as a matter of law on the state of mind of Defendants that is not apparent from or consistent with the allegations in Plaintiffs' Complaint. Accordingly, Plaintiffs have alleged a

cause of action against J.S. and K.S. for malicious prosecution and dismissal under 12(b)(6) is not appropriate.

### F. Plaintiffs Have Stated a Claim for IIED against J.S. and K.S. (Count XI).

In seeking dismissal of Plaintiffs' IIED claim, Defendants J.S. and K.S. distort and minimize the involvement of J.S. and K.S. to a benign characterization of "reporting the suspected abuse of their children to DCFS and allegedly informing community members of the abuse." (Defs. J.S. and K.S.' Mot. to Dismiss, p. 12). This description completely ignores several serious allegations contained in Plaintiffs' First Amended Complaint.

In truth, J.S. and K.S. *did not* simply report the abuse to DCFS; instead, they went to the police with allegations that they had every reason to know were fabricated by their own children as an alibi for their own sexual misbehavior – the same type of misbehavior that had occurred on other occasions with other children at a time before B.F.G. had any contact with them. (Am. Compl. ¶ 36.) They withheld this critical information from the police and pressed for the criminal prosecution of, as well as DCFS action against, B.F.G. when it was clear – by any objective standard – that based on the multiple conflicting accounts of the witnesses, the exculpatory physical evidence that contradicted the claims of abuse, and their childrens' own history of acting out sexually, that B.F.G. was guilty of no wrongdoing whatsoever. (*Id.* ¶¶ 15-36.) Defendants went further in doing everything in their power to derail B.F.G.'s attempts to vindicate himself in the administrative appeal process. These intentional acts – which included hiding key physical evidence, lying during testimony, and conspiring with state actors to cover up their wrongdoing – were not only outrageous and calculated to inflict emotional distress upon Plaintiffs, they did cause extreme emotional distress.

15

Not content to confine their conduct to the pending legal proceedings, J.S. and K.S. continued their tortuous conduct by viciously spreading the false allegations throughout the neighborhood and in the school community against a child whom those communities had always regarded as an exceptional young man. (*Id.* ¶¶ 4, 37-40.) Defendants may have a different version of their conduct than what is presented in Plaintiffs' Complaint, but a motion to dismiss is no place for those differences to be decided. Whether Defendants' treatment of B.F.G. falls short of "extreme and outrageous" is an ultimate issue of fact that should be explored during discovery. By any legal standard, however, it is not a basis to dismiss Plaintiffs' claim.

### F. Plaintiffs have Sufficiently Alleged Claims of Defamation Per Se (Count X) and False Light Invasion of Privacy (Count XII) Against J.S. and K.S.

Defendants contend that Plaintiffs' defamation and false light invasion of privacy claims fail because Plaintiffs have not described the offending statements in sufficient detail. (Defs. J.S. and K.S. Mot. to Dismiss, pp.10-11) The Seventh Circuit has not yet spoken as to the exact pleading standard for claims of defamation and there is no uniform requirement requiring plaintiffs to specifically state verbatim the words alleged to be actionable in order to meet pleading standards. *See, e.g., Dry Enterprises v. Sunjut*, No. 07-C1657, 2008 U.S. Dist. LEXIS 25908, at *4 (N.D. Ill. Mar. 31, 2008); *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 919 (N.D. Ill. 2007). Thus, an allegation is sufficiently specific if it allows the defendant to understand the nature of the claim and respond appropriately. *Id.*

A claim for defamation *per se* is based on an obvious and apparent defamatory statement, and injury to the plaintiff may be presumed. *J. Maki Const. Co. v. Chicago Reg. Council of Carpenters*, 379 Ill.App.3d 189, 199 (2nd Dist. 2008). Defamatory remarks that constitute defamation *per se* are, *inter alia*, those that "impute the commission of a crime." *Id.* In a similar vein, the tort of false light invasion of privacy consists of the following elements: the

plaintiff was placed in a false light before the public by the defendant; the false light would be offensive to a reasonable person; and, the defendant acted with actual malice. *See Seith v. Chicago Sun-Times*, 371 Ill.App.3d 124, 138 (1st Dist. 2007).

The nature of the false accusations against B.F.G. is outlined throughout the 34 pages of Plaintiff's First Amended Complaint where it also alleges that J.S. and K.S. have "continuously disseminated [those] false allegations throughout their neighborhood and local school community." (Am. Compl. ¶ 45.) This passage refers directly to the false allegations spread throughout the neighborhood and local school community by J.S. and K.S. and their children, to the effect that B.F.G. had sexually abused J.L.S. and N.S. When read in context with the rest of the complaint, the allegation is clearly specific enough to allow defendants to understand the nature of the claims and to form a response to the allegation that J.S. and K.S. repeated the false allegations against B.F.G. in the neighborhood and school community. To require Plaintiffs to know the exact language of what was said to each person in the wake of the false allegations against B.F.G. at the stage of initial pleadings would create an unfair burden and would "*improperly deny the plaintiff the opportunity to prove its claim.*" *See EEOC*, 496 F.3d at 779-780. Therefore, Defendants' Motion must be denied.

### G. Plaintiffs Have Adequately Set Forth Claims for J.S. and K.S.' Liability Based on the Torts of their Children (Counts XIII and XIV).

Defendants erroneously point to a lack of factual specificity in asking this Court to dismiss Plaintiffs' claim for Negligent Supervision of Minors (Count XIII). The thrust of their argument is that their clients had no knowledge of prior instances of similar conduct and that they could not have controlled what their children said. (Defs. J.S. and K.S. Mot. to Dismiss, pp. 13-16.)

While it is true that a parent-child relationship does not automatically render parents liable for the torts of their minor children, Illinois courts may find liability in cases where a parent does not adequately control or supervise their child. *Appelhans v. McFall*, 325 Ill.App.3d 232, 239-40 (2001). A claim of negligent supervision may be proven in cases where the parents were aware of specific instances of prior conduct that put them on notice that the act complained of was likely to occur and that the parents had the opportunity to control the child. *Id.* at 239-40; *Lott v. Strang*, 312 Ill.App.3d 521 (2000); Restatement (Second) of Torts § 316 (1965).

As Plaintiffs cite in ¶36 of the Amended Complaint, Defendants J.S. and K.S. were aware of specific instances of prior conduct by J.L.S. and N.S. that put them on notice that their children were likely to spread false stories throughout the community, bestowing upon them a duty to take reasonable steps to prevent such conduct. Both children had a history of lying that included making false statements related to their own misbehavior. Their history of sexually-related behavior issues that predated the time when B.F.G. babysat for them, coupled with the fact that the accusations against B.F.G. were fabricated after they were caught acting out sexually by their grandmother, put Defendants on notice that such an issue was likely to arise absent their efforts to control what their children said in the neighborhood and school community. Their failure to do so, in conjunction with their own public statements, have caused a young boy to be vilified and rendered a pariah in his community, and irrevocably damaged him beyond repair.

Further, Pursuant to 740 ILCS 115/3, a "parent or legal guardian of an unemancipated minor who resides with such parent or legal guardian is liable for actual damages for the willful or malicious acts of such minor which cause injury to a person or property…" In Illinois, a

"minor," for purposes of this action, is defined "as a person who is above the age of 11 years, but not yet 19 years of age." 740 ILCS 115/2.

In their First Amended Complaint, Plaintiffs allege that J.L.S. and N.S. maliciously committed the intentional torts of defamation per se, intentional infliction of emotional distress and false light invasion of privacy against Plaintiffs. As detailed in the Complaint, these acts were ongoing and included the period *after* the administrative decision in November 2007. (*See* Am. Compl. ¶¶ 44-45).

While Plaintiffs concede that Defendants' Motion to Dismiss correctly calls for the dismissal of Plaintiffs' parental responsibility claim (Count XIV) to the extent the claim was based on N.S.'s conduct, the First Amended Complaint contains allegations against J.L.S. that occurred after his eleventh birthday. (*See Id.* ¶ 45.) Therefore, because Plaintiffs have specifically claimed that J.L.S. has committed intentional torts – and done so continuously – at a time after his eleventh birthday, Count XIV should not be dismissed to the extent it is based on the conduct of J.L.S.

## CONCLUSION

Based on the foregoing, Plaintiffs' respectfully request this Honorable Court deny Defendants' Willow Springs, Widlacki, and Tabordon, and J.S. and K.S.' Motions to Dismiss.

Dated: June 23, 2008

                                         s/Julie K. Bisbee
                                         JULIE K. BISBEE, Attorney No. 6292401
                                         James G. Sotos
                                         JAMES G. SOTOS & ASSOCIATES, LTD. 550 East Devon, Suite 150
                                         Itasca, Illinois  60143
                                         630-735-3300
                                         630-773-0980 (fax)
                                         jbisbee@jsotoslaw.com
                                         *One of the Attorneys for Plaintiff*