50614-RET

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| B.F.G., by his parents and next friends, | ) | |
| R.G. and B.G., and R.G., and B.G., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| **v.** | ) | **08 C 1565** |
| | ) | |
| WILLIE BLACKMON, Investigator, Division | ) | JUDGE SUZANNE B. CONLON |
| Of Child Protection ("DCP"), of the Illinois, | ) | |
| Department of Children and Family Services | ) | MAGISTRATE JUDGE NOLAN |
| ("DCFS"), et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF MOTION TO DISMISS BY
## VILLAGE OF WILLOW SPRINGS, ROBERT TABORDON AND CRAIG WIDLACKI

Defendants, Village of Willow Springs ("Willow Springs"), Willow Springs Police

Detective Robert Tabordon ("Tabordon"), and former Willow Springs Police Officer Craig

Widlacki ("Widlacki") (collectively "Village Defendants"), in support of their motion for an

order dismissing specific portions of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), state as

follows:

## A.     PLAINTIFFS' RESPONSE FAILS TO NEGATE PROBABLE CAUSE AND CANNOT SUPPORT AN ALLEGATION OF FALSE ARREST AGAINST TABORDON AND WIDLACKI (COUNT V).

In trying to shore up their claim that Tabordon and Widlacki lacked probable cause for

the arrest of B.F.G., Plaintiffs point to their allegations that J.L.S. and N.S. had a history of

acting out sexually and lying, and their allegations that DCFS mishandled the investigation. The

problem that Plaintiffs cannot escape is the legal test for evaluating probable cause. The

existence of probable cause turns on the information known to the officers at the moment the

arrest is made, not on subsequently received information. *Spiegel v. Cortese*, 196 F.3d 717, 723

(7th Cir. 2000). Plaintiffs do not allege in their Amended Complaint or in their Response to Defendants' Motion to Dismiss that the officers were aware of any allegation that J.L.S. and N.S. had a history of acting out sexually and lying, or that the officers were aware of any allegation that DCFS mishandled the investigation.

In fact, Plaintiffs affirmatively state in their Response that J.S. and K.S. "went to the police with allegations that they had every reason to know were fabricated by their own children as an alibi for their own sexual misbehavior – the same type of misbehavior that had occurred on other occasions with other children at a time before B.F.G. had any contact with them. They withheld this critical information from the police...." (Response, p. 15, emphasis added). Further, Plaintiffs state in their response that in reporting the alleged abuse to the Willow Springs officers, "J.S. and K.S. did not relay their knowledge of their childrens' (sic) histories of lying and engaging in sexually inappropriate behavior." (Response, p. 2). Also, "there is no indication in the Amended Complaint that Defendant Widlacki was told anything about the circumstances of the childrens' (sic) 'outcry'..." (Response, p. 5). There is similarly no allegation in the Amended Complaint or Response to Defendants' Motion to Dismiss that the officers were provided any information regarding the alleged mishandling of the DCFS investigation.

Nevertheless, Plaintiffs attempt to negate probable cause with the predictable argument that the Willow Springs officers could have performed further investigation before arresting B.F.G. This argument can always be made, and not surprisingly, the courts have heard it before and found it unpersuasive. In *Spiegel*, two feuding neighbors were involved in an altercation in the hallway of the high-rise apartment building where they both lived. 196 F.3d at 720. Marshall Spiegel went to the Chicago police and filed a complaint for battery against the neighbor involved, Loren Cherny. *Id.* Two days later, Cherny went to the Chicago police and filed his own

complaint against Spiegel regarding the same incident. *Id.* The Chicago police investigated and decided probable cause existed to arrest Spiegel. *Id.* at 721. Spiegel protested that he filed a battery charge against his neighbor first, and the neighbor's later charge against him was simple retaliation. *Id.* Spiegel also told the police he had been shoved during the altercation, and that he had witnesses to corroborate his version of the events. *Id.* The police arrested Spiegel anyway, and he was later acquitted in a jury trial. *Id.*

Spiegel then sued the City of Chicago and the officers involved in his arrest, claiming among other things that the arrest was not supported by probable cause. *Id.* Spiegel's suit against the City and the officers proceeded to trial, and the jury determined that Spiegel's right to be free from false arrest had been violated. *Id.* at 722.

The 7th Circuit Appellate Court overturned this decision, finding that there was probable cause for Spiegel's arrest, despite Spiegel's protests that a host of inconsistencies marred the complaint against him by his neighbor Loren Cherny. Among other things, Spiegel asserted the arresting officer was aware that:

* Spiegel and Cherny had a long-running feud;

* Cherny had contradicted himself in his report, claiming at different points during the same interview that Spiegel had kneed him in the groin, kicked him in the thigh and had attempted to kick him "in the balls" but missed;

* Cherny's report that he was battered was inconsistent with the written account of the incident he prepared for the condominium association that did not mention a physical attack;

* Cherny had admitted that he had shoved Spiegel during the incident;

* Cherny filed his charge nearly a month after the altercation, but two days after Spiegel had filed his charges against Cherny; and

&ast; the photograph of Cherny's bruise, purportedly taken near the time of the dispute, and the bruise that Cherny showed the arresting officer during the interview appeared the same even though nearly a month had elapsed. *Id.* at 724.

In his attempt to negate probable cause, Spiegel claimed that these inconsistencies made the complaint against him suspicious or "fishy," and the inconsistencies would have led a reasonable officer to investigate further. *Id.* Plaintiffs in our own case argue that inconsistencies and witness credibility questions required further investigation. The 7th Circuit Appellate Court has disagreed, finding in *Spiegel* that the history between the neighbors might have shown Cherny's bias, but they did not render his report incredible as a matter of law. *Id.* The court acknowledged there were alleged inconsistencies in the report against Spiegel, but held that no clearly established precedent required the police to resolve these inconsistencies before arresting him. *Id.*

"Police officers need not exclude every suggestion that a victim is not telling the truth." *Id.* "Nothing suggests that a victim's report must be unfailingly consistent to provide probable cause. The credibility of a putative victim or witness is a question, not for police officers in the discharge of their considerable duties, but for the jury in a criminal trial." *Id.* at 724-725. Significantly, the 7th Circuit Appellate Court refused "to require law enforcement officers to delay arresting a suspect until after they have conclusively resolved each and every inconsistency or contradiction in a victim's account." *Id.* at 725. The court further refused to require police to interview available witnesses before making a probable cause determination. *Id.*

The Plaintiffs in the instant case claim the Village Defendants relied on the parents' reports of abuse and a flawed DCFS investigation in making a probable cause determination. Plaintiffs do not allege the Village Defendants were aware of any information that cast doubt on

4

the reports of abuse or the DCFS investigation. However, Plaintiffs now argue the police could have investigated further before determining probable cause existed to arrest B.F.G., and if they had investigated further, they would have learned of inconsistencies that would have negated probable cause. Under *Spiegel*, however, even if the police had been aware of the alleged inconsistencies, they would not have been required to resolve them before the arrest. Resolving inconsistencies and testing witness credibility is the role of a jury, not that of a police officer who is charged only with determining whether there is probable cause for an arrest.

Plaintiffs appear to fault the police for apparently considering the hearsay statements of the parents regarding the sexual abuse of their children. (Response, p. 6). Plaintiffs complain that "Widlacki did not even talk to the accusers themselves." *Id.* Plaintiffs ignore their own allegations that before B.F.G. was arrested, DCFS interviewed B.F.G.'s two younger siblings and his mother. (Amend. Compl. Para. 20, 23-24). Defendant Danielle Butts, program manager of the Hull House Association, d/b/a Child Advocacy Center of Southwest Cook County, interviewed both of the accusers. (Amend. Compl. Para. 29). Butts also interviewed B.F.G.'s two younger siblings. (Amend. Compl. Para. 32). Following all of these interviews, DCFS determined that the charge of sexual exploitation against B.F.G. was supported by credible evidence and therefore "indicated." (Amend. Compl. Para. 35). Plaintiffs point out the risk involved in basing a probable cause determination solely on the "double hearsay allegation of child abuse, from a two year old child" rather than investigating further. (Response, p. 6). Plaintiffs fail to point how that risk is implicated by their own allegations, that the children involved here were 7 and 9 years old, and that upon receiving the allegations, the police did not make a probable cause determination but referred the matter to DCFS for further investigation.

5

Plaintiffs' contention that Widlacki should have inquired further before referring the matter to DCFS (Response p. 6), is irrelevant to any determination of probable cause and need not be addressed, beyond noting that Plaintiffs concede "the Willow Springs Defendants correctly point out they were duty bound [by statute] to report the parents' accusations to DCFS..." (Response, p. 7). Similarly, Plaintiffs' contention that the police could have declined to arrest B.F.G. until after the State's Attorney reviewed the case, or even waited until after B.F.G. completed his administrative appeal to determine whether the "indicated" finding should stand, is irrelevant to any determination of probable cause. With the benefit of hindsight, Plaintiffs' now state "there was no urgency which required" B.F.G.'s arrest. This ignores the case law, cited above, holding that a probable cause determination is evaluated based on the information the officers had when making that determination. Plaintiffs have not alleged any facts within the knowledge of the Village Defendants casting a doubt on the information they received. Probable cause is therefore apparent on the face of the complaint, and the false arrest count must be dismissed with prejudice.

**B.    PLAINTIFFS' RESPONSE FAILS TO POINT OUT ANY OVERT ACT OR AGREEMENT THAT WOULD SUPPORT THEIR CLAIMS OF FEDERAL CONSPIRACY (COUNT VII) OR STATE CONSPIRACY (COUNT IX).**

First, the existence of a cause of action for conspiracy depends on there being some tortious act, which Plaintiffs allege was the false arrest of B.F.G. by the police officers, without probable cause. (Response, p. 9). The existence of probable cause therefore defeats not only the false arrest claims, but also the federal and state conspiracy claims, by removing the tortious act element. Because Plaintiffs fail to negate the probable cause apparent on the face of the Amended Complaint, they plead themselves out of court on the conspiracy claim.

Notwithstanding, Plaintiffs' conspiracy theories also fail because they lack the other essential element: agreement among the defendants. Plaintiffs' Response tries and fails to create an inference of such an agreement. Plaintiffs allege Blackmon and Butts attempted to coerce a confession from B.F.G., and when that did not work, Blackmon "indicated" him and the Willow Springs officers arrested him the same day. (Response, p. 9). Without any such allegation in their Amended Complaint, Plaintiffs allege for the first time in their Response that the motivation behind B.F.G.'s arrest was to coerce a confession from him. The only link that convinces Plaintiffs of this is the timing of the two events. Plaintiffs allege Blackmon found a charge of sexual exploitation was supported by credible evidence and therefore "indicated" on January 25, 2007. (Amend. Compl. Para. 35). Plaintiffs allege the Willow Springs officers arrested B.F.G. the same day. (*Id.* at Para. 37).

Plaintiffs ignore the obvious inference: that Blackmon reported to the Willow Springs officers that he found a charge of sexual exploitation against B.F.G. was supported by credible evidence and therefore "indicated," at which time the officers considered this information with the prior complaints from the parents of the alleged victims and determined there was probable cause to arrest B.F.G. Disregarding this obvious inference, Plaintiffs attempt to create a much more tenuous inference. The inference on which Plaintiffs base their conspiracy theory is that the officers worked in concert with the DCFS and CAC Defendants to arrest B.F.G. without probable cause, in order to coerce a confession from him.

This much more tenuous inference depends on a number of assumptions. According to Plaintiffs, Blackmon communicated to the Willow Springs officers that he was "indicating" B.F.G. on a charge of sexual exploitation, meaning that charge was supported by credible evidence. Plaintiffs assume Blackmon told the Willow Springs officers he was "indicating"

7

B.F.G. falsely, because his own investigation was flawed and in fact produced no credible evidence of sexual exploitation. Next, Plaintiffs assume that when the Willow Springs officers learned Blackmon was falsely "indicating" B.F.G. in spite of a lack of credible evidence, they decided to arrest him with no probable cause. Finally, Plaintiffs assume the Willow Springs officers did this only after agreeing with DCFS and the CAC defendants that there was no credible evidence or probable cause against B.F.G., but he should be arrested anyway in order to coerce a confession from him. These assumptions are not pled and cannot be inferred from the simple allegations that DCFS falsely indicated B.F.G. and the police arrested him the same day. As such, Plaintiffs have not alleged an agreement and their conspiracy claims must fail, independently of the fact that the presence of probable cause defeats the conspiracy claims, as well.

## C.    PLAINTIFFS FAIL TO ALLEGE ANY EXTREME AND OUTRAGEOUS CONDUCT THAT WOULD SUPPORT THEIR CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiffs' claims against the Village Defendants stand like a line of dominos. When the false arrest claim falls due to the existence of probable cause, it causes the conspiracy claims to fall due to the lack of any tortious overt act. When the conspiracy claims fall, they cause the IIED claim to fall, due to the lack of any extreme and outrageous conduct. Plaintiffs base their allegation of extreme and outrageous conduct on the assumption that there was no probable cause for the arrest, but the arrest was made anyway because of an agreement to coerce B.F.G. to confess.

Plaintiffs claim for the first time in their response that this desire to coerce B.F.G. motivated his arrest, because there was no probable cause to believe he committed any crime. Ignoring the legal test for evaluating probable cause, Plaintiffs attempt to negate probable cause

with alleged hindsight information. Significantly, they never claim the officers had any of the information allegedly casting doubt on the parents' complaint or the DCFS investigation.

Regardless, Plaintiffs presuppose probable cause did not exist and then speculate there was an agreement to arrest B.F.G. anyway. Plaintiffs' speculation that there was an agreement depends on the unpled assumptions outlined above. Plaintiffs then allege the officers committed extreme and outrageous conduct by arresting B.F.G. with no reasonable justification. (Response, p. 10). As outlined in more detail above, probable cause provided the reasonable justification, and Plaintiffs cannot negate probable cause with hindsight information that they claim was withheld from the police.

Plaintiffs next assert "there was no need for the Willow Springs Defendants to do anything" because B.F.G. was eventually exonerated. Again, Plaintiffs may not use hindsight information to negate probable cause and create extreme and outrageous conduct where none exists. Plaintiffs accuse Widlacki of not having the "slightest concern for a child whose life he was about to irrevocably damage by arresting him." With this accusation, Plaintiffs ignore the fact that courts are required to evaluate probable cause with the information the arresting officers had at the time, seeing what they saw, hearing what they heard. *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002). Only by ignoring this legal test are Plaintiffs able to claim the "irrevocable damage" of being arrested outweighs the allegations that B.F.G. sexually molested four other children, including two of his younger siblings, which allegations were investigated and then reported as being supported by credible evidence.

Plaintiffs repeat but do not attempt to support their conclusory statement that the information Widlacki provided B.F.G.'s school (in response to the school's request pursuant to 105 ILCS 5/22-20) constituted extreme and outrageous conduct because it contained "misleading

statements." Illinois statute entitles B.F.G.'s school to be informed of the "circumstances surrounding the events which led to the child's detention." 105 ILCS 5/22-20. Alleging that Widlacki informed the school of these circumstances but some of the information was "misleading" falls far short of showing that Widlacki engaged in extreme and outrageous behavior that was "atrocious," "utterly intolerable in a civilized community," and "wholly lacking in social utility." *Schiller v. Mitchell*, 357 Ill.App.3d 435, 447 (2nd Dist. 2005); *Knierim v. Izzo*, 22 Ill.2d 73, 85 (1961). Accordingly, any allegedly misleading statements in the letter cannot constitute extreme and outrageous conduct, and the IIED claim fails.

**D.    THE VILLAGE OF WILLOW SPRINGS IS IMMUNE FROM LIABILITY FOR ALLEGEDLY MISLEADING STATEMENTS, AND PLAINTIFFS' CLAIMS FOR ATTORNEYS FEES FOR THE STATE LAW CLAIMS MUST BE STRICKEN.**

Plaintiffs do not contest that the Local Governmental and Governmental Employee Tort Immunity Act immunizes the Village from any liability based on allegedly misleading statements from Widlacki. 745 ILCS 10/2-106; 745 ILCS 10/2-107. Accordingly, any claim against the Village based on these statements must be dismissed. Further, Plaintiffs do not contest that their claims for attorney's fees for the state law counts are invalid. Illinois generally follows the "American Rule": absent statutory authority or a contractual agreement between the parties, each party to litigation must bear its own attorney fees and costs. *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill.2d 560, 572 (2000). Accordingly, Plaintiffs claims for attorney's fees in connection with the state law counts must be stricken.

## CONCLUSION

For the forgoing reasons, the Defendants, Robert Tabordon, Craig Widlacki and the Village of Willow Springs respectfully request that the Court dismiss Counts V, VII, IX, XI, XV

and XVI with prejudice.  Additionally, the Defendants respectfully request any and all such other relief as the Court deems appropriate.

Respectfully Submitted,

/s/ Jason Callicoat
**One of the Attorneys for Defendants,
Village of Willow Springs, Robert
Tabordon, and Craig Widlacki**

Paul Rettberg
Jason Callicoat
QUERREY & HARROW, LTD.
175 W. Jackson, Ste. 1600
Chicago, IL 60604
312-540-7000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on June 30, 2008, the foregoing document was served, pursuant to L.R. 5.9 and the General Order on Electronic Filing, via the Court's Electronic Case Filing System, to:

All Counsel of Record.

By: <u>/s/ Jason Callicoat</u>
Jason Callicoat

Querrey & Harrow, Ltd.
175 W. Jackson Boulevard
Suite 1600
Chicago, IL 60604-2827
(312) 540-7000

Document #: 1338497

12

**PATRICK VARVARIS, Plaintiff, vs. CHICAGO POLICE OFFICERS D. DELIA, et al., Defendants.**

**NO. 96 C 1904**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1996 U.S. Dist. LEXIS 13262*

**September 11, 1996, Decided**
**September 11, 1996, DOCKETED**

**DISPOSITION:** [*1] Defendant officers' motion to dismiss the excessive force claim in Count IV granted. Motion denied in all other respects. Defendant Perez dismissed pursuant to *Fed.R.Civ.P. 4(m)*.

**COUNSEL:** For PATRICK VARVARIS, plaintiff: David L. Lee, Tomes, Lee & Dvorak, Chicago, IL. Jonathan P. Tomes, Law Offices of Jonathan P. Tomes, Chicago, Il.

For D **DELIA**, Badge, Chicago Police Officers, defendant: Martha Roess Barglow, City of Chicago, Law Department, Corporation Counsel, Chicago, IL. William E. Bazarek, City of Chicago, Department of Law, Chicago, IL. John F. McGuire, City of Chicago Law Department, Chicago, IL.

For CHICAGO POLICE OFFICER ENGELHART, Badge, defendant: Martha Roess Barglow, (See above). William E. Bazarek, (See above). John F. McGuire, (See above).

For J FINNEGAN, Badge, defendant: Martha Roess Barglow, (See above). William E. Bazarek, (See above). John F. McGuire, (See above).

For R HARRISON, Badge, defendant: Martha Roess Barglow, (See above). William E. Bazarek, (See above). John F. McGuire, (See above).

For C TREMBLE, Badge, defendant: Martha Roess Barglow, (See above). William E. Bazarek, (See above). John F. McGuire, (See above).

For CITY OF CHICAGO, [*2] an Illinois Municipal Corporation, defendant: Irene Schild Caminer, Sharon Baldwin, Robin Denise Shoffner, Margaret Ann Carey, Patricia Jo Kendall, City of Chicago, Law Department, Corporation Counsel, Chicago, IL. Susan S. Sher, City of Chicago, Law Department, Chicago, IL. Julie Michelle Rubins, City of Chicago, Department of Law, Chicago, IL.

**JUDGES:** Suzanne B. Conlon, United States District Judge

**OPINION BY:** Suzanne B. Conlon

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Patrick Varvaris ("Varvaris") sues Chicago police officers **Delia**, Engelhart, Finnigan, Harrison, Tremble, and Perez, and the City of Chicago (collectively "defendants"). Varvaris alleges federal civil rights claims: excessive force (Count I), failure to intervene (Count II), and intentional infliction of emotional distress (Count III). Varvaris also alleges state law claims: assault (Count IV), battery (Count IV), excessive force (Count IV), failure to intervene (Count V), and intentional infliction of emotional distress (Count VI). Defendant officers **Delia**, Englehart, Finnigan, Harrison, and Tremble ("officers") [1] move to dismiss Counts II through VI pursuant to *Fed.R.Civ.P. 12(b)(6)*. [2] The officers also move [*3] for more definite statements of Counts I through VI pursuant to *Fed.R.Civ.P. 12(e)*.





EXHIBIT

A

1  Officer Perez was never served.

2  Officers also move to dismiss the assault and battery claims within Count I. Motion to dismiss at 6. However, the assault and battery claims are merely part of Count I's excessive force claim. Since the officers are not moving to dismiss the excessive force claim, they are effectively not moving to dismiss Count I.

## BACKGROUND

Varvaris alleges the following facts. [3] Varvaris was walking with two friends when the defendant officers approached him. Varvaris ran and hid in a garbage can. The officers pursued Varvaris and one of the them grabbed him by the neck, pulled him from the garbage can, and threw him to the ground. Some or all of the officers then beat Varvaris by punching and kicking him in the ribs and face. The beating inflicted severe injuries on Varvaris, causing him to lose consciousness. The officers then arrested Varvaris for allegedly possessing a handgun while [*4] on a public street. The officers claimed that Varvaris threw the gun to the ground while running from them. Varvaris was then taken to Holy Cross Hospital. However, the officers told Varvaris to refuse treatment or they would beat him again. The officers who did not beat or threaten Varvaris simply watched the above events and did not attempt to stop the beating or the denial of medical treatment.

> 3  On a motion to dismiss, the court must accept well-pleaded factual allegations of the complaint as true and view those allegations in the light most favorable to the plaintiff. *Gillman v. Burlington Northern R. Co., 878 F.2d 1020, 1022 (7th Cir. 1989).*

Varvaris also alleges that the officers had no grounds, no need, and no reason to beat him. In addition, the officers allegedly beat Varvaris intentionally, willfully, wantonly, and maliciously causing him great pain and severe emotional distress.

## DISCUSSION

### I. The *Rule 12(e)* Motion For A More Definite Statement

Defendants contend that Counts I [*5] through VI improperly combine multiple claims violating federal pleading requirements set forth in *Fed.R.Civ.P. 10(b).*

First, the officers point out that Varvaris did not separately allege, in different counts, the specific allegations and claims against each officer. Second, Count IV contains multiple state law claims for assault, battery, and excessive force.

According to *Rule 10(b)*, "each claim . . . shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." As the rule plainly states, the plaintiff must allege each claim in a separate count only if this will promote clarity. Therefore, the issue on a motion for a more definite statement is whether granting the motion will facilitate matters. *Plummer v. Chicago Journeyman Plumbers' Local Union No. 130, 452 F. Supp. 1127, 1144 (N.D. Ill. 1978).* If the complaint puts the defendants on notice of the factual context of the claims against them so that the defendants are able to respond, then the complaint is adequate. *Id. at 1144 n11.*

A more definite statement is not required here. Placing the state assault, battery, and excessive force claims in separate [*6] counts would do little to promote clarity. Although Varvaris does not currently possess enough information to make specific allegations against each officer, complaint P 7, the complaint effectively puts the officers on notice of the general claims against them and the circumstances from which the claims arise. Thus, the officers possess sufficient information to prepare a responsive pleading. At this stage, discovery, not a second amended complaint, is the appropriate means for developing the issues. Id. Accordingly, the officers motion for a more definite statement under *Rule 12(e)* is denied.

### II. The *Rule 12(b)(6)* Motion To Dismiss.

Generally, the federal system of notice pleading does not favor dismissal for failure to state a claim. *Gray v. Dane County, 854 F.2d 179, 182 (7th Cir. 1988).* Under *Rule 12(b)(6)*, the court accepts all well-pleaded factual allegations in the complaint as true, *Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995)*, and views the allegations in the light most favorable to the plaintiff. *Badger Pharmacal, Inc v. Colgate-Palmolive Co., 1 F.3d 621, 626 (7th Cir. 1993).* Dismissal is proper only if the plaintiff can prove no set of [*7] facts in support of his claims that would entitle him to the relief requested. *Illinois Health Care Ass'n v. Illinois Dep't of Public Health, 879 F.2d 286, 288 (7th Cir. 1989).*

  

## A. Count I.

In Count I, Varvaris alleges that the officers violated his *Fourth Amendment* rights when they beat him and threatened him with further injury if he did not refuse medical treatment. Varvaris requests monetary damages pursuant to *42 U.S.C. § 1983*. The officers interpret Count I as including three distinct claims of assault, battery, and excessive force and request that the assault and battery claims be dismissed. However, excessive force is the only theory of recovery presented in Count I. Response at 9. Since Count I contains no assault and battery claims, the officers' motion is denied. [4]

> 4    Varvaris apparently uses the concepts of "assault" and "battery" simply to describe the nature of the excessive force claim. See Response at 9-10.

## B. Count II.

Count II asserts a *§ 1983* claim in which [*8] Varvaris alleges that his *Fourth Amendment* rights were violated by those officers who failed to intervene to prevent the beating or to stop the denial of medical treatment. The officers move to dismiss on the ground that a claim for failure to prevent unlawful acts is actionable only under the Due Process Clause, not the *Fourth Amendment*. However, the facts alleged in the complaint, not the legal theory advanced, define the scope of the claim. *De Anda v. Midland Ross Corporation, 644 F. Supp. 263, 268 n1 (N.D. Ill. 1986)*. Thus, the issue is whether Varvaris alleges facts sufficient to state a Due Process Clause claim for failure to intervene to prevent unlawful acts.

The Seventh Circuit has outlined the failure to intervene standard as follows:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under *§ 1983* if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by law enforcement officials; *and* the officer had a realistic opportunity [*9] to intervene to prevent the harm from

occurring.

*Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994)*. This duty to intervene applies equally to nonsupervisory and supervisory officers. *Id. at 285*.

Viewing the facts in the light most favorable to Varvaris, the complaint states a cause of action under Yang. The officers who failed to intervene were clearly aware that the other officers were using excessive force. In addition, the onlookers had numerous opportunities to intervene to prevent further harm and indignity from befalling Varvaris. The facts alleged here are comparable with those in *Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972)*, the police-beating case in which the Seventh Circuit recognized the failure to intervene as a cause of action. In addition, the Seventh Circuit has found facts sufficient to maintain a failure to intervene suit where the allegations were much less severe than here. See Yang, 37 F.2d at 282-283, 286. Accordingly, the officers' motion to dismiss Count II is denied.

## C. Count III

Count III is a *§ 1983* claim in which Varvaris alleges that the officers violated his *Fourth* and *Fourteenth Amendment* rights by inflicting emotional [*10] distress. Although Varvaris clearly states that the *Fourth* and *Fourteenth Amendments* are the grounds for his claim, complaint p. 22, Count III is titled "Civil Rights Violations against individual officers for intentional infliction of emotional distress." Complaint at 6. This apparently confused the officers because they respond by asserting that "there is no separate cause of action for this purported claim under *section 1983*." Motion to dismiss at 6. While citing no authority for this statement, the officers are clearly correct because intentional infliction of emotional distress is a state law cause of action, not federal, and thus not cognizable under *§ 1983*. See *Wyatt v. Cole, 994 F.2d 1113, 1121 (5th Cir. 1993)* (state law claims are not cognizable under *§ 1983*). However, in construing the pleadings liberally, the court reads Count III as simply an ancillary request for damages under the *Fourth Amendment* excessive force claim in Count I. Damages for emotional distress are available where a defendant uses excessive force in violation of the *Fourth Amendment*. *Hagge v. Bauer, 827 F.2d 101, 109 (7th Cir. 1987)*; *Sanders v. City of Indianapolis, 837 F. Supp. 959, 965-66* [*11] *(N.D. Ill. 1992)*. Accordingly, the officers' motion to dismiss Count III is denied.

  

### D. Count IV

Count IV contains state law claims for assault, battery, and excessive force. The officers only move to dismiss the latter, claiming that there is no tort of excessive force in Illinois. Although they cite no authority for this proposition, the court was unable to find a single Illinois case recognizing the tort of excessive force. Accordingly, the officers' motion to dismiss the excessive force claim in Count IV is granted.

### E. Count V

Count V asserts a state law claim against the officers who only watched for failure to prevent the beating or the denial of medical treatment. The officers move to dismiss Count V based upon their purported immunity under § 2-204 of the Illinois Tort Immunity Act. *745 ILCS 10/2-204* (1993). Section 2-204 provides:

> Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury cased by the act or omission of another person.

However, § 2-202 creates an exception to the other sections of the tort immunity act:

> A public employee is not [*12] liable for his act or omission in the execution or enforcement of any law *unless such act or omission constitutes willful or wanton conduct.*

*745 ILCS 10/2-202* (1993)(emphasis added); *Doe v. Calumet City, 161 Ill. 2d 374, 641 N.E.2d 498, 505-06, 204 Ill. Dec. 274 (Ill. 1994)*. Varvaris clearly alleges that the officers who failed to intervene to stop the beating or the denial of medical services did so willfully and wantonly. Complaint PP 12, 30. Accordingly, the officers are not immune from the claim asserted in Count V.

### F. Count VI

Count VI asserts that the officers intentionally inflicted emotional distress on Varvaris in violation of state tort law. The officers argue that because Varvaris "utterly fails to plead any facts that defendant officers conduct was extreme or outrageous" and "the incident complained of consists of [only] a single event," Count VI must be dismissed. The officers' argument is baseless.

In order to state a cause of action for intentional infliction of emotional distress under Illinois law, a plaintiff must plead facts establishing that:

> (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended [*13] to inflict serious emotional distress or knew that a high probability existed that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress.

*Doe, 641 N.E.2d at 506*. In order for conduct to be deemed outrageous, more than mere insults or annoyances must be involved; the conduct must cause outrage in an average member of the community. *Id. at 507*. In addition, the extreme character of the conduct can arise from the abuse of a position of power, such as that held by police officers. Id. Finally, one event is sufficient to establish extreme conduct if the event is serious enough. See *Id. at 508*.

Varvaris clearly alleges facts that meet the three-part test. First, the officers severely beat Varvaris without any justification and then, using their authority over him once he was arrested, threatened him with further harm if he did not refuse medical treatment. Complaint PP 7, 9. [5] The Illinois Supreme Court has found outrageousness in circumstances far less egregious than those Varvaris alleges. See *Doe, 641 N.E.2d at 507-08*; *Kolegas v. Heftel Broadcasting Corp. 154 Ill. 2d 1, 607 N.E.2d 201, [*14] 211-212, 180 Ill. Dec. 307 (Ill. 1988)*. Second, the complaint specifically alleges that the officers acted with knowledge there was a high probability they would cause Varvaris substantial emotional distress. Complaint P 38. Third, Varvaris asserts that he suffered severe emotional distress. Complaint P 13. Accordingly, the motion to dismiss Count VI is denied.

> 5    When abuse of a position of authority is at issue, the defendant is given more latitude if he reasonably believed that his objective was legitimate. *Doe, 641 N.E.2d at 507*. However, the facts, as alleged by Varvaris, do not leave room for the possibility that the officers believed what they were doing was lawful.

### CONCLUSION

Defendant officers' motion to dismiss the excessive

  

1996 U.S. Dist. LEXIS 13262, *14

force claim in Count IV is granted. The motion is denied in all other respects. Defendant officers are directed to answer the complaint by September 27, 1996. Defendant Perez is dismissed pursuant to *Fed.R.Civ.P. 4(m)*.

ENTER:

Suzanne B. Conlon

United States District [*15] Judge

September 11, 1996

