## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| B.F.G., by his parents and next friends, | ) | |
| R.G. and B.G., and R.G. and B.G., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 08 C 1565 |
| | ) | |
| WILLIE BLACKMON, Investigator, et al., | ) | Judge Suzanne B. Conlon |
| | ) | |
| Defendants. | ) | Magistrate Judge Nolan |

### DEFENDANT RHONDA CASADY'S
### MOTION TO VACATE TECHNICAL DEFAULT

Defendant Rhonda Casady ("Casady"), by and through her undersigned attorneys, hereby moves this Court to vacate the entry of technical default against her and allow Casady to file her responsive pleading to the Amended Complaint, as well as to comply with Rule 26(a). In support thereof, Casady states as follows:

1.      Plaintiffs filed their original Complaint on March 18, 2008. Plaintiffs' Amended Complaint was filed on May 12, 2008, alleging sixteen counts against nine defendants.

2.      Casady was sued in her individual capacity arising out of her work as a prosecuting attorney for the Illinois Department of Children and Family Services ("DCFS"). When Casady was served with Plaintiffs' Complaint, she requested that DCFS defend her in the action, as it had defended her in previous litigation in which she served as a prosecuting attorney. Casady was surprised to learn that DCFS would not represent her in this action and that she would have to represent herself or retain her own counsel.

3.      Casady continues to prosecute cases on behalf of DCFS, work which requires substantial time to prepare for trial and prosecute. Additionally, a DCFS staff attorney left his

position on June 5, 2008. As a result, between June 5 and July 10, 2008, Casady was assigned twenty-one expungement hearing cases and a service appeal, in addition to the seven active cases Casady already had. (*See* Affidavit of Rhonda Casady, attached here as Exhibit A). This necessitated preparing for the prehearings, reviewing all of the files, preparing all of the lists of witnesses and preparing documents. Moreover, all attorneys who represent DCFS are under strict orders never to ask for a continuance, therefore, requesting additional time was not possible. Notwithstanding, Casady worked on a daily basis drafting her responsive pleading to the Amended Complaint during nights and weekends while maintaining a very full workload. (*See* Exhibit A, ¶ 6).

4.      Throughout the pendency of this case, Casady has acted *pro se*, and devoted a significant amount of time in researching and drafting her responsive pleading to the Amended Complaint. Some of the legal issues raised in responding to the Complaint are unfamiliar to Casady in her practice, including absolute and qualified immunity, malicious prosecution, conspiracy, intentional infliction of emotional distress, and others, therefore requiring additional time for research and review. (*See* Exhibit A, ¶ 5). Casady requested, and was granted, an extension of time to file her responsive pleading to July 10, 2008. In addition, Casady was not an electronic filer in the Northern District, and before she could file anything she was compelled to take the e-filing training class and did not receive her log-in information until June 18, 2008. (*See* Exhibit A, ¶ 4).

5.      In preparing her responsive pleading it became apparent to Casady that she needed to retain counsel to assist in her defense as the legal arguments raised were outside the realm of her expertise. (*See* Exhibit A, ¶ 6). Casady made diligent efforts to secure counsel, but was unable to do so before the July 10, 2008 deadline, and in fact, was not successful in securing counsel until late July, 2008. This Court entered a technical default against Casady on July 17, 2008, for failure to

answer the complaint by July 10. (*See* Dkt. 113).

6.     Pursuant to Rule 55 of the Federal Rules of Civil Procedure, a court may set aside an entry of default for good cause. (*See* Fed. R. Civ. P. 55(b)(c) (West 2008)). In order for the entry of default to be vacated, a moving party must show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Sun v. Bd. of Trustees of the Univ. of Illinois, et al.*, 473 F.3d 799, 810 (7th Cir. 2007) *citing Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994).

7.     Casady can establish all three elements. First, Casady had a good faith belief that she could represent herself in this matter and draft a responsive pleading. As she drafted the responsive pleading and conducted research on the issues of law it became apparent to Casady that she could not adequately represent herself and that she needed to retain counsel with an expertise in this area of law. Casady filed her Appearance in this case and has been present at status hearings. Her prior requests for extensions have been made in good faith and not for purposes of delay. While her actions in not retaining counsel sooner may have been imprudent or short-sighted, Casady has diligently proceeded in defending herself in this matter and diligently sought counsel. Under the circumstances, there was good cause for Casady's default in filing her responsive pleading.

8.     Casady has also complied with the second requirement for setting aside an entry of default in that she has responded quickly to its entry. The default was entered on July 17, 2008, and the instant motion to vacate the default was filed within two weeks of that entry. A copy of Casady's responsive pleading is attached hereto as Exhibit B. Similarly, a copy of Casady's Rule 26(a) disclosures is attached hereto as Exhibit C. Finally, Casady has a meritorious defense to Plaintiffs' claims. As the prosecuting attorney on behalf of a governmental agency, Casady has absolute

immunity as well as qualified immunity to Plaintiffs' claims.

9.    From the Minute Order entered on July 17, 2008, it appears that a default was entered against Casady, but that a default judgment has not been entered. If a default judgment was entered, Casady's conduct should be considered excusable neglect in that she was not more expeditious in finding counsel. Under Rule 60(b), a court may relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect. (*See* Fed. R. Civ. P. Rul 60(b)(1) (West 2008)). In determining whether excusable neglect exists, a court will look to "all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the [plaintiff], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) *citing Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993). Considering all the factors and the relevant circumstances, Casady's actions constitute excusable neglect and any default judgment that was entered should be vacated.

10.    Vacating the order of default and allowing Casady to respond to the Amended Complaint will not prejudice Plaintiffs in any way, and in fact, will ensure that the case proceeds on the merits. Additionally, the litigation will not be unduly delayed.

11.    Based on the foregoing, Casady prays this Court vacate its entry of a default against her, and allow her an opportunity to file a responsive pleading to the Plaintiffs' Amended Complaint.

WHEREFORE, defendant Rhonda Casady respectfully requests this Court to vacate and set aside the entry of technical default against her on July 17, 2008, and allow Casady to file her responsive pleading to the Amended Complaint and to file her Rule 26(a) disclosures, copies of which are attached hereto, and for such other relief as this Court deems just and equitable.

Dated: July 31, 2008                         Respectfully submitted,
                                             **RHONDA CASADY**

                                    By:   __s/ Eileen E. Rosen_____
                                          One of Her Attorneys


John J. Rock
Eileen E. Rosen
Silvia Mercado Masters
ROCK FUSCO, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60610
(312) 494-1000
(312) 494-1001 - facsimile

## CERTIFICATE OF SERVICE

I, Eileen E. Rosen, one of the attorneys for Rhonda Casady, hereby state that I caused a copy

of **Defendant Rhonda Casady's Motion to Vacate Technical Default**, attached hereto, to be

served upon:

James G. Sotos
Julie K. Bisbee
James G. Sotos & Assoc.
550 E. Devon, Suite 150
Itasca, IL 60143

Lance D. Northcutt
Berg Northcutt & Berg
2100 W. 35th Street
Chicago, IL 60609

Stacy McGlynn Atkins
Jason C. Callicoat
Paul A. Rettberg
Querrey & Harrow, Ltd.
175 W. Jackson Blvd., Suite 1600
Chicago, IL 60604

Daniel M. Noland
Sonia A. Desai
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606

Rhonda L. Casady
200 S. Michigan Ave., Ste. 1240
Chicago, IL 60604

Michael D. Ettinger
Cheryl A. Schroeder
Ettinger, Besbekos, Parisi
12413 S. Harlem, # 203
Palos Hills, IL 60453

Patrick Ross Grady
Law Offices of Wolf & Wolfe, Ltd.
25 E. Washington Street, Suite 700
Chicago, IL 60602

Barbara Lynn Greenspan
Attorney General's Office
100 W. Randolph Street, Suite 4-600
Chicago, IL 60601

Michael J. McGrath
Odelson & Sterk, Ltd.
3318 W. 95th Street
Evergreen Park, IL 60805

James C. Stevens, Jr.
Attorney General's Office
100 W. Randolph Street, Suite 11-200
Chicago, IL 60601

via E-FILING on Thursday, July 31, 2008.

       s/ Eileen E. Rosen
         Eileen E. Rosen

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| B.F.G., by his parents and next friends, | ) | |
| R.G. and B.G., and R.G. and B.G., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 08 C 1565 |
| | ) | |
| WILLIE BLACKMON, Investigator, et al., | ) | Judge Suzanne B. Conlon |
| | ) | |
| Defendants. | ) | Magistrate Judge Nolan |

### AFFIDAVIT OF RHONDA L. CASADY

The Affiant, Rhonda L. Casady, is an attorney licensed to practice in Illinois. My offices are located at 200 S. Michigan Ave., Suite 1240, Chicago, Illinois 60604. In my legal practice, I serve as an attorney for the Illinois Department of Children and Family Services ("DCFS").

1.      All statements made in this Affidavit are true and correct, I have personal knowledge of the facts stated in this Affidavit and if sworn as a witness I could testify competently thereto. I am a named defendant in the above action.

2.      On June 5, 2008, a staff attorney in DCFS's Office of Legal Services left his position without notice. As a result, the legal services office was severely understaffed and the situation was critical. As a result, between June 5th and July 10th, I was assigned 21 new expungement hearing cases and a service appeal. The 22 new cases more than tripled my caseload of seven cases at the time. Since the increase in my caseload, I have been reviewing all the new files, preparing lists of witnesses and documents, interviewing witnesses, subpoenaing evidence, and participating in prehearings and hearings.

3.      All attorneys who represent DCFS in expungement hearings are under strict orders never to request a continuance. DCFS must issue its decision within 90 days from the request for



EXHIBIT

A

an appeal, not including delay requested by an appellant. *See Lyon v. DCFS*, 209 Ill. 2d 264, 266-268 (2004).

4.      I was not previously registered as an electronic filer with this Court. Since the inception of this case, I registered for and completed the electronic filing training on June 11, 2008. I received my logon information for electronic filing on June 18, 2008.

5.      From the beginning, I have acted *pro se* in this case. In my area of legal practice, I rarely utilize the Federal Rules of Civil Procedure, and even less frequently encounter legal issues raised in the instant case, *e.g.*, absolute immunity, qualified immunity, malicious prosecution, conspiracy, intentional infliction of emotional distress, alleged *Brady* violations, probable cause and unlawful arrest.

6.      I have diligently researched and drafted my motion to dismiss for this case on a daily basis, in addition to my more than full time work with DCFS. I have had to work every evening and weekend since June 19, 2008, to keep up with my work for DCFS and work on the motion to dismiss. When the legal issues for the motion to dismiss seemed thoroughly researched, and I had drafted part of the motion, I would then come across additional cases that I believed must be accounted for in the response. My research and drafting and redrafting convinced me of the complexity of the legal issues, as well as the prudence of seeking legal counsel. As a result, I diligently sought counsel with expertise in the areas relevant to this case, but not practicing in the latter areas of law made it difficult to quickly identify appropriate counsel.

7.      I have now retained counsel, who has appeared for me in this case.

8.      This case has been emotionally and psychologically distressing to me. This has added to my unfortunate and unintended delay in filing my motion to dismiss, and has had negative ramifications in other areas of my life, and my family's life.

Wherefore, Affiant further sayeth naught.

_____
Rhonda L. Casady

SUBSCRIBED AND SWORN TO
before me this 30th day of
_____, 2008.

_____
NOTARY PUBLIC

OFFICIAL SEAL
EVA M. SHEEHAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7-11-2009

-3-

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| B.F.G., by his parents and next friends, | ) | |
| R.G. and B.G., and R.G. and B.G., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 08 C 1565 |
| | ) | |
| v. | ) | HON. SUZANNE B. CONLON |
| | ) | **Judge Presiding** |
| WILLIE BLACKMON, Investigator, | ) | |
| Division of Child Protection ("DCP"), of | ) | Magistrate Judge Nan R. Nolan |
| The Illinois Department of Children and | ) | |
| Family Services ("DCFS"), *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CASADY'S MOTION TO DISMISS THE AMENDED COMPLAINT

Now comes defendant, Rhonda Casady ("Casady"), by and through her undersigned attorneys, and hereby moves this Court for an order dismissing the Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6). In support thereof, Defendant states as follows:

### THE CLAIMS

B.F.G. and his parents, R.G. and B.G., have filed a sixteen count Amended Complaint with a catalog of claims against the state officials who investigated and prosecuted the report of sexual abuse against B.F.G., and the parents of the alleged child victims. In their Amended Complaint, Plaintiffs have brought the following claims against Casady:

> Violation of substantive due process under 42 U.S.C. §1983, by "indicating" additional allegations of sexual penetration, sexual molestation, substantial risk of physical injury and substantial risk of sexual injury (Count IV);

> Violation of due process under 42 U.S.C. §1983, by preventing a fair hearing on his administrative appeal (Count VI);



> Conspiracy to unlawfully arrest, falsely "indicate" and deny a fair administrative hearing under 42 U.S.C. §1983 (Count VII);

> State law malicious prosecution (Count VIII);

> State law conspiracy to unlawfully arrest, falsely "indicate" and deny a fair administrative hearing (Count IX); and

> State law intentional infliction of emotional distress (Count XI).

All of the allegations against defendant Casady are based upon her actions in prosecuting the expungement hearing on behalf of the Illinois Department of Children and Family Services ("the Department" or "DCFS").

## INTRODUCTION

In a state administrative hearing, B.F.G. had a report expunged that he sexually abused neighbor children for whom he was babysitting. The Illinois Department of Children and Family Services ("the Department" or "DCFS") is the state agency required by Illinois statute to receive and investigate reports of child abuse and neglect. 325 ILCS 5/7.3. At the conclusion of a Department investigation, a report is either "indicated"[1], "unfounded"[2] or "undetermined"[3]. 325 ILCS 5/7.12. If the report is "indicated" against an individual, the Department places a record of that person's name on the State Central Register, *Id.* at 7.16, where it is maintained until time for its removal from the Register pursuant to Department rule. 89 Ill. Admin. Code 431.30. The Department must provide anyone who is "indicated" for child abuse or neglect an opportunity for

---

[1] A report is "indicated" if an investigation determines that credible evidence of the alleged abuse or neglect exists. 325 ILCS 5/3.

[2] A report is "unfounded" if it is determined after an investigation that no credible evidence of abuse or neglect exists. *Id.*

[3] A report is "undetermined" if it was not possible to initiate or complete an investigation on the basis of information provided to the Department. *Id.*

a hearing to appeal the indicated report and to request expungement of his name from the State Central Register. *Id.*

All of the allegations against Casady arise from her legal representation of the Department in B.F.G.'s appeal hearing of the indicated report that he sexually abused the neighbor children, J.S. and N.S., while babysitting them. (Am. Compl. ¶6.) Specifically, Plaintiffs complain about Casady's prosecutorial decision to increase or amend the Department's allegations against B.F.G. (Am. Compl. ¶¶ 43(a), 67, 82, 85, 86, 92) and to many aspects of her trial strategy, including the manner of her objections, and presentation of evidence and the alleged suppression of exculpatory evidence. (Am. Compl. ¶¶ 77, 82, 92, 99.)

Because all of the conduct complained of involves Casady's prosecutorial functions, Casady has absolute prosecutorial immunity from all of the claims in the Amended Complaint. In the alternative, if this Court finds that Casady is not entitled to absolute immunity, then she is entitled to qualified immunity on all of the federal claims. Plaintiffs cannot show they have any clearly established constitutional right that Casady has violated. Moreover, a reasonable person, in Casady's position could have believed based upon the specific facts confronting her, that her actions were well within the contours of the constitution.

Furthermore, with respect to the state law claims, even without absolute immunity, the claim for malicious prosecution must be dismissed because this Court has already found probable cause. *See* Memorandum Opinion and Order dated July 21, 2008 (July 21, 2008 Order), Dkt. No. 115. Similarly, Plaintiffs' claims for Intentional Infliction of Emotional Distress fail because the allegations do not rise to the level of extreme and outrageous.

For all of the foregoing reasons, and for all of the support found in this memorandum, the claims against Casady should be dismissed with prejudice.

## FACTUAL BACKGROUND

In a motion to dismiss pursuant to Rule 12(b)(6), the court takes all well-pleaded factual allegations in the complaint as true and makes all plausible inferences from those allegations in the plaintiffs' favor. *Levy v. Pappas*, 510 F.3d 755, 764 (7th Cir. 2007). For the purpose of this motion to dismiss, the following claims will be taken as true:[4]

Casady represented the Department at B.F.G.'s hearing to expunge the indicated report against him. (Am. Comp. ¶ 6). Plaintiffs allege that Casady unilaterally "indicated" additional charges against B.F.G. (Am. Comp. ¶ 43(a)); that Casady conspired to hide key physical evidence from the court (Am. Comp. ¶ 43(c)); that Casady lied to the court in order to cover-up the true circumstances surrounding the suppression (Am. Comp. ¶ 43(d)); that Casady refused to cooperate with the court's efforts to investigate the suppression of the evidence (Am. Comp. ¶ 43(e)); that Casady tactically disrupted the presentation of evidence through repeated delays, causing the hearing to drag on for months (Am. Comp. ¶ 43(a)); that Administrative Law Judge (ALJ) Fahler filed a complaint with the Illinois Attorney Registration regarding Casady's conduct (Am. Comp. ¶ 43(h))[5]; that ALJ Baechle repeatedly threatened to eject and ultimately did eject Casady from the hearing (Am. Comp. ¶ 43(i)); and that ALJ Baechle found that DCFS had not met its burden in proving the allegations against B.F.G. and further found that B.F.G. "is not a perpetrator of child abuse." (Am. Comp. ¶ 44).

---

[4] Defendant Casady, however, categorically denies the wrongful conduct alleged against her in the Amended Complaint but recognizes that for purposes of this motion she must proceed under the applicable standard.
[5] That investigation is confidential; therefore, this allegation should be stricken. *See* IL Sup. Ct. Rule 766(a). In any event, this allegation does not state a Due Process or any other Constitutional violation.

**ARGUMENT**

**I.    As An Attorney Representing The State Of Illinois, Casady Is Protected By Absolute Immunity**

Prosecutors are entitled to absolute immunity from civil liability under 42 U.S.C. § 1983 for actions they have undertaken pursuant to their official duties when they are acting as an advocate, "activities [which] were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Absolute immunity also protects those who participate in adjudications within a federal administrative agency.  *Butz v. Economou*, 438 U.S. 478, 512-13 (1978).  "Absolute immunity covers prosecutorial functions such as the initiation and the pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is 'intimately associated' with the judicial process."  *Mendenhall v. Goldsmith*, 59 F.3d 685, 689 (7th Cir. 1995).   Absolute immunity extends to agency officials performing functions analogous to those of a prosecutor,  *Id.* at 690, as well as government officials outside of the criminal context who exercise prosecutorial or judicial functions.  *Simonsen v. Board of Educ. of City of Chicago*, No. 01 C 3081, 2002 WL 230777, *9 (N.D. Ill. February 14, 2002).  "For purposes of immunity analysis, federal officials are indistinguishable from state officials and receive no greater degree of protection from constitutional claims."  *Mendenhall*, 59 F.3d at 690.

In *Butz*, the Court found that a Department of Agriculture attorney who tried to revoke the registration of a commodity futures commission merchant functioned similarly to a prosecutor. The Court reasoned that agency officials performing functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts.  *Butz*, 438 U.S. at 515.  The Court further reasoned that if executive officials did not have immunity, their discretion with respect to the initiation of administrative proceedings might be distorted.  *Id.*  Because of the

5

similarity between a prosecutor's role and that of an attorney presenting evidence in an agency hearing, the Court also held that an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence. *Id.* at 517-18.

Whether absolute immunity extends to a particular situation depends on a functional analysis of the defendant's role. If the defendant's role is functionally analogous to that of a judge or prosecutor, he is entitled to absolute immunity for actions taken pursuant to those roles. *Simonsen*, 2002 WL 230777 at 9.

Absolute immunity has been afforded to social workers in child custody cases for prosecutorial acts, *Millspaugh v. County Dept. of Public Welfare of Wabash County*, 937 F. 2d 1172, 1175-76 (7th Cir. 1001). Absolute immunity has been afforded to lawyers prosecuting a plaintiff teacher's dismissal hearing on behalf of the School Superintendent who brings the charge, *Simonsen*, 2002 WL 23077 at 10 (attorney's "role in dismissal hearing is functionally equivalent to that of a criminal prosecutor ... they must exercise discretion in deciding what evidence to present in the hearing, and they are entitled to absolute immunity for these choices"). Finally, absolute immunity has been afforded to officials of the Illinois Department of Children and Family Services for their conduct during judicial proceedings. *Potts v. O'Malley*, No. 95 C 5171, 1995 WL 745960, *3 (N.D. Ill. December 1, 1995). *See also*, *Walden v. Wishengrad*, 745 F.2d 149 (2d Cir.1984) (Court found that attorney for a social services department's "position and responsibilities in this case were similar to those of a prosecuting attorney," and entitled to the same absolute immunity as a prosecuting attorney for decision to request and obtain arrest warrant for non-cooperative witness); *Clulow v. State of Oklahoma*, 700 F.2d 1291, 1298 (10th Cir. 1983) ("bar officials charged with the duties of investigating, drawing up, and presenting cases involving

attorney discipline enjoy absolute immunity from damage claims for such functions" (citations omitted)).

In the case at bar, all of the conduct about which Plaintiffs complain fits squarely within Casady's prosecutorial functions and accordingly she is entitled to absolute immunity. Casady was, at all relevant times, an attorney who represented DCFS in B.F.G.'s administrative appeal and acted under color of state law. (Am. Compl. ¶ 6.) Everything Casady did which Plaintiffs claim is actionable occurred while she was "providing attorney services" to DCFS in the administrative proceeding, to wit, in preparing the Department's case for hearing, or in presenting the Department's case at the hearing. (Am. Compl. ¶ 6.) Amending charges (Am. Comp. ¶ 43(a)); presenting (or not presenting) evidence (Am. Comp. ¶ 43(c)); making decisions regarding the presentation of evidence including seeking continuances (Am. Comp. ¶ 43(a)) are all quintessential prosecutorial functions which are entitled to immunity. Immunity extends to all stages of the case, from preparation to closing arguments, for all the actions taken by Casady in the representation of the Department in connection with B.F.G.'s expungement appeal hearing. Plaintiffs' sinister characterizations of Casady's conduct has no impact on whether Casady is entitled to immunity. "[I]mmunity that applies only when the defendant did nothing wrong is no immunity at all." *Millspaugh*, 937 F. 2d at 1175. Accordingly, all allegations in the Amended Complaint against defendant Casady must be dismissed.

**II.    Even If Casady Does Not Have Absolute Immunity, Casady Is Entitled To Qualified Immunity For All Federal Claims**

To the extent that any of Casady's conduct about which Plaintiffs complain can be characterized as investigative, she is entitled to qualified immunity. *See Mendenhall*, 59 F3d at 689. Whether or not a public official has qualified immunity is a question of law for the judge to decide. *See Whitt v. Smith*, 832 F.2d 451, 453 (7th Cir. 1987). "The doctrine of qualified

immunity shields public officials performing discretionary functions from liability for civil damages where their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jones v. Watson*, 106 F.3d 774, 778 (7th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Essentially, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Public officials are entitled to qualified immunity if the plaintiff fails to show that the official's conduct violated a constitutional right or if the right allegedly violated was not clearly established. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).

The Supreme Court observed, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id*. Moreover, the law must "put the [official] on notice that his conduct would be clearly unlawful, [otherwise] summary judgment on qualified immunity is appropriate." *Id*. at 2156-57.

Plaintiffs' complaint contains two counts which purport to allege federal claims against Casady. Count IV, entitled "Substantive Due Process – 42 U.S.C. § 1983," alleges that B.F.G. enjoyed a liberty interest under the due process clause of the Fourteenth Amendment to be free from the consequences and stigma of an "indicated" finding by DCFS on charges of sexual misconduct. (Am. Comp. ¶ 65). Plaintiffs allege that Casady further violated this "liberty" interest "by indicating B.F.G. on charges of sexual penetration, sexual molestation, substantial risk of physical injury and substantial risk of sexual injury." (Am. Comp. ¶ 67).

B.F.G. has no right or liberty interest to be free from being indicated by the Department for child abuse, if the Department has credible evidence of child abuse. The Seventh Circuit has upheld against a constitutional challenge the Department's use of credible evidence as the standard

8

to "indicate" or substantiate reports of child abuse. *Dupuy v. Samuels*, 397 F.3d 493, 506-7 (7th Cir. 2005). According to DCFS regulations, "credible evidence . . . means that available facts, when viewed in the light of surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected." 89 Ill. Admin. Code 300.20. By contrast, in an expungement hearing, an administrative law judge makes a recommendation whether "there is a preponderance of evidence of abuse or neglect based on the information in the administrative record." 89 Ill. Admin. Code 336.120(b)(15). The finding of credible evidence after the investigation is not inconsistent with the more stringent preponderance of the evidence standard, which is required in an expungement hearing.

B.F.G. did have a right to a hearing to clear his name after he was indicated by the Department for child abuse. He was given a hearing which resulted in the expungement of the report. *See* Am. Comp. ¶¶ 41-44. This fully satisfied due process requirements. As a result of the expungement, B.F.G.'s name is no longer listed on the State Central Registry. 325 ILCS 7.16.

Moreover, the infliction by state officials of a "stigma" to one's reputation alone is not a "liberty" interest sufficient to invoke the protections of the Due Process clause. *Paul v. Davis*, 424 U.S. 693, 701 (1976). There is no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process clause. *Id.* at 702. Because defamation is not actionable under section 1983, Plaintiffs claim fails to allege a violation of a constitutional right and Casady is entitled to qualified immunity.

However one characterizes this claim, Plaintiffs cannot cite any case that clearly establishes that in May, 2007, Casady's prosecutorial decision to amend the charges against B.F.G., clearly violated any of his constitutional rights. Moreover, a reasonable official, standing in Casady's shoes, could have believed based upon the specific facts confronting her, that her

actions were well within the contours of the Constitution. Accordingly, Casady is entitled to qualified immunity on Count IV.

Count VI, entitled "Due Process– 42 U.S.C. § 1983" alleges that B.F.G. enjoyed the right to a fair administrative hearing under the Fourteenth Amendment. (Am. Comp. ¶ 76). Plaintiffs allege that Casady violated B.F.G.'s right to a fair and full administrative hearing by suppressing exculpatory evidence and preventing B.F.G. from receiving a timely hearing. (Am. Comp. ¶ 77). *Brady v. Maryland*, 373 U.S. 83 (1963), requires a criminal prosecutor to disclose exculpatory material to the defendant in a criminal proceeding. There is no parallel to *Brady* in civil litigation. *Millspaugh*, 937 F.2d at 1175, n. 1. *See also*, *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, *2 (N.D. Ill. August 2, 2006) (no obligation comparable to *Brady* imposed on parties in civil cases where evidence would derive from non-testifying expert). The administrative appeal that B.F.G. requested pursuant to the Abused and Neglected Child Reporting Act, 325 ILCS 5/7.16 (Am. Comp. ¶ 41) was a civil proceeding. Accordingly, *Brady* does not apply.

Even if *Brady* applies to civil proceedings, Plaintiffs cannot meet the materiality requirement set forth in *Brady v. Maryland*, 373 U.S. 83. The only claim at Plaintiffs' disposal to seek redress for the alleged withholding of evidence[6] is a due process claim, specifically a due process claim based upon a *Brady* violation. *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). In order to prevail on a due process claim, Plaintiffs must establish that Defendant Casady deprived them of their right to a fair trial under *Brady*, by deliberately withholding material exculpatory evidence. *Newsome*, 256 F.3d at 751-52. Thus, Plaintiffs must prove: 1) that

---

[6] As an initial matter, it is difficult to understand in light of Plaintiffs' allegations how Casady both "suppressed" evidence, (¶43(c) of Am. Compl.) and lied to the court about the suppression (¶43(d) of Am. Compl.) and refused to cooperate with the court's efforts to investigate the suppression (¶43(e) of Am. Compl.). If the court was inquiring about and investigating the "suppression" then the court obviously knew about the evidence and, by definition, it was not suppressed.

B.F.G.'s *Brady* rights were violated during his underlying criminal trial; and 2) that defendant's deliberate acts proximately caused his constitutional injury. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Green*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948 (1999). Stated differently, a *Brady* violation is established when "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to an issue at trial." *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir.2001). *See also U.S. v. Walton*, 217 F.3d 443, 450 (7th Cir. 2000).

Under *Brady*, prejudice or materiality means "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 1565 (1995) (citations omitted).  A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.*, 514 U.S. at 434, 115 S.Ct. at 1565.  Materiality is not established by "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial . . . ." *U.S. v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400 (1976).  Any evidence allegedly concealed from a plaintiff during his criminal trial is not material in *Brady* terms because, where the plaintiff was acquitted, there was no reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed. *Gregory v. Oliver*, 226 F. Supp. 2d 943, 953 (N.D. Ill. 2002) (Shadur, J.)  *See also, Sears v. City of Chicago*, No. 84 C 3678, 1986 WL 5209, *5 n.5 (N.D. Ill April 28, 1986) (Rovner, J.)("Thus, given that [plaintiff] was acquitted at trial, under any of the definitions of materiality utilized by the courts

11

the evidence allegedly suppressed at [plaintiff's] trial could not be considered material ... Thus, [plaintiff's] Brady right was clearly not violated.") (citations omitted).[7]

Here, the administrative decision was decided in B.F.G.'s favor. (Complaint, ¶ 44). Accordingly, any evidence purportedly withheld could not be considered material in *Brady* terms. Plaintiffs' claim fails to allege a violation of a constitutional right and Casady is entitled to qualified immunity. Moreover, a reasonable official, standing in Casady's shoes, could have believed based upon the specific facts confronting her, that her actions were well within the contours of the constitution. Accordingly, Casady is entitled to qualified immunity on Plaintiffs claim that she suppressed exculpatory evidence.

To the extent that Plaintiffs allege a due process violation based upon the timeliness (or untimeliness) of the hearing Plaintiffs cannot cite any case that clearly establishes that in May, 2007, Casady's prosecutorial decision to seek continuances, clearly violated any of his constitutional rights. Moreover, a reasonable official, standing in Casady's shoes, could have believed that based upon the specific facts confronting her, that her actions were well within the contours of the constitution. Accordingly, Casady is entitled to qualified immunity on Count IV.

## III.    Plaintiffs' Section 1983 and State Law Conspiracy Claims Fail[8]

Plaintiffs' section 1983 conspiracy claim derive from their Due Process claims as alleged in Counts IV and VI. A section 1983 conspiracy count cannot stand where the complaint "neither alleges any injury over and above the underlying torts at issue nor casts the net of liability over any additional defendants not otherwise reached," such that the plaintiff had been "prevented from pursuing a tort action or that the value of any such action has been reduced by

---

[7]  *Contra Carroccia v. Anderson* 249 F. Supp.2d 1016 (N.D.Ill 2003) (Kennelly, J.); *Craig v. Huayamave*, No. 05 C 172, 2005 WL 1564982 (N.D. Ill, June 9, 2005) (St. Eve, J.).

[8]  In Counts VII and IX, Plaintiffs allege that Casady conspired to remove B.F.G. from his home and to falsely arrest him. However, based upon Plaintiffs' own allegations in ¶42 of the Amended Complaint, defendant Casady had no involvement in the case prior to May of 2007.

the cover up." *Hawkins v. Mathus*, No. 99 C 901, 1999 WL 966128, *3 (N.D. Ill. October 8, 1999) (Pallmeyer, J.); *Mendez v. Henniger*, No. 98 C 2694, 1999 WL 202907, *4 (N.D. Ill. March 29, 1999) (Gottschall, J.); *see also Ingram v. Jones*, No. 95 C 2631, 1996 WL 355365, *2 (N.D. Ill. June 21, 1996)(Nordberg, J.) (concealment of constitutional violations such as excessive force does not amount to separate constitutional violation of conspiracy unless victim alleges deprivation of access to the courts). Such is the case here. Moreover, as this Court recognized in its July 21, 2008 Order, a conspiracy claim cannot stand when the underlying claim is dismissed. July 21, 2008 Order, p. 5. Thus, Plaintiffs' section 1983 and state law conspiracy claims against defendant Casady must be dismissed.

**IV.    The State Law Malicious Prosecution Claim Must be Dismissed**

Pursuant to the motion to dismiss filed by Defendants J.S. and K.S. this Court has already dismissed Count VIII. *See* July 21, 2008 Order; Dkt. No. 115. To the extent that claim was only dismissed as to Defendants J.S. and K.S., the Court's analysis applies with equal force to Defendant Casady. As this Court noted, to prevail on a malicious prosecution claim under Illinois law, a plaintiff must show each of the following: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921-22 (7th Cir. 2001). The absence of even one of these elements will preclude recovery for malicious prosecution. *Id.* at 922 (*citing Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997)). The existence of probable cause is a complete defense to a malicious prosecution claim. *Id.* at 926. "The Complaint reflects probable cause existed for B.F.G.'s arrest." July 21, 2008 Order.

13

Accordingly, to the extent the claim still exists against Casady, Count VIII must be dismissed as to Casady.

### V.    The Intentional Infliction of Emotional Distress Claim Must Be Dismissed

Plaintiffs' claim for intentional infliction of emotional distress also fails because the facts do not show that Casady engaged in "extreme and outrageous" conduct.  To state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress.  *Cangemi v. Advocate South Suburban Hosp.,* 364 Ill.App.3d 446, 470 (1st Dist. 2006).   In addition, the complaint "must be specific and detailed beyond what is normally considered permissible in pleading a tort action."  *Welsh v. Commonwealth Edison Co.,* 306 Ill.App.3d 148, 155, 713 N.E.2d 679 (1st Dist. 1999).

Casady's conduct, if the allegations of Plaintiffs' Amended Complaint are taken as true, does not reach the required standard of "extreme and outrageous."  Liability arises only where the conduct complained of was "atrocious, and utterly intolerable in a civilized community."  *Pavlik v. Kornhaber,* 326 Ill.App.3d 731, 743-44 (2001) (*quoting* Restatement (Second) of Torts § 46, Comment d, at 73 (1965)).  Here, none of Casady's prosecutorial decisions, including amending the charges, seeking continuances, and/or presenting evidence, rise to the level of extreme and outrageous.  Accordingly, Count XI must be dismissed.

## CONCLUSION

For all of the reasons set forth above, defendant Casady respectfully requests that her motion to dismiss be granted, thereby dismissing all claims against her in this matter.

Dated: July 31, 2008                                      Respectfully submitted,


                                                  By: _____
                                                      One of the Defendant's Attorneys



Eileen E. Rosen
John J. Rock
ROCK FUSCO, LLC
321 N. Clark Street, Suite 2200
Chicago, IL 60610
(312) 494-1000

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| B.F.G., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 1565 |
| | ) | |
| WILLIE BLACKMON, Investigator, et al., | ) | Judge Suzanne B. Conlon |
| | ) | |
| Defendants. | ) | Magistrate Judge Nolan |

## DEFENDANT RHONDA CASADY'S RULE 26(a)(1)(A) DISCLOSURES

Defendant, Rhonda Casady, hereby makes the following initial disclosures pursuant to

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure:

i.    **Individuals Who May Have Discoverable Information**

1.    **Plaintiff B.F.G.**  Plaintiff is expected to have information related to the allegations in his complaint.

2,    **Plaintiff B.G.**  Plaintiff is expected to have information related to the allegations in his complaint.

3.    **Plaintiff R.G.**  Plaintiff is expected to have information related to the allegations in her complaint.

4.    **Defendant Willie Blackmon.**  Mr. Blackmon is expected to have information concerning certain facts of the investigation and the allegations in plaintiffs' complaint.

5.    **Defendant Kimberly Smith-Foote.**  Ms. Smith-Foote is expected to have information concerning certain facts of the investigation and the allegations in plaintiffs' complaint.

6.    **Defendant Danielle Butts.**  Ms. Butts is expected to have information concerning certain facts of the investigation and the allegations in plaintiffs' complaint.

7.    **Detective Robert Tabordon.**  Detective Tabordon is expected to have information concerning certain facts of the investigation and the allegations in plaintiffs' complaint.



**EXHIBIT**

C

8.      **Officer Craig Widlacki.** Officer Widlacki is expected to have information concerning certain facts of the investigation and the allegations in plaintiffs' complaint.

9.      **Defendant K.S.** K.S. is expected to have information concerning J.L.S.'s and N.S.'s reports of abuse and other information refuting the allegations in plaintiffs' complaint.

10.     **Defendant J.S.** J.S. is expected to have information concerning J.L.S.'s and N.S.'s reports of abuse and other information refuting the allegations in plaintiffs' complaint.

11.     **Mary Conroy.** 9429 Dundee Place Tinley Park, IL 60477. Ms. Conroy is the mother of Defendant K.S. and is expected to have information relative to J.L.S.'s and N.S.'s reports of abuse and other allegations in plaintiffs' complaint.

12.     **Maureen Renno**- Cook County State's Attorney, 1100 South Hamilton Avenue, Chicago, Illinois 60612. Maureen Reno is an assistant state's attorney and is expected to have information relative to the investigation of B.F.G., the findings of the investigation, B.F.G.'s punishment, and other allegations in plaintiffs' complaint.

13.     **Zachary Volski**-7855 South Wolf Road, Willow Springs, Illinois 60480. Zach is a friend of J.L.S. and has information relative to B.F.G.'s conduct toward J.L.S. and N.S. and J.L.S.'s and N.S.'s reports of abuse.

14.     **Dianna Volski**-7855 South Wolf Road, Willow Springs, Illinois 60480. Ms. Volski is the mother of Zachary Volski and neighbor of J.S. and K.S.. Ms. Volski may have information relative to J.L.S.'s and N.S.'s reports of abuse, the damages alleged by plaintiffs and possibly other allegations in plaintiffs' complaint.

15.     **Nancy Healy, RN, BSN, SANE**-17800 South Kedzie Avenue, Hazel Crest, IL 60429. Ms. Healy is a nurse at Advocate South Suburban Hospital who provided care to J.L.S. and N.S.

16.     **Kathy Hadraba**-11876 Winding Trails Drive, Willow Springs, Illinois 60480. Ms. Hadraba is a neighbor of J.S. and K.S. and may have information relative to J.L.S.'s and N.S.'s reports of abuse, the administrative hearing, the damages alleged by plaintiffs and possibly other allegations in plaintiffs' complaint.

17.     **Judge Thomas Nowinski and Dr. Valerie Nowinski**-8015 W. 129th Place Palos Park, IL 60464. Judge Nowinski and Dr. Nowinski are relatives of J.S. and K.S. and may have information relative to J.L.S.'s and N.S.'s reports of abuse, and possibly other allegations in plaintiffs' complaint.

18.　Defendant Casady adopts plaintiffs' 26(a)(1)(A) disclosures as to information the witnesses have about the damages alleged by plaintiffs and to the extent the witnesses have information relative to observation of and past behavior exhibited by B.F.G.

19.　Larry Alberg, Office of Legal Services, DCFS - was an attorney for DCFS at the time this case was pending. He has knowledge about amendment of allegations, issues regarding exhibits at hearing and activities of Lance Northcutt.

20.　Meryl Paniak - Chief Administrative Law Judge - has knowledge about her conversations with Lance Northcutt, the broken hearing tapes and Lola Fahler's recusal.

21.　Monica (last name unknown), DCFS Administrative Hearing Unit - has knowledge regarding broken hearing tapes.

22.　Diana Lopez DCFS Administrative Hearing Unit - has knowledge regarding broken hearing tapes.

23.　Phil Benedia, court reporter, 16157 S. Alissa Court, Homer Glen, IL 60491 - has knowledge regarding broken hearing tapes.

24.　Angela Benedia, court reporter, 16157 S. Alissa Court, Homer Glen, IL 60491 - has knowledge regarding broken hearing tapes.

25.　All persons disclosed by plaintiffs and co-defendants in their 26(a)(1)(A) disclosures to the extent their testimony is relevant to Defendant Casady's defenses.

Investigation continues. Defendant, Rhonda Casady, reserves the right to supplement or amend this disclosure to include additional witnesses as they become known and documents as they are received.

ii.　In addition to the following documents already identified and/or produced by Defendants JS, KS, and Blackmon:

1.　Child abuse/neglect report –initial report dated January 16, 2007.
2.　South Suburban Hospital records dated January 23, 2007.
3.　DCFS investigation report dated March 3, 2007.
4.　Correspondence from Attorney General's office dated July 31, 2007 and August 7, 2007 notice from State of Illinois Court of Claims.

5. Documents and/or other materials and tangible things in the possession of DCFS relating to its investigation, findings and/or the administrative hearing relevant to this case.

6. Documents and/or other materials and tangible things in the possession of defendant Willie Blackmon, including the portion of the DCFS case file identified in Blackmon's Rule 26(a)(1) disclosures, which Mr. Blackmon identifies as being available through the Office of the Illinois Attorney General, Child Welfare Litigation Bureau, 100 W. Randolph, Suite 11-200, Chicago, Illinois.

7. Any discoverable documents and/or other materials and tangible things in the possession of defendant Kimberly Smith-Foote.

8. Any discoverable documents and/or other materials and tangible things in the possession of defendants Danielle Butts and Jane Adams Hull House Association.

9. Documents disclosed by plaintiff's in their Rule 26(a)(1) disclosure, including the DCFS proceedings and investigative file as well as the Willow Springs Police Department records, as well as any tangible evidence in their possession.

10. Documents and/or other materials in the possession of defendants Tabordon, Widlacki and Village of Willow Springs, including but not limited to any and all Willow Springs Police Department reports, files, and physical evidence in possession of Willow Springs Police Department, including a toy plastic carrot, a toy plastic banana and two drum sticks;

11. Documents and/or other materials and tangible things in the possession of the Cook County State's Attorney relevant to this case;

Defendant Casady identifies the following additional materials:

12. Her case file - which includes pleadings, orders, exhibits, research, and subpoenas (excluding any and all privileged material including, but not limited to attorney-work product and attorney/client matters).

Defendants Casady further reserves the right to supplement or amend this response at any time to include additional documents, including but not limited to documents to be produced in response to any request for production of documents from the other parties to this lawsuit or documents received in response to subpoena.

Investigation continues.

iii. N/A

iv. Investigation Continues.

Dated:                                    Respectfully submitted,

_____

Eileen E. Rosen                           One of the Attorneys for Defendant,
Stacy A. Benjamin                         Rhonda Casady
Silvia Mercado Masters
Rock Fusco, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60610
312.494-1000