**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| B.F.G., et al.,               ) | |
|                        ) | |
|        Plaintiffs,      ) | |
|                        ) | Case No. 1:08-cv-01565 |
|        v.                ) | |
|                        ) | Judge Conlon |
| WILLIE BLACKMON, et al.,  ) | |
|                        ) | Magistrate Judge Nolan |
|      Defendants.     ) | |
|                        ) | JURY TRIAL DEMANDED |

**DEFENDANTS' J.S. AND K.S.'S ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM TO PLAINTIFFS' AMENDED COMPLAINT**

Defendants J.S. and K.S., by their attorneys, Dykema Gossett PLLC, answer plaintiffs'

amended complaint as follows:

**NATURE OF CLAIM**

1.     This action is asserted pursuant to the First, Fourth, and Fourteenth Amendments

to the United States Constitution and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and

includes supplemental state law claims, premised upon violations of Plaintiffs' rights under

Illinois law. Plaintiffs' claims arise from the flawed investigation, false arrest, abusive

persecution, and public condemnation of B.F.G. for the alleged sexual abuse of N.S. and J.L.S.

**ANSWER:**    These defendants deny that plaintiffs have any of the claims identified in
Paragraph 1 against these defendants, deny any factual allegations of this
paragraph directed against them, and deny any liability to plaintiffs.

**JURISDICTION AND VENUE**

2.     Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331 and 1343, and 28 U.S.C. §

1367.

**ANSWER:**    Admit.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all parties reside within Cook County, Illinois and all relevant acts occurred in the Northern District of Illinois, in the County of Cook, State of Illinois.

**ANSWER:**    Admit.

**PARTIES**

4.     Plaintiff B.F.G., a minor, resides with his mother and father, and younger brother and sister in a western suburb of Chicago, Illinois. Prior to the events which form the basis of this Complaint, B.F.G. was a middle school honor student, and a well-adjusted and happy teenager who was active in neighborhood and athletic activities, and enjoyed the respect, friendship and companionship of neighbors and members of the surrounding community. B.F.G. is now a high school freshman.

**ANSWER:**    These defendants admit that B.F.G. is a minor residing with his mother and father and younger brother and sister in a western suburb of Chicago, Illinois and that he was a high school freshman when the amended complaint was filed.  These defendants deny the remaining allegations contained in Paragraph 4.

5.     Plaintiffs R.G. and B.G., are B.F.G.'s parents, and are doctors of medicine who practice primarily in Chicago, Illinois. Prior to the events which form the basis of this Complaint, R.G. and B.G. were thriving members of and enjoyed much goodwill in their neighborhood, and were well-respected physicians, neighbors, and active members of their local community.

**ANSWER:**    These defendants admit, upon information and belief, that plaintiffs, R.G. and B.G., are physicians who practice primarily in Chicago, Illinois.  These defendants have insufficient knowledge or information to form a belief as to where they primarily practice medicine and whether they were well-respected physicians and therefore deny the same.  These defendants further deny the remaining allegations contained in Paragraph 5.

2

6.      Defendant, Rhonda L. Casady was, at all relevant times, an attorney, and an employee and/or independent contractor providing attorney services to the Illinois Department of Children and Family Services (DCFS). Defendant Casady represented DCFS in B.F.G.'s administrative appeal and acted under color of state law. Defendant Casady is sued in her individual capacity, a supervisor(CAC),

**ANSWER:**      Upon information and belief, these defendants admit that Rhonda L. Casaday was an attorney at all relevant times.  These defendants admit that Casaday represented DCFS in B.F.G.'s administrative appeal.  These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 6.

7.      Defendant Hull House Association is an Illinois not-for-profit corporation with its principal place of business in Chicago, Illinois; Defendant Hull House does business as the Child Advocacy Center of Southwest Cook County (CAC) in Justice, Illinois which provides investigative services in child sexual abuse cases.

**ANSWER:**      These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 7.

8.      Defendant Danielle Butts was, at all relevant times, employed as the program manager of the CAC. Defendant Butts conducted Victim Sensitive Interviews ("VSIs") of the various children involved in the investigation of B.F.G. At all relevant times, Defendant Butts acted under color of state law, and is sued in her individual capacity.

**ANSWER:**      These defendants, upon information and belief, admit that Butts conducted VSIs of J.S. and K.S.  These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 8.

9.      Defendant Willie Blackmon was, at all relevant times, the lead DCFS investigator in the case against B.F.G., and acted under color of state law. Defendant Blackmon is sued in his individual capacity.

3

**ANSWER:**    Defendants admit Willie Blackmon was a DCFS investigator in the case.  These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 9.

10.    Defendant Kimberly Smith-Foote was, at all relevant times, a DCFS supervisor who oversaw Defendant Blackmon's investigation of B.F.G. Defendant Smith-Foote acted under color of state law and is sued in her individual capacity.

**ANSWER:**    These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 10.

11.    At all times relevant, Defendant Officer Widlacki acted under color of state law as a police officer with the Village of Willow Springs Police Department. Defendant Widlacki is sued in his individual capacity.

**ANSWER:**    Defendants admit Widlacki was an officer with the Willow Springs Police Department.  These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 11.

12.    At all times relevant, Defendant Detective Tabordon acted under color of state law as a police officer with the Willow Springs Police Department. Defendant Tabordon is sued in his individual capacity.

**ANSWER:**    Defendants admit Tabordon was an officer with the Willow Springs Police Department.  These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 12.

13.    Defendant Village of Willow Springs is an Illinois municipal corporation and, as such, is responsible for the policies, practices and customs of the Willow Springs Police Department. Defendant Village of Willow Springs at all relevant times was the employer of Defendants Tabordon and Widlacki. The Village of Willow Springs is responsible for the acts of Defendants Tabordon and Widlacki while acting within the scope of their employment.

4

**ANSWER:**    These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 13.

14.    Defendants J.S. and K.S. are a married couple who reside in west suburban Cook County and are the parents of J.L.S and N.S.

**ANSWER:**    Admit.

## FACTS

### INITIAL OUTCRY

15.    From July through November 2006, B.F.G. occasionally babysat J.L.S. and N.S., the nine and seven year old children of Plaintiffs' neighbors, Defendants J.S. and K.S.

**ANSWER:**    Admit.

16.    On January 15, 2007, J.L.S. and N.S. were caught by their grandmother touching each other in their genital areas, and using sexually inappropriate language. After being confronted by their mother, K.S., the children fabricated wild and obviously false accusations that they had been abused by B.F.G., who, while babysitting, had forced toy objects into J.L.S.'s anus, and made N.S. do naked flips, during games of "truth or dare". They also contended that B.F.G. had committed some of these acts upon and in the presence of his own younger siblings E.G. and M.G.

**ANSWER:**    These defendants admit that J.L.S. and/or N.S. stated that B.F.G. had abused them, forced toy objects in J.L.S.'s anus, made N.S. do naked flip-flops, during games of "truth or dare" and committed inappropriate acts in the presence of one or both of his younger siblings. These defendants admit only that, on January 15, 2007, J.L.S. and N.S., while sitting on their grandmother's couch, started to hit each other on the body, including in the general groin area, and N.S. said "I'm going to stick my finder in your butt". These defendants deny the remaining allegations contained in Paragraph 16.

17.    J.L.S. and N.S. would later add even more outrageous and preposterous allegations including that B.F.G. inserted toys into N.S.'s anus, and punched N.S. in the nose causing her to bleed. At the time these allegations were raised, Defendants K.S. and J.S. knew that their children had histories of fabricating false stories and acting out sexually which occurred well before B.F.G. ever babysat the children.

**ANSWER:**    Deny.

## POLICE AND DCFS INVESTIGATION

18.    On January 16, 2007, Defendants J.S. and K.S. reported their childrens' preposterous accusations to Defendant Widlacki at the Willow Springs police department. Defendants K.S. and J.S. provided Defendant Widlacki with a toy plastic carrot and banana, which purportedly had been inserted into J.L.S.'s anus, as evidence. No forensic testing was ever performed on these physical items.

**ANSWER:**    These defendants admit that J.S. and K.S. reported the abuse of their children to Defendant Widlacki at the Willow Springs Police Department on January 16, 2007 and that they provided Defendant Widlacki with a toy plastic carrot and banana, which had been placed into or around J.L.S.'s anus and that, upon information and belief, no forensic testing was performed on these physical items. These defendants deny the remaining allegations contained in Paragraph 18.

19.    Defendant Widlacki contacted DCFS on January 16, 2007, and, on the following day, Defendant Blackmon was assigned by DCFS to investigate. Defendant Smith-Foote was also assigned to the case.

**ANSWER:**    Upon information and belief, these defendants admit that DCFS was notified of the allegations of J.L.S. and N.S. by Willow Springs Police Department. These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 19.

6

20.     At the very beginning of his investigation, on January 17, 2007, Defendant Blackmon violated DCFS protocols and policies by demanding to confront Plaintiffs about the allegations against B.F.G. without first having interviewed the alleged victims, J.L.S. and N. S., and their parents. Defendant Blackmon further threatened to forcibly remove M.G. and E.G. from their family home if R.G. did not allow him to interview her children at that time. As a result of Defendant Blackmon's coercion, and in an ultimately futile attempt to preserve the integrity and sanctity of her family, Plaintiff R.G. permitted Defendant Blackmon to interview her and her two youngest children without any opportunity to prepare them for the ordeal.

**ANSWER:**     These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 20 and therefore deny the same.

21.     During these interviews, both E.G. and M.G., each of whom were interviewed separately, and had no opportunity to prepare, rehearse, be coached or collaborate, credibly denied the accusations that B.F.G. had sexually abused them or had abused N.S. and J.L.S. in their presence.

**ANSWER:**     These defendants deny that E.G. and M.G. were credible in denying that B.F.G. had sexually abused N.S. and/or J.L.S. in their presence.  These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 21 and therefore deny the same.

22.     Defendant Blackmon found E.G. and M.G. to be credible witnesses, and, upon information and belief, reported his findings to his supervisor, Defendant Smith-Foote.

**ANSWER:**     These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 22 and therefore deny the same.

23.     Plaintiff R.G. further informed Defendant Blackmon that she was customarily at home with her children and that the allegations could not be truthful. Further, R.G. assured Defendant Blackmon that the home was a safe environment.

CHICAGO\2486866.1
ID\SADE

**ANSWER:**     These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 23.

24.     R.G. also truthfully informed Defendant Blackmon that N.S. and J.L.S. had histories of serious behavioral problems which included playing "naked theater", N.S. attempting to strangle, and permanently scarring E.G. with a kite string, J.L.S. repeatedly playing with others with his pants down, and J.L.S. having asked E.G. to take her pants off. All of these incidences pre-dated B.F.G.'s babysitting duties with N.S. and J.L.S.

**ANSWER:**     Deny.

25.     Though Defendant Blackmon found Plaintiffs' recounting of events to be credible, and there was no safety risk posed to B.F.G.'s siblings, he inexplicably instructed R.G. that B.F.G. must leave the home due to the bizarre and unsubstantiated hearsay allegations. Notwithstanding M.G. and E.G.'s unrehearsed statements to Blackmon that their brother never abused them, Defendant Blackmon coerced R.G. to remove her son from their home after he came home from school on January 17, 2007, by threatening that if she did not agree to remove B.F.G., Blackmon would have him forcibly removed.

**ANSWER:**     These defendants deny that R.G. was inexplicably instructed to have B.F.G. leave the home due to bizarre and unsubstantiated hearsay allegations and that B.F.G. posed no safety risk to his siblings. These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 25 and therefore deny the same.

26.     As a result of Defendant Blackmon's threats, and to protect her children from the debilitating emotional and psychological trauma of seeing B.F.G. forcibly removed from his home and placed into custody without cause, R.G. submitted to Blackmon's threats and removed B.F.G. from the family home.

8

**ANSWER:**    Upon information and belief, these defendants admit that B.F.G. was removed for a certain time period from his parents' home.  These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 26.

27.    After forcing Plaintiffs to remove B.F.G. from his home, Defendant Blackmon further violated DCFS policies and protocols by failing to work with Plaintiffs to develop a safety plan, and instead unilaterally decided the terms of the plan without even discussing the details with Plaintiffs, and without providing them a copy of the plan.

**ANSWER:**    These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 27.

28.    Following B.F.G.'s removal from his home, Defendant Blackmon, with the acquiescence and approval of Defendant Smith-Foote, continued to run roughshod over DCFS policies and protocols designed to safeguard the rights of an accused during a DCFS investigation by:

(a)    failing to ever interview the accusers;
(b)    failing to interview the accusers' father;
(c)    failing to interview B.G.;
(d)    failing to investigate credible information that the accusers had histories of lying and acting out sexually;
(e)    failing to make any effort to assess the credibility of the accusers' allegations;
(f)    failing to inspect any of the three alleged locations of the alleged abuse;
(g)    failing to collect relevant evidence;
(h)    failing to examine evidence which had been collected;
(i)    failing to conduct forensic testing on key physical evidence;
(j)    failing to make notes of investigative contacts;
(k)    falsifying records in order to cover up his failure to complete required investigative steps;
(l)    falsely attesting that he had obtained essential history information from Plaintiffs;
(m)    falsely attesting that he had investigated key aspects of the case;

9

    (n)    delaying the Victim Sensitive Interviews ("VSI") of the accusers for a week, while B.F.G. was separated from his family under debilitating stress;

    (o)    failing to interview the physician who examined the accusers for signs of abuse; and

    (p)    failing to examine the report of the accusers' medical examination even though he had it in his possession.

**ANSWER:**    The allegations contained in Paragraph 28, including subparagraphs (a)-(p) are not directed against these defendants and as such no answer is required.  To the extent any of said allegations are deemed to be directed against these defendants, they are denied.

29.    On January 23, 2007, Defendant Butts finally conducted VSI's of J.L.S. and N.S., at the CAC. Defendant Butts blatantly ignored essential procedures required by DCFS and the CAC intended to assess whether children are truthful in their narratives and are not influenced by their perception of what the interviewer, or others, want them to say; to wit:

    (a)    she failed to make any effort to test the credibility of the accusers;

    (b)    she failed to explore the accusers' histories of sexual acting out and lying;

    (c)    she failed to explore the circumstances of the accusers' "outcry", which constituted an obvious attempt to deflect responsibility from their own conduct after being caught acting out sexually;

    (d)    she failed to inquire into DCFS's prior interviews of E.G. and M.G., both of whom had credibly denied that any abuse had occurred; and

    (e)    she rushed through the VSI's of J.L.S. and N.S. in only eight and eleven minutes respectively, including the time it took to establish rapport, explain the purpose of the VSI, and determine that the children understood the process and the consequences of lying.

**ANSWER:**    These defendants admit that Butts conducted VSIs of J.L.S. and N.S. on January 23, 2007 at the CAC.  The allegations contained in Paragraph 29, including subparagraphs (a)-(e) are not directed against these defendants and as such no answer is required.  To the extent any of said allegations are deemed to be directed against these defendants, they are denied.

30.    In further violation of DCFS policies and protocols, Defendant Blackmon skipped much of Defendant Butts' VSI of N.S., and no assistant state's attorney was present for the

10

VSI's of either J.L.S. or N.S. Hence, Defendant Blackmon never observed N.S. for himself, and relied on obviously unreliable hearsay regarding N.S.'s VSI to determine that she was credible.

**ANSWER:**    These defendants deny that defendant Blackmon relied on obviously unreliable hearsay regarding N.S.'s VSI to determine that she was credible.    These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 30 and therefore deny the same.

31.    After J.L.S. and N.S.'s VSI's, during which they both coincidentally alleged for the first time that B.F.G. had anally assaulted them with a stick of toy butter, the accusers were taken to a hospital for medical screening. During her interview with a nurse, N.S. reported additional bizarre, obviously fabricated, and wildly inconsistent allegations against B.F.G. including that he had punched her in the nose and made it bleed, and that the plastic toys allegedly used to sodomize her caused anal bleeding. Neither of the medical examinations of the accusers revealed any evidence of abuse.

**ANSWER:**    These defendants are without sufficient knowledge or information to form a belief as to whether J.L.S. and N.S. alleged for the first time that B.F.G. had anally assaulted them with a stick of toy butter at their VSI's as these defendants were not present during the VSI's.    These defendants deny the remaining allegations contained in Paragraph 31.

32.    On January 24, 2007, Defendant Butts conducted VSI's of E.G. and M.G. Defendant Butts again violated CAC procedures by failing to have an assistant State's Attorney present. During the VSI's both E.G. and M.G. again credibly reported that B.F.G. had never abused them in any fashion. Nonetheless, Defendant Butts, in her continued efforts to railroad B.F.G., and build a case against him at any cost, falsely implied that E.G., was lying to protect her brother.

**ANSWER:**    These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 32 and therefore deny the same.

11

33.    After the VSI's of E.G. and M.G., both of which further established that J.L.S. and N.S. were not credible, Defendant Blackmon advised R.G. that B.F.G. could move back home. However, Defendants Blackmon and Smith-Foote waited another two days to terminate the safety plan so that B.F.G. was inexplicably prevented from returning to his family home until January 26, 2007.

**ANSWER:**    These defendants deny that the VSIs of E.G. and M.G. established that J.L.S. and N.S. were not credible or that B.F.G. was inexplicably prevented from returning to his family home. These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 33 and therefore deny the same.

34.    Following the VSI's of E.G. and M.G., Defendants Blackmon and Butts attempted to coerce R.G. into having B.F.G. confess. Though they were not responsible for determining whether or not B.F.G. would be charged with any crime, Defendants Butts and Blackmon stated that if B.F.G. confessed, they would recommend he be charged as a minor and only have to undergo counseling as a punishment. B.F.G. refused to confess to the false allegations against him.

**ANSWER:**    These defendants deny that there were false allegations made against B.F.G. These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 34 and therefore deny the same.

35.    Notwithstanding the lack of any corroborating evidence, and the presence of compelling exculpatory evidence, and as a result of the investigative misconduct described above, Defendant Blackmon, on January 25, 2007, found that the charge of sexual exploitation against B.F.G. was supported by credible evidence, and was, therefore, "indicated." The effect of an "indicated" finding of sexual exploitation is placement on the State Central Register of

12

indicated persons for at least five years. The State Central Register is a database of persons against whom DCFS has "indicated" abuse and/or neglect charges which, in addition to its stigmatizing effect, is disclosed to school districts, employers, and potential employers.

**ANSWER:**    These defendants admit that defendant Blackmon, on or about January 25, 2007, found that the charge of sexual exploitation against B.F.G. was supported by credible evidence and was, therefore, "indicated."  Upon information and belief, these defendants admit that the "indicated" finding is disclosed to school districts. These defendants deny that there was a lack of any corroborating evidence, that there was the presence of any compelling exculpatory evidence or that the finding was a result of investigative misconduct.  These defendants are without sufficient information or knowledge to form a belief as to the remaining allegations contained in Paragraph 35 and therefore deny the same.

36.    Defendant Blackmon "indicated" the charge of sexual exploitation against B.F.G. notwithstanding that the accusers' statements were wildly inconsistent, obviously fabricated, uncorroborated, unsupported by any physical evidence, and credibly refuted by two of the alleged victims, E.G. and M.G. Moreover, Defendant Blackmon's finding was based solely upon the hearsay statements of the accusers, even though he knew that both accusers had histories of lying and acting out sexually prior to Plaintiff B.F.G. ever having babysat them, and that their accusations were prompted by having been caught engaging in sexually inappropriate conduct and conversation by their grandmother.

**ANSWER:**    Deny.

## B.F.G.'S ARREST AND PUBLIC CONDEMNATION

37.    On January 25, 2007, Defendant Widlacki, and, upon information and belief, at the direction of or with the approval of Defendant Tabordon, arrested Plaintiff B.F.G., without probable cause, for criminal sexual assault. After the arrest, the case was tendered to the Cook

CHICAGO\2486866.1
ID\SADE

County State's Attorney's Juvenile Division, which promptly declined any charges against B.F.G.

**ANSWER:**    Deny.

38.    Though B.F.G. was never charged with a crime, upon information and belief, Defendants advised B.F.G.'s school that B.F.G. had been detained for proceedings under the Juvenile Court Act or for a criminal offense, whereupon B.F.G.'s school requested a report from Defendant Widlacki regarding the charges filed against B.F.G., or his brother, M.G., by J.L.S. In response to the school's request, despite the fact that Defendant Widlacki knew or should have known that no charges were filed against B.F.G,. and with a reckless disregard for B.F.G.'s rights, Defendant Widlacki wrote a letter to B.F.G.'s school stating that he had found probable cause that B.F.G. had committed sexual assault on the children he babysat, that the matter was referred to the Juvenile State's Attorney, and that he had received a disposition from the Bridgeview courthouse assigning B.F.G. to counseling.

**ANSWER:**    These defendants deny that they advised B.F.G.'s school that B.F.G. had been detained for proceedings under the Juvenile Court Act or for a criminal offense. These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 38 and therefore deny the same.

39.    Due to the misleading statements in Officer Widlacki's letter, B.F.G.'s school took safety precautions which included not allowing B.F.G. to use the student bathrooms and not allowing him to be unsupervised at school at any time. B.F.G. was also targeted for exclusion from the School's eighth grade trip.

**ANSWER:**    These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 39.

14

40.     Plaintiffs sought the intervention of the Cook County State's Attorneys' Office. After learning of Officer Widlacki's letter to school officials, a state's attorney's representative advised B.F.G.'s school administrators that B.F.G. had not been charged with any crime. Only then did the school retract the restrictions, and restore B.F.G.'s rights and privileges at the school.

**ANSWER:**     These defendants are without sufficient knowledge or information to form a belief as to the allegations contained in Paragraph 40.

### B.F.G.'S ADMINISTRATIVE APPEAL

41.     Following the indicated finding against him for sexual exploitation, B.F.G. requested an administrative appeal pursuant to the Abused and Neglected Child Reporting Act, 325 ILCS 5/7.16.

**ANSWER:**     These defendants admit that, following the indicated finding against him, B.F.G. requested an administrative appeal. These defendants are without sufficient knowledge or information to form a belief as to the remaining allegations contained in Paragraph 41 and therefore deny the same.

42.     The administrative appeal hearing proceeded from May 2007 to September 27, 2007. DCFS was represented by Defendant Casady.

**ANSWER:**     Deny. Upon information and belief, the administrative hearing began in June 2007 until on or about September 27, 2007 and proceeded intermittently on various dates.

43.     During the pendency of the administrative appeal, Defendants Casady, Blackmon, Butts, J.S. and K.S., conspired, through a pattern of intentional, deliberate, reckless, and illegal conduct, to railroad Plaintiff B.F.G. and prevent him from receiving a fair hearing on his appeal, to wit:

        (a)     Despite knowing that DCFS had previously found the allegation of sexual penetration to be not credible, Defendant Casady, without any new

15

evidence, unilaterally "indicated" additional charges of "sexual penetration", "sexual molestation", "substantial risk of Sexual Injury", and "Substantial Risk of Physical Injury" against B.F.G;

(b)     Defendants K.S., J.S., and Blackmon repeatedly falsely testified at the administrative hearing concerning glaring inconsistencies in the accounts of abuse provided by their children;

(c)     Defendants Casady, J.S. and K.S. conspired to hide key physical evidence from the court;

(d)     Defendants Casady, J.S. and K.S lied to the court in order to cover-up the true circumstances surrounding the suppression;

(e)     Defendants Casady, J.S. and K. S refused to cooperate with the court's efforts to investigate their suppression of the evidence;

(f)     after stating she would call ten witnesses and that DCFS's case would take about three hours, Defendant Casady tactically disrupted the presentation of evidence through repeated unconscionable delay tactics, causing the hearing to drag on for several months;

(g)     Defendant Blackmon falsely testified that Plaintiff R.G. had agreed to present B.F.G. for sex offender counseling;

(h)     Defendant Casady's misconduct during the proceedings reached a point where the first Administrative Law Judge's (ALJ), Lola Fahler, filed a report of Casady's behavior with the Illinois Attorney Registration and Disciplinary Commission and was thereafter required to recuse herself from the hearing; and

(i)     After ALJ Fahler was replaced with ALJ Baechle, Defendant Casady continued to obstruct the hearing process to the point where ALJ Baechle repeatedly threatened to eject, and ultimately did eject her from the hearing.

**ANSWER:**     These defendants deny the allegations contained in Paragraph 43 including subparagraphs (a) through (e) inclusive. The allegations in subparagraphs (f) through (i) of paragraph 43 are not directed against these defendants and as such no answer is required. To the extent said allegations are deemed to be directed against these defendants, they are denied.

16

44.    The administrative hearing finally ended in September 2007. The administrative decision, sent to Plaintiffs on November 7, 2007, but dated September 24, 2007, found that DCFS had not met its burden in proving the allegations against B.F.G., and further found that B.F.G. "is not a perpetrator of child abuse". ALJ Baechle cited many reasons for the decision, including incredible witnesses and investigative misconduct by agents of DCFS.

**ANSWER:**    These defendants admit that the administrative hearing ended in September 2007 and that administrative law judge found that the DCFS had not met its burden in proving the allegations against B.F.G. and that B.F.G. "is not a perpetrator of child abuse as defined in allegations #19 Sexual Penetration, #20 Sexual Exploitation, #21 Sexual Molestation, and #22b Substantial Risk of Sexual Injury, Rule and Procedure 300 and ANCRA." These defendants are without sufficient knowledge or information to form a belief as to when the administrative decision was sent to plaintiffs and therefore deny the same. These defendants deny the remaining allegations contained in Paragraph 44, as phrased.

### FURTHER PUBLIC CONDEMNATION OF PLAINTIFFS

45.    Notwithstanding the ALJ's finding that B.F.G. "is not a perpetrator of child abuse," Defendants K.S. and J.S. have continuously disseminated the false accusations against B.F.G. throughout their neighborhood and local school community. J.L.S. and N.S. have repeatedly made reference to B.F.G. as a child molester and a person who does "bad sex things" to children.

**ANSWER:**    Deny.

46.    As a result, Plaintiffs have been rendered pariahs in their community, endured debilitating emotional and psychological distress and trauma, and the utter destruction of their good names and reputations, lost good will in the community, and Plaintiffs R.G. and B.G. have suffered financial losses in their medical practice.

**ANSWER:**    Deny.

17

47.    Defendant K.S. has further unconscionably attempted to interfere with E.G. and M.G.'s relationships at their school and has also attempted to preclude E.G. and M.G. from participating in school and/or community related events.

**ANSWER:**    Deny.

### COUNT I – SUBSTANTIVE DUE PROCESS - 42 U.S.C. § 1983

This Count is not directed against these defendants and as such no answer is required. To the extent any of the allegations in Count I are deemed to be directed against these defendants, they are denied.

### COUNT II– PROCEDURAL DUE PROCESS- 42 U.S.C. § 1983

This Count is not directed against these defendants and as such no answer is required by these defendants. To the extent any of the allegations in Count II are deemed to be directed against these defendants, they are denied.

### COUNT III– FIRST AMENDMENT - 42 U.S.C. § 1983

This Count is not directed against these defendants and as such no answer is required. To the extent any of the allegations in Count III are deemed to be directed against these defendants, they are denied.

### COUNT IV– SUBSTANTIVE DUE PROCESS- 42 U.S.C. §1983

This Count is not directed against these defendants and as such no answer is required. To the extent any of the allegations in Count IV are deemed to be directed against these defendants, they are denied.

CHICAGO\2486866.1
ID\SADE

## COUNT V– UNLAWFUL ARREST – 42 U.S.C. § 1983

This Count is not directed against these defendants and as such no answer is required.  To the extent any of the allegations in Count V are deemed to be directed against these defendants, they are denied.

## COUNT VI– DUE PROCESS – 42 U.S.C. § 1983

75.     Plaintiffs reassert and incorporate paragraphs 1-74 above as paragraph 75 of this Count VI.

**ANSWER:**     These defendants incorporate and restate their answers to the allegations in Paragraphs 1 through 47 above as if fully set forth herein.  The allegations contained in Paragraphs 48 through 74 are not directed against these defendants and as such no answer is required by these defendants.  To the extent said allegations are deemed to be directed against these defendants, they are denied.

76.     Plaintiff B.F.G. enjoyed the right to a fair administrative hearing under the Fourteenth Amendment to the United States Constitution.

**ANSWER:**     The allegation contained in Paragraph 76 is a legal conclusion of the pleader to which no response is required.  .

77.     Defendants Casady, J.S., and K.S. violated B.F.G.'s right to a fair and full administrative hearing by suppressing, and conspiring among themselves to suppress, exculpatory evidence, and by refusing to cooperate with the Court's investigation of the suppression, and by otherwise engaging in a pattern of willful and deliberate conduct specifically intended to prevent Plaintiff B.F.G. from receiving a fair and timely hearing on his administrative appeal.

**ANSWER:**     Deny.

19

78.     Defendant Blackmon violated B.F.G.'s right to a fair administrative hearing by falsely testifying and otherwise engaging in a pattern of willful and deliberate conduct specifically intended to prevent B.F.G. from receiving a fair hearing on his administrative appeal.

**ANSWER:**     The allegations contained in Paragraph 78 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.

79.     As a result of Defendants' actions, Plaintiff has suffered substantial damages, including severe emotional distress and psychological trauma, damage to reputation, and attorney's fees and costs incurred in defending against the false charges.

**ANSWER:**     Deny.

WHEREFORE, the defendants, J.S. and K.S., deny plaintiffs are entitled to recover any sums from them and pray that plaintiffs' amended complaint be dismissed with prejudice.

## COUNT VII– CONSPIRACY - 42 U.S.C. § 1983

80.     Plaintiffs reassert and incorporate paragraphs 1-79 above as paragraph 80 of this Count VII.

**ANSWER:**     The allegations contained in Paragraph 48 through 74 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.  These defendants incorporate and restate their answers to the allegations in Paragraphs 1 through 47 and paragraphs 75 through 79 above as if fully set forth herein.

81.     Defendants Casady, Blackmon, Smith-Foote, Butts, Tabordon, Widlacki, J.S. and K.S. conspired together, and acted in concert to deprive B.F.G., R. G. and B. G. of their civil rights under the United States Constitution while acting under the color of law.

**ANSWER:**     Deny.

20

82.     Defendants Casady, Blackmon, Smith-Foote, Butts, Tabordon, Widlacki, J.S. and K.S. conspired together, and acted in concert to cause Plaintiff B.F.G. to be removed from his family home without cause, falsely "indicated" and arrested based upon obviously false and unsubstantiated charges of sexual misconduct, and deprived of a fair administrative hearing through false testimony and the willful suppression of key exculpatory evidence; thus, Defendants unlawfully deprived him of his rights to be free from false arrest, free from the stigma associated with being falsely "indicated,' as well as his right to a fair administrative hearing and his and his parents' rights to family integrity and free association.

**ANSWER:**     Deny.

83.     As a result of the above actions, Plaintiffs have suffered substantial damages, including severe emotional distress and psychological trauma, damage to reputation, attorney's fees and costs incurred in defending against the false charges, and further loss of income.

**ANSWER:**     Deny.

WHEREFORE, the defendants, J.S. and K.S., deny plaintiffs are entitled to recover any sums from them and pray that plaintiffs' amended complaint be dismissed with prejudice.

## COUNT VIII– STATE LAW CLAIM - MALICIOUS PROSECUTION

84.     Plaintiffs reassert and incorporate paragraphs 1-83 above as paragraph 84 of this Count VIII.

**ANSWER:**     The allegations contained in Paragraphs 48 through 74 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.  These defendants incorporate and restate their answers to the allegations in Paragraphs 1 through 47 and Paragraphs 75 through 83 above as if fully set forth herein.

21

85.    Defendants Casady, Blackmon, Smith-Foote, K.S. and J.S. caused judicial proceedings against B.F.G. to be initiated when they caused false sex abuse charges to be indicated against B.F.G. without probable cause and with malice, causing him to be placed on the State Central Register of sex offenders.

**ANSWER:**    Deny.

86.    After B.F.G. filed his administrative appeal, Defendant Casady indicated additional allegations despite the lack of credible evidence and engaged in extreme and outrageous misconduct, as described above, in defending DCFS during B.F.G.'s administrative appeal.

**ANSWER:**    The allegations contained in Paragraph 86 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.

87.    Defendants acted without probable cause or credible evidence, and with malice in instituting and continuing the proceedings against B.F.G.

**ANSWER:**    Deny.

88.    The proceedings terminated in B.F.G.'s favor when ALJ Baechle found that DCFS had not met its burden in proving the allegations against B.F.G. and further found that B.F.G. "is not a perpetrator of child abuse".

**ANSWER:**    These defendants admit only that the ALJ found that the DCFS had not met its burden in proving the allegations against B.F.G. and that B.F.G. "is not a perpetrator of child abuse as defined in allegations #19 Sexual Penetration, #20 Sexual Exploitation, #21 Sexual Molestation, and #22b Substantial Risk of Sexual Injury, Rule and Procedure 300 and ANCRA."

89.     As a result of those actions, Plaintiff has suffered substantial damages, including severe emotional distress and psychological trauma, damage to reputation, and attorney's fees and costs incurred in defending against the false charges.

**ANSWER:**    Deny.

WHEREFORE, the defendants, J.S. and K.S., deny plaintiffs are entitled to recover any sums from them and pray that plaintiffs' amended complaint be dismissed with prejudice.

## COUNT IX– STATE LAW CLAIM - CIVIL CONSPIRACY

90.     Plaintiffs reassert and incorporate paragraphs 1-89 above as paragraph 90 of this Count IX.

**ANSWER:**    The allegations contained in Paragraphs 48 through 74 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.   These defendants incorporate and restate their answers to the allegations in Paragraphs 1 through 47 and Paragraphs 75 through 89 above as if fully set forth herein.

91.     Defendants Casady, Blackmon, Smith-Foote, Butts, Tabordon, Widlacki, J.S. and K.S. conspired together, and acted in concert to deprive B.F.G., R.G. and B.G. of their rights under Illinois law.

**ANSWER:**    Deny.

92.     Defendants Casady, Blackmon, Smith-Foote, Butts, Tabordon, Widlacki, J.S. and K.S. conspired together and acted in concert to indicate charges against B.F.G. and publicly condemn him, as well as suppress exculpatory evidence and present false testimony; and, acted in such a way throughout the course of the DCFS investigation, arrest, and administrative hearing of B.F.G. as to cause B.F.G., R.G. and B.G. extreme emotional distress, thereby

CHICAGO\2486866.1
ID\SADE

unlawfully depriving B.F.G. of his rights to be free from malicious prosecution, defamation per se and false light invasion of privacy and subjecting B.F.G., R.G. and B.G. to the intentional infliction of emotional distress.

**ANSWER:**   Deny.

93.     As a result of the above actions, Plaintiffs have suffered substantial damages, including severe emotional distress and psychological trauma, attorney's fees and costs incurred in defending against the false charges, further loss of income, and damage to reputation.

**ANSWER:**   Deny.

WHEREFORE, the defendants, J.S. and K.S., deny plaintiffs are entitled to recover any sums from them and pray that plaintiffs' amended complaint be dismissed with prejudice.

## COUNT X– STATE LAW CLAIM - DEFAMATION PER SE

94.     Plaintiffs reassert and incorporate paragraphs 1-93 above as paragraph 94 of this Count X.

**ANSWER:**   The allegations contained in Paragraphs 48 through 74 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.   These defendants incorporate and restate their answers to the allegations in Paragraphs 1 through 47 and Paragraphs 75 through 93 above as if fully set forth herein.

95.     Notwithstanding the ALJ's finding that B.F.G. "is not a perpetrator of child abuse," Defendants K.S. and J.S. have continuously disseminated the false accusations against B.F.G. throughout their neighborhood and local school community. J.L.S. and N.S. have repeatedly made reference to B.F.G. as a child molester and a person who does "bad sex things" to children. As a result, Plaintiff has been rendered a pariah in his community, endured

24

debilitating emotional and psychological distress and trauma, and the utter destruction of his

good name and reputation, and lost good will in the community.

**ANSWER:**    Deny.


96.    Defendants' statements were undertaken maliciously, and with knowledge of, or

reckless disregard for, their truth or falsity.

**ANSWER:**    Deny.


97.    As a result of those actions, Plaintiff B.F.G. has suffered substantial damages,

including severe emotional distress and psychological trauma, and damage to his reputation.

**ANSWER:**    Deny.


WHEREFORE, the defendants, J.S. and K.S., deny plaintiffs are entitled to recover any

sums from them and pray that plaintiffs' amended complaint be dismissed with prejudice.

## COUNT XI– STATE LAW CLAIM – INTENTIONAL
## INFLICTION OF EMOTIONAL DISTRESS

98.    Plaintiffs reassert and incorporate paragraphs 1-97 above as paragraph 98 of this

Count XI.

**ANSWER:**    The allegations contained in Paragraphs 48 through 74 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.  These defendants incorporate and restate their answers to the allegations in Paragraphs 1 through 47 and Paragraphs 75 through 97 above as if fully set forth herein.

99.    The conduct of Defendants Casady, Blackmon, Smithe-Foote, Butts, Tabordon,

Widlacki, K.S. and J.S., throughout the course of the DCFS investigation, arrest, and

25

administrative hearing, as described above, has been extreme and outrageous, and calculated to, and did, in fact, cause Plaintiffs to suffer severe emotional distress and psychological trauma.

**ANSWER:**    Deny.

WHEREFORE, the defendants, J.S. and K.S., deny plaintiffs are entitled to recover any sums from them and pray that plaintiffs' amended complaint be dismissed with prejudice.

## COUNT XII – STATE LAW CLAIM - FALSE LIGHT INVASION OF PRIVACY

100.    Plaintiffs reassert and incorporate paragraphs 1-99 above as paragraph 100 of this Count XII.

**ANSWER:**    The allegations contained in Paragraphs 48 through 74 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.  These defendants incorporate and restate their answers to the allegations in Paragraphs 1 through 47 and Paragraphs 75 through 99 above as if fully set forth herein.

101.    Defendants, K.S. and J.S., as well as their children N.S. and J.L.S., have caused the false allegations against B.F.G. to become public through communication with the children's school administrators and classmates, and communication with neighbors.

**ANSWER:**    Deny.

102.    A reasonable person would find publication of the false allegations to be highly offensive.

**ANSWER:**    Deny.

103.    Defendants' actions in publicizing the allegations against B.F.G. were undertaken maliciously, and with knowledge of, or reckless disregard for, their truth or falsity.

**ANSWER:**    Deny.

CHICAGO\2486866.1
ID\SADE

104.    As a result of those actions, Plaintiff B.F.G. has suffered substantial damages, including severe emotional distress and psychological trauma, and damage to his reputation.

**ANSWER:**    Deny.

WHEREFORE, the defendants, J.S. and K.S., deny plaintiffs are entitled to recover any sums from them and pray that plaintiffs' amended complaint be dismissed with prejudice.

## COUNT XIII– STATE LAW CLAIM - NEGLIGENT SUPERVISION OF MINORS

105.    Plaintiffs reassert and incorporate paragraphs 1-104 above as paragraph 105 of this Count XIII.

**ANSWER:**    The allegations contained in Paragraphs 48 through 74 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.  These defendants incorporate and restate their answers to the allegations in Paragraphs 1 through 47 and Paragraphs 75 through 104 above as if fully set forth herein.

106.    Defendants K.S. and J.S. are the parents of N.S. and J.L.S. and, at all times relevant, had a duty to exercise reasonable care so to control N.S. and J.L.S. as to prevent the intentional harming of others.

**ANSWER:**    These defendants admit owing all duties imposed by law and deny all others.  To the extent the allegations in Paragraph 106 set forth duties not imposed by law, they are denied.

107.    Defendants K.S. and J.S., at all relevant times, had the ability to control their children.

**ANSWER:**    Deny.

108.    Defendants K.S. and J.S. should have known the necessity of ensuring that J.L.S. and N.S. did not discuss the allegations against B.F.G. with anyone. K.S. and J.S. should have

27

known this was tortious conduct, and further, that it is unlawful conduct as all DCFS proceedings are confidential.

**ANSWER:**    Deny.

109.    Defendants K.S. and J.S. breached this duty to control their children when they allowed J.L.S. and N.S. to willfully and maliciously speak openly in their school and neighborhood communities regarding the allegations against B.F.G. and why they are not allowed to play with E.G. and M.G.

**ANSWER:**    Deny.

110.    The allegations that J.L.S. and N.S. have made known to their school communities have caused Plaintiff B.F.G. severe emotional distress and psychological trauma, and reputational damage.

**ANSWER:**    Deny.

111.    The allegations that J.L.S. and N.S. have made known to their school communities are false, were made maliciously, and are the actual and proximate cause of Plaintiff's damages.

**ANSWER:**    Deny.

WHEREFORE, the defendants, J.S. and K.S., deny plaintiffs are entitled to recover any sums from them and pray that plaintiffs' amended complaint be dismissed with prejudice.

## COUNT XIV– STATE LAW CLAIM - PARENTAL LIABILITY

112.    Plaintiffs reassert and incorporate paragraphs 1-111 above as paragraph 112 of this Count XIV.

**ANSWER:**    The allegations contained in Paragraphs 48 through 74 are not directed against these defendants and as such no answer is required.  To the extent said allegations are deemed to be directed against these defendants, they are denied.  These defendants incorporate and restate their answers to the allegations in Paragraphs 1 through 47 and Paragraphs 75 through 111 above as if fully set forth herein.

113.    J.L.S. and N.S., children of Defendants K.S. and J.S. maliciously committed the torts of defamation *per se*, the intentional infliction of emotional distress and false light invasion of privacy as against Plaintiffs.

**ANSWER:**    Deny.

114.    Under Illinois law, a parent of an unemancipated minor who resides with said parent is responsible for actual damages for the willful or malicious acts of such minor that causes injury to a person. *See* 740 ILCS 115 *et. seq.*

**ANSWER:**    These defendants admit only that 740 ILCS 115 *et. seq.* states, in part, that a parent of an unemancipated minor who resides with such parent is liable for actual damages for the wilful or malicious acts of such minor which cause injury to a person, and these defendants deny any liability under said statute.

115.    The torts committed by J.L.S. and N.S. caused actual damage to all of the Plaintiffs, as described above.

**ANSWER:**    Deny.

WHEREFORE, the defendants, J.S. and K.S., deny plaintiffs are entitled to recover any sums from them and pray that plaintiffs' amended complaint be dismissed with prejudice.

29

## COUNT XV– STATE LAW CLAIM - RESPONDEAT SUPERIOR

This Count is not directed against these defendants and as such no answer is required. To the extent any of the allegations in Count XV are deemed to be directed against these defendants, they are denied.

## COUNT XVI– STATE LAW CLAIM - 745 ILCS 10/9-102

This Count is not directed against these defendants and as such no answer is required. To the extent any of the allegations in Count XVI are deemed to be directed against these defendants, they are denied.

## <u>AFFIRMATIVE DEFENSES</u>

Defendants J.S. and K.S., by their attorneys, Dykema Gossett PLLC, state their affirmative defenses to plaintiffs' amended complaint as follows:

By alleging the matters set forth below, J.S. and K.S. do not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these matters or that the plaintiffs is relieved of their burden to prove each and every element of their claims and the damages, if any, to which it is entitled.

1.   Under *Brady v. Maryland*, 373 U.S. 83 (1963), defendants J.S. and K.S., as witnesses in an administrative hearing and under the facts as alleged in plaintiffs' Due Process claim, could not be liable for the alleged "suppression of evidence."

2.   Under the Parental Responsibility Act, defendants cannot be liable for any conduct of J.L.S. or N.S that occurred while he or she was under the age 11.  740 ILCS 115/2

30

3.   defendants' alleged conduct under plaintiffs' Section 1983 claims was not done under the color of law.  defendants therefore cannot be liable under those claims.

4.   As to plaintiffs' state law claims, defendants are not liable to pay attorney fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'"  *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

5.   To the extent plaintiffs failed to mitigate any of their claimed injuries or damages, including, but not limited to their alleged financial losses, any verdict or judgment obtained by plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate his or her damages.

6.   As to plaintiffs' defamation per se claim, any statements made by defendants were substantially true, and are thereby not actionable.

Defendants reserve the right, upon completion of their investigation and discovery, to file such additional defenses as may be appropriate.

## **COUNTERCLAIM**

Defendants/counter-plaintiffs, J.S. and K.S., by their attorneys, Dykema Gossett PLLC, for their counterclaim against plaintiffs/counter-defendants, state as follows:

31

## NATURE OF CLAIM

1.    This action is based on a claim for intentional infliction of emotional distress.

Defendants/counter-plaintiffs' claims arise from B.F.G.'s sexual abuse and exploitation of N.S.

and J.L.S., the campaign of intimidation on K.S., J.S., J.L.S. and N.S. and plaintiffs' interference

with their life and quiet enjoyment of their home after the abuse was reported.

## JURISDICTION AND VENUE

2.    Jurisdiction is asserted pursuant to 28 U.S.C. § 1367.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all parties

reside within Cook County, Illinois and all relevant acts occurred in the Northern District of

Illinois in the County of Cook, State of Illinois.

## PARTIES

4.    Defendants/counter-plaintiffs J.S. and K.S. reside in a western suburb of Chicago,

Illinois.  J.S. is a doctor of medicine who practices medicine in the western suburbs.  K.S has

been and continues to be involved in her neighborhood and community, in her children's schools

and in her children's athletic activities, and she also works outside of the home.  J.S. and K.S. are

married and are the parents of J.L.S. and N.S.

5.    Plaintiff/counter-defendant, B.F.G., is a minor who resides in a western suburb of

Chicago, Illinois with his mother and father and younger brother, M.G,. and sister, E.G., in a

western suburb of Chicago, Illinois.

32

6.    Plaintiffs/counter-defendants, R.G. and B.G., are a married couple who reside in a western suburb of Chicago, Illinois and are the parents of B.F.G., M.G. and E.G.

## RELEVANT FACTS

7.    From July through November, 2006, B.F.G. babysat J.L.S. and N.S. on numerous occasions.  B.F.G. would babysit J.L.S. and N.S. in the basement of the home of J.S. and K.S. and also in his parents' home.  B.F.G. was fourteen years of age, and J.L.S. and N.S. were 9 and 7 years old, respectively.

8.    B.F.G.'s younger brother, M.G., and younger sister, E.G., were 10 and 7 years of age, respectively, and would often play with J.L.S. and N.S. in 2006.

9.    B.F.G. played a "truth or dare game," and other games, such as rolling the dice, which games led to sexual exploitation and abuse by B.F.G., which included, on numerous occasions, B.F.G. placing various objects in or around the anal areas of J.L.S. and N.S.  These items included a toy plastic banana, a toy plastic carrot, a toy plastic butter, a pen, a pencil, and a drumstick.

10.    B.F.G. also made N.S. perform flip flops naked.  B.F.G. explained to J.L.S. what masturbation is, and he showed J.L.S. pornographic photographs.  B.F.G. also would have J.L.S. and N.S. put objects in or around B.F.G.'s anus.  B.F.G. would close the shades in the basement of K.S.'s and J.S.'s home during these acts.

33

11.    On one occasion, B.F.G. and J.L.S. were by a pond behind the home of J.S. and K.S.  B.F.G. told J.L.S. to stand against a large boulder rock by the pond, pull his pants down, spread his butt cheeks and allow him to put a stick in the anus area.

12.    B.F.G. threatened harm on J.L.S. and N.S. if they did not play his game or if they told anyone about what he did.  When N.S. refused to cooperate in one of B.F.G.'s exploitations, B.F.G. put a fist to N.S.'s face.  On another occasion, B.F.G. hit N.S. in or around her nose.

13.    On January 15, 2007, J.L.S. and N.S. were at their grandmother's home.  The grandmother noticed strange behavior in the two children, and, that evening, the grandmother spoke with K.S over the telephone about the same.

14.    Later in the evening of January 15, 2007, K.S. talked to the children.  J.L.S. and N.S. told K.S about the sexual abuse and exploitation by B.F.G.

15.    The next day, on January 16, 2007, J.S. and K.S. went to the Village of Willow Springs Police Department.  J.S. and K.S. brought with them a toy plastic banana and toy plastic carrot which was taken into custody by Officer Widlacki.

16.    Thereafter, J.S. and K.S. were informed to bring their children to the Children's Advocacy Center of Southwest Cook County ("CAC").  J.L.S. and N.S. were taken into separate rooms, and each child was interviewed separately.  J.L.S. and N.S. were found to be credible witnesses.

34

17.     Upon information and belief, R.G. interfered with the DCFS investigation by preparing E.G. and M.G. for their victim sensitive interviews at the CAC.

18.     The Illinois Department of Children and Family Services ("DCFS") completed its investigation and gave a sexual offense Indicated finding. J.S. and K.S. were advised by the State's Attorney's office that B.F.G. and his parents had agreed to B.F.G. undergoing sexual offender counseling, pursuant to pre-trial diversion.

19.     After reneging on their promise to have B.F.G. undergo diversion sexual offender counseling, plaintiffs/counter-defendants appealed the Indicated finding, forcing defendants/counter-plaintiffs to attend numerous days of an administrative hearing, re-living these distressing events and incurring financial loss.

20.     Since the abuse being discovered through the present, J.S. and K.S. have lived with extraordinary stress trying to cope with how their children were abused and exploited by B.F.G. with no repercussion to B.F.G. There is tremendous distress over being concerned about their children and being constantly embattled by litigation brought on by B.G. and R.G. while their children remain victims with no voice. All of this stems from the abuse by B.F.G. and subsequent conduct of plaintiffs/counter-defendants.

21.     After J.S. and K.S. reported the abuse, B.G. and B.F.G. initiated a campaign of intimidation on J.L.S., N.S., K.S. and J.S. as well as on their friends. B.G., B.F.G., E.G. and M.G. ("the G family") purposefully interfered with the lifestyles of J.L.S., N.S., K.S. and J.S.. ("the S family").

35

22.     Starting in 2007 through the present, when members of the S family are in the process of leaving their home or are otherwise outside on their lawn, driveway or other area of their neighborhood, B.G. and B.F.G. often stop and maliciously stare down members of the S family, even the children, at times with their arms crossed.

23.     B.G. has, on several occasions, taken photographs of J.L.S. and N.S., without permission, when they are playing outside in their neighborhood.  For example, in 2007, B.G. took pictures of J.L.S. riding his mini-bike, and in 2008, he took pictures of J.L.S. and N.S. fishing by the pond behind the S family's home in an effort to intimidate the children and interfere with the home and family life of the S family.

24.     B.G. called the police on J.L.S. in 2008 when J.L.S. was simply riding his mini bike on the sidewalk of the neighborhood.  B.G. verbally forbids J.L.S. or N.S. to step one foot over the boundary onto his property.

25.     In 2007, when members of the S family and their friends were sledding on a hill on the S family's property, B.G. stared down the S family and their friends and also yelled at J.L.S. and N.S. to get off their own property.

26.     When K.S. has friends visit at her home, B.G. interferes and makes the guests feel uncomfortable.

27.     B.G. and B.F.G. have the goal of intimidating the S family.  In 2006, B.F.G. was in excess of 6 feet, 2 inches tall and weighed approximately 270 pounds and his father, B.G. is likewise a very large man.  Members of the S family feel great distress simply trying to mind

36

their own business, live their own lives and move forward since their children were abused. Members of the S family are intimidated from being outside on their own property and from socializing with friends and neighbors in and around their home.  The S family is unable to have normal social interactions with their friends and neighbors.  They are constantly concerned that, when a friend or neighbor visits at their home, there will be some type of interference by the G family.  They now avoid much social interaction at their home.

28.    K.S. and J.S. are under constant fear of their children being hurt again by B.F.G. They live in constant fear that, when their children play outside their house, they will be harmed by B.F.G. or stared down, yelled at or have the police called on them, for no reason, by B.G. Each time any such incident occurs, J.L.S. and N.S. have to be reminded again of the abuse they suffered at the hands of B.F.G.  As a result, these children are unable to heal from the abuse, all of which creates extraordinary stress for K.S. and J.S.

29.    In addition, B.G., R.G. and B.F.G. have conspired to cover up the abuse committed by B.F.G. of J.L.S. and N.S.  Although plaintiffs/counter-defendants promised that B.F.G. would undergo sexual offender diversion counseling to avoid prosecution, B.F.G. refused to meet this obligation and B.G. and R.G. allowed such refusal.  J.S. and K.S. now have the distress of knowing their children's abuser has not undergone any treatment which might deter such behavior in the future.

30.    As a result of B.F.G.'s abuse and exploitation of J.L.S. and N.S., plaintiffs/counter-defendants' cover-up of the abuse, B.F.G.'s failure to abide by the promise to undergo diversion counseling, the constant intimidation and interference by B.F.G. and B.G.,

37

defendants/counter-plaintiffs have endured emotional and psychological distress and trauma and they have suffered financial losses, including wage loss and potential loss in home value.

## COUNT I
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

31.    Defendants/counter-plaintiffs reassert and incorporate paragraphs 4-30 above as paragraph 31 of Count I.

32.    The conduct of B.F.G. in sexually abusing and exploiting N.S. and J.L.S., the cover up of this abuse by plaintiffs/counter-defendants, the campaign of intimidation by B.F.G. and B.G., as described above, has been extreme and outrageous, and calculated to, and did, in fact, cause defendants/counter-plaintiffs to suffer severe emotional distress, psychological trauma and financial loss.

WHEREFORE, defendants/counter-plaintiffs pray the Court award defendants/counter-plaintiffs relief as follows:

A.    Award compensatory damages in favor of defendants/counter-plaintiffs and against plaintiffs/counter-defendants in an amount in accordance with the proofs;

B.    Award punitive damages in favor of defendants/counter-plaintiffs and against plaintiffs/counter-defendants in an amount in accordance with the proofs;

C.    Any and all other forms of relief this Honorable court deems just and appropriate.

## JURY DEMAND

Defendants J.S. and K.S. respectfully request a trial by jury.

38

CHICAGO\2486866.1
ID\SADE

Dated: August 4, 2008

Daniel M. Noland
Sonia A. Desai
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois  60606
312.876.1700

By:     s/Sonia A. Desai (ARDC No. 6255838)
        One of the Attorneys for Defendants,
        J.S. and K.S.

39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2008, I electronically filed the foregoing **Defendants' J.S. and K.S.'s Answer, Affirmative Defenses and Counterclaim to Plaintiff's Amended Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

James G. Sotos & Associates, Ltd.
550 East Devon
Suite 150
Itasca, Illinois  60143
630.735.3300
630.773.0980 (facsimile)

Lance D. Northcutt
Berg, Northcutt & Berg
2100 W. 35th Street
Chicago, Illinois  60609
773.252.7220
773.252.7221 (facsimile)


Querrey & Harrow, Ltd.
175 West Jackson Boulevard
Suite 1600
Chicago, Illinois  60604
312.540.7000
312.540.0578 (facsimile)

Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, Illinois  60805
708.424.5678
708.425.1898 (facsimile)

James C. Stevens, Jr.
Office of the Illinois Attorney General
100 West Randolph Street, Suite 11-200
Chicago, Illinois  60601
312.814.6788
312.814.6885 (facsimile)


Ettinger, Besbekos, & Schroeder, P.C.
12413 South Harlem Avenue
Suite 203
Palos Heights, Illinois  60463
708.923.0368
708.598.0041 (facsimile)

Steven C. Wolf
Patrick R. Grady
Jessica K. Burtnett
Law Offices of Wolf & Wolfe, Ltd.
25 E. Washington St., Ste. 700
Chicago, Illinois 60602
312.855.0500
312.855.0510 (facsimile)


s/ Sonia A. Desai (ARDC No. 6255838)

40

41