IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| B.F.G., by his parents and next friends, )<br>R.G and B.G., and R.G., and B.G., )<br>   )<br>   Plaintiffs, )<br>v.   )<br>   )<br>Willie Blackmon, Investigator, Division of )<br>Child Protection, ("DCP"), of the Illinois )<br>Department of Children and Family )<br>Services("DCFS"), in his individual )<br>capacity; Kimberly Smith-Foote, )<br>Investigative Supervisor (DCP), in her )<br>individual capacity; Danielle Butts, )<br>supervisor, Child Advocacy Center of )<br>Southwest Cook County, Illinois ("CAC"), )<br>in her individual capacity; Rhonda Casady, )<br>attorney for DCFS, in her individual )<br>capacity, Detective Tabordon and Officer )<br>Widlacki, police officers, Willow Springs )<br>Police Department, in their individual )<br>capacities; Village of Willow Springs, )<br>Illinois, a Municipal Corporation; )<br>and J.S. and K.S. )<br>   )<br>   Defendants. ) | No. 08 C 1565<br><br>Judge Conlon<br>Magistrate Judge Nolan<br><br>Jury Demand |

**PLAINTIFFS' RESPONSE TO DEFENDANT CASADY'S
MOTION TO VACATE ENTRY OF DEFAULT**

Plaintiffs, B.F.G. through his parents and next friends R.G. and B.G., and R.G. and B.G., by and through their attorneys JAMES G. SOTOS and JULIE K. BISBEE of JAMES G. SOTOS & ASSOCIATES, LTD., and LANCE D. NORTHCUTT of BERG NORTHCUTT & BERG, pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, hereby respond to Defendant Casady's Motion to Vacate the Entry of Default as follows:

## **BACKGROUND**

Plaintiffs served Casady, a licensed Illinois attorney, with an original Summons and Complaint in this matter on March 20, 2008 through the use of a process server, Jim Delorto. (See Docket, # 96, Affidavit of Service.) Initially, Casady intentionally evaded service at her office on 200 South Michigan Avenue, Chicago, Illinois, by instructing her receptionist to tell Mr. Delorto that she did not work there (Ex. A, Affidavit of Jim Delorto, ¶¶ 3-5, previously filed as Exhibit B to Dkt. # 66, Plaintiffs' original Motion for Default, 6/13/08.) Mr. Delorto then traveled to Casady's home, where Casady again attempted to avoid service by refusing to accept the summons, inquiring how Delorto obtained her home address, and telling Delorto she did not want the summons. (*Id,* ¶¶ *6-8.*) Mr. Delorto then left the summons and Complaint in Ms. Casady's mailbox, which she retrieved within the next several minutes (*See Id.* ¶¶ 9-10.).

After being served, Casady was required by Federal Rule 12(a)(1)(A) to Answer the Complaint, or otherwise plead by April 9, 2008. Casady not only failed to respond in any fashion to Plaintiffs' Complaint by April 9, 2008, she did not even file an appearance.

Throughout the months of April and May, Plaintiffs' counsel were in contact with attorneys for DCFS who claimed to be representing the interests of Casady. (See Docket # 66, Pls.' original Mot. for Default, ¶¶ 13-22.) On April 15, 2008, DCFS counsel assured Plaintiffs' counsel that Ms. Casady would respond by April 21, 2008 so Plaintiffs' counsel refrained from filing for default. (*Id.,* ¶¶ 12-13.) On April 22, 2008 DCFS counsel again assured Plaintiffs' counsel that Casady would respond to the Complaint by April 25, 2008 so Plaintiffs' counsel continued to refrain from filing for default. (*Id.,* ¶¶ 12-13.) April 25, 2008 came and went without even an appearance from Ms. Casady.

On May 5, 2008 this Honorable Court held a status hearing at which the status of Ms. Casady's failure to appear was discussed. During that hearing, DCFS counsel requested that Plaintiffs' counsel grant Ms. Casady an additional fourteen days to respond to the Complaint. (Id. ¶ 16.) Again, Plaintiffs' counsel agreed, and continued to refrain from filing a motion for default. Moreover, Plaintiffs have repeatedly accommodated all other Defendants regarding extensions of time and have not opposed any motions for extensions. (See Docket ## 22, 35, 49, 60.)

Plaintiffs filed their Amended Complaint on May 12, 2008, and all Defendants were required to Answer by May 28, 2008 pursuant to this Honorable Court's Order of May 1, 2008. (Docket # 40.) On May 27, 2008, well over two months after being served with the initial Complaint, Casady finally contacted Plaintiffs' attorneys, requested an additional two weeks to respond to the Amended Complaint, and promised she would file her appearance by the following day, May 28, 2008. (See Docket # 66, Pls.' original Mot. for Default, ¶¶ 19-20.) Plaintiffs' counsel again agreed to an extension until June 10, 2008. (*Id*). Nonetheless, Casady still failed to file an Appearance, Answer, and/or any other Motion, by June 10, 2008.

On June 13, 2008, Plaintiffs filed their original Motion for Default against Casady. (Docket # 66.) In an attempt to ensure service, Plaintiffs hired a process server to serve Casady with the Motion for Default. Again Casady attempted to avoid service by refusing to answer the door, and Plaintiffs' process servers were forced to leave the papers in Casady's mailbox, after which they watched her retrieve them. (Ex. B, Affidavit of James Delorto.) At the June 19, 2008 hearing on Plaintiffs' Motion for Default, Casady asserted in open court that her responsive pleading was almost complete and that she would be able to finish it within a week. As a result, this Honorable Court denied Plaintiffs' Motion for Default and ordered Casady to Answer or

3

Otherwise Plead to Plaintiffs' Amended Complaint, as well as serve Plaintiffs with her Initial Disclosures pursuant to Rule 26(a)(1) by June 26, 2008.

Casady failed to comply with the Court's order in its entirety, and failed to even appear before June 26, 2008.[1] Instead, without having filed an appearance, Casady attempted to file a Motion for extension on June 27, 2008 requesting until June 30, 2008 to file her Answer. (Docket # 80.) Casady's cited reasons for the needed extension revolved around her representation of DCFS in numerous cases. (*Id.* ¶ 2.) She also again represented to this Honorable Court that "the pleading is almost complete." (*Id.* ¶ 3.) Because of Casady's misfiling of the Motion it was never placed on the motion call and Plaintiffs were unable to oppose it. On June 30, 2008, Casady finally appeared, but still did not answer or otherwise plead. (Docket #82.)

Subsequently, on July 7, 2008, Casady filed still another motion to extend, requesting until July 10, 2008 to answer or otherwise plead. (Docket #90.) Casady again cited her busy schedule as the reason she was unable to complete her responsive pleading. (*Id.* ¶¶ 2-3.) She also represented for the third time that her "pleading is almost complete, but the additional time is needed to finalize it." (*Id.* ¶ 3.) This Motion was granted on July 10, 2008. (Docket # 106.) However, Casady again failed to respond by the date she had requested. Instead, on July 11, 2008, a day after the Court's deadline, Casady filed yet another Motion to Extend, and to seek counsel. (Docket # 104.) This motion was denied as moot and a technical default was entered against Casady on July 17, 2008. (Docket #113.) Two weeks later, on July 31, 2008, Casady moved, through counsel, to vacate the Default. (Docket #118.)

---

[1] Casady unsuccessfully attempted to first file her appearance on June 19, 2008.

## **LEGAL STANDARD**

When challenging an entry of default under Rule 55(c), the moving party must show (1) "good cause" for the default, (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint." *See Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994). Good cause is not established by the fact that an attorney had a "busy schedule." *See Conn. Nat'l. Mortgage Co. v. Brandstatter*, 897 F.2d 883, 884 (7th Cir. 1990). In fact, "routine back-office problems do not rank high on the list of excuses for default." *Pretzel & Stouffer Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994).

Additionally, "a lack of an attorney . . . [is not] a sufficient basis upon which to premise . . . a finding of 'good cause' for default" and, though *pro se* litigants "benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant, *pro se* litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." *Jones*, 39 F.3d at 163 (internal citations omitted). Moreover, a *pro se* litigant's "access to some legal counsel ma[kes] her task of showing 'good cause' . . . more difficult." *Id.*

Further, the presence or absence of "willful neglect" plays an important role in determining whether to grant a party relief from an entry or judgment of default. *Carpenters Fringe Benefits Funds of Ill. v. Royal Builders, Inc.*, No. 05-C1731, 2007 U.S. Dist. WL 404038 at *4 (N.D. Ill. Feb. 2, 2007). Specifically, "the Seventh Circuit has little sympathy for defendants who willfully refuse to play by the rules." *Id.*

### I. Defendant Casady Has Not Shown Good Cause for the Default

Casady does not have good cause for failing to answer or otherwise plead within the time prescribed by Rule 12(a)(1)(A) of the Federal Rules of Civil Procedure, or for failing to comply with this Honorable Court's Orders of June 19, 2008 and July 10, 2008. Further, far from

demonstrating "good cause," Casady's behavior establishes that her failure to respond has in fact been willful. Because Casady has not shown good cause as required by Rule 55(c) the entry of default must stand.

### A. Casady's work for DCFS Does Not Establish Good Cause for Her Disregard of this Litigation.

In Casady's various motions to extend, as well as her supporting affidavit, she referred to a major increase in her DCFS workload after a staff attorney suddenly resigned on June 5, 2008, as the reason why she was unable to prepare her responsive pleadings.[2] (See Mot. to Vacate ¶ 3, and Ex. A., Casady affidavit, ¶¶ 2-3.) Initially, as explained above, these "routine back-office problems do not rank high on the list of excuses for default." *Pretzel, supra,* 28 F.3d at 46.

Moreover, Casady's contention that her sudden influx in work constitutes good cause for ignoring this litigation for several months is conclusively belied by the record. Specifically, Casady was initially required to appear and respond to the Complaint by April 9, 2008, two full months before her DCFS workload tripled. Subsequently, Plaintiffs' counsel repeatedly held off on filing a motion for default after repeatedly being assured that Ms. Casady would respond to the Complaint first by April 21, then by April 25, then by May 19, and finally by May 28, 2008 all of which predated the influx of DCFS work which Ms. Casady now seeks to use as an excuse for not answering the Complaint. Thus, Casady was already in default by the time her workload increased on June 5, 2008, and, as further evidence of willfulness, it must be remembered that during this entire time, Casady failed to even file her appearance despite the fact that she had

---

[2] Upon Casady's most recent Motion to Extend, Plaintiffs opposed the Motion based on Casady's failure to meet the requirements of Rule 6(b) where a movant must show excusable neglect in a motion to extend if the motion is made after the time has expired. Excusable neglect "requires something more than a simple failure to meet the deadline due to a busy schedule." *U.S. v. Dumas,* 94 F.3d 286, 289 (7th Cir. 1996).

6

been served with the Complaint in mid-March.

Further, the pleadings Casady filed from late June through the middle of July further undermine Casady's after-the-fact attempt to explain her default on an influx of work from DCFS after June 5, 2008. Specifically, in her first motion to extend, filed on June 27, 2008 Casady sought only a three day extension, and did not mention any recent influx of DCFS work; but rather, cited only her general representation of DCFS on other matters, and further represented that her responsive pleadings were almost complete. (Docket #80). As of that date, she had still not even filed an appearance. In her second motion to extend, filed July 7, 2008, Casady requested three days to finalize her nearly completed responsive pleadings, and again referenced generally her work on behalf of DCFS, but again, said nothing about any recent influx of work from DCFS. Against that backdrop, and in light of Casady's earlier attempts to evade service in this matter, Plaintiffs respectfully suggest that Ms. Casady's current representations are inconsistent with the record, and should not be accepted by this Honorable Court as "good cause" for explaining Casady's willful failure to respect this Honorable Court's rules and Orders.

### B. Casady's *Pro Se* Status Is Not Good Cause Sufficient To Vacate the Entry of Default.

Casady, an attorney, states in her motion to vacate that she initially believed that she could represent herself in this matter while proceeding on a *pro se* basis, but reconsidered that belief during the course of preparing her responsive pleadings. ( Mot. to Vacate ¶¶ 4-5, 7.) Initially, Casady's representation is irreconcilable with both of her motions to extend of June 27, 2008 and July 7, 2008 neither of which mentioned anything about needing an attorney, and both of which represented that her responsive pleadings were almost complete, subject to finalization. (Docket #s 80, 90.) Indeed, Casady's failure to even raise the issue of needing independent counsel until her pleading July 11, 2008 demonstrates her cavalier and dismissive approach to

7

this litigation, buttressed by an apparent belief that she could ignore this Court's Orders without consequence.

In addition, *"pro se* litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." *Jones,* 39 F.3d at 163. And, a defendant facing default, with even limited access to a lawyer, has a more difficult showing of "good cause" for default. *See id.*

Casady cannot show that she had "good cause" for the default based on her status as a *pro se* litigant. Casady states in her Affidavit that she had to work every weekend and evening since June 19, 2008, to keep up with her DCFS work and her motion to dismiss (Mot. to Vacate, Exhibit A, ¶ 6, ) which speaks volumes as to her failure to do **anything at all** from March 20, 2008 when she was served, until June 19, 2008. Moreover, contrary to Casady's assertions that she filed her Appearance in the case and has been present at status hearings and has "diligently proceeded in defending herself in this matter," Casady failed to attend a hearing in this matter until June 19, 2008, and did not appear until June 30, 2008.

Finally, Casady's attempt to rely on her *pro se* status is less convincing given the fact that she is, herself, a lawyer, and regardless of her desire to either represent herself, or to obtain counsel, is aware of the pleading requirements of the Federal Rules. Inexplicably, Casady has continually flouted the Rules and unjustifiably delayed this litigation by failing to meet even the liberal deadlines she had been given.

C. **Plaintiffs Would be Prejudiced by Vacatur of the Default.**

Though prejudice to the party not in default is not an element of a party's burden in seeking default, it is a factor which the Court may consider in determining whether to vacate a default. *See, e.g. Lego Irrigational International Inc. v. First National Bank of Northbrook,* 108

F.R.D. 9, 11 (N.D. Ill. 1985). Given the present posture of this case, Plaintiffs would be seriously prejudiced by allowing Casady to reenter this litigation and pursue a motion to dismiss. Specifically, all other parties to the case have filed and briefed motions to dismiss, which have all been ruled upon by this Honorable Court. Written discovery has been exchanged by all parties and responded to by several parties, with remaining answers to be completed within the next few weeks. Plaintiffs' litigation strategy has depended to a large extent, on whether Ms. Casady will or will not be a party to this litigation. Allowing Casady to file a motion to dismiss while the remaining parties are undertaking oral discovery will place Plaintiffs in the position of having to conduct depositions without knowing Ms. Casady's status, and whether she will be a Defendant.

### D. Casady's Willful Neglect Undercuts Any Arguments That She Had Good Cause for Default.

Casady has blatantly and flagrantly ignored the mandates of the Federal Rules and this Honorable Court's orders from the inception of this case right up until the present. Indeed, she has "willfully refuse[d] to play by the rules" and her conduct justifies the default. *Carpenters Fringe,* 2007 U.S. Dist. WL 404038 at *4. Initially, Casady willfully attempted to avoid service of both the original Complaint and Plaintiffs' Motion for Default, she failed to file an appearance for three and a half months, and failed to even attempt to respond to the Amended Complaint until after the Plaintiffs had moved for default. These actions undercut any claim for relief based on "good cause" under Rule 55(c). Casady's behavior is nothing less than willful, and completely detracts from her argument that she has good cause for failing to respond to the Amended Complaint.

### CONCLUSION

The Plaintiffs have been unduly prejudiced by Casady's failure thus far in the litigation to respond in any meaningful manner to the Amended Complaint. Neither Casady's work schedule

9

nor her status as a *pro se* litigant constitute good cause for her over four month delay in responding. In fact, her efforts to make it impossible for Plaintiffs to serve her with pleadings, in addition to the fact that she is a licensed attorney, smack of nothing less than willful and deliberate negligence.

WHEREFORE, Plaintiffs respectfully request this Honorable Court deny Defendant Casady's Motion to Vacate Technical Default and instead enter a Default Judgment against Defendant Casady and assess fees and costs to Plaintiffs associated with Casady's avoidance of service, motions to extend, and now motion to vacate.

Date: August 6, 2008

s/Julie K. Bisbee
JULIE K. BISBEE, Attorney No. 06292401
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon, Suite 150
Itasca, Illinois  60143
630-735-3300
630-773-0980 (fax)
jbisbee@jsotoslaw.com
*One of the Attorneys for Plaintiffs*

STATE OF ILLINOIS    )
                     )
COUNTY OF DUPAGE     )

## CERTIFICATE OF SERVICE

The undersigned having first been duly sworn under oath, states that she electronically filed a complete copy of the foregoing **Plaintiffs' Response to Defendant Casady's Motion to Vacate Entry of Default** with the Clerk of the Court on **August 6, 2008** using the CM/ECF system, which will send notification of such filing to the attached service list.

                                          s/Julie K. Bisbee
                                          JULIE K. BISBEE, Attorney No. 6292401
                                          JAMES G. SOTOS & ASSOCIATES, LTD.
                                          550 East Devon, Suite 150
                                          Itasca, Illinois  60143
                                          630-735-3300
                                          630-773-0980 (fax)
                                          jbisbee@jsotoslaw.com
                                          *One of the Attorneys for Plaintiff*

B.F.G. v. BLACKMON, et al
Case No. 08-1565

**SERVICE LIST**

**Counsel for Village of Willow Springs, Officer Craig Widlacki & Detective Robert Tabordan**

Michael J. McGrath
Mark Sterk
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, Illinois 60805
708-424-5678
708-425-1898 (fax)

Paul Rettberg
Stacey McGlynn Atkins
Jason S. Callicoat
Querrey & Harrow, Ltd.
175 West Jackson Boulevard, Suite 1600
Chicago, Illinois 60604
312-540-7040
312-540-0578 (fax)

**Counsel for Willie Blackmon and Kimberly Smith-Foote**

James C. Stevens, Jr.
Barbara Greenspan
Illin494ois Attorney General's Office
Child Welfare Bureau
100 West Randolph Street, 11th Floor
Chicago, Illinois 60601
312-814-6788
312-814-6885 (fax)

**Counsel for Danielle Butts and Hull House**

Mitchell A. Orpett
Tribler Orpett & Meyer, P.C.
225 West Washington, Suite 1300
Chicago, Illinois 60606-3408
312-201-6413
312-201-6401 (fax)

Patrick Ross Grady
Steven C. Wolf
Wolf & Wolfe, Ltd.
25 E. Washington, Suite 700
Chicago, Illinois 60602
312-855-0500
312-855-0510 (fax)

**Counsel for J.S. & K.S.**

Michael D. Ettinger
Cheryl Ann Schroeder
Ettinger, Besbekos & Schroeder, P.C.
12413 South Harlem Avenue, Suite 203
Palos Heights, Illinois 60464
708-923-0368
708-923-0386 (fax)

Daniel Noland
Sonia A. Desai
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
312-876-1700
312-876-1155 (fax)

12

**Counsel for Rhonda Casady**
Silvia Mercado Masters
Stacy A. Benjamin
John J. Rock
Eileen Rosen
Rock Fusco, LLC
321 N. Clark Street, Suite 2200
Chicago, IL 60610
312-494-1000

*B.F.G. et al. v. Blackmon, et al.*
Case No.: 08-1565
Our File No.: 07-2045

# EXHIBIT A

STATE OF ILLINOIS    )
                     )SS.
COUNTY OF DUPAGE     )

    I, JIM DELORTO, being first duly sworn upon oath, do state and depose that I have personal knowledge of all facts which follow and, if called, I could testify to the following:

1. I am a partner in the investigative firm Delorto, Mazzola & Associates.

2. On March 19, 2008, James G. Sotos & Associates, Ltd., hired my firm to personally serve the Summons and Complaint upon the defendants in the matter *B.F.G. v. Blackmon, et al.*

3. On March 20, 2008 I traveled to 200 South Michigan Avenue, Suite 1240, Chicago, Illinois to serve Defendant Rhonda Casady ("Casady") at her office.

4. Upon my arrival, Casady's receptionist stated that she would call Casady on the phone to inquire about accepting service of the summons and thereupon called her on the telephone.

5. After the call, the receptionist then informed me that Casady did not work there.

6. In the early evening of March 20, 2008, I then traveled to 1511 W. Greenleaf, Chicago, Illinois to serve Casady at her residence.

7. Casady identified herself to me but refused to answer the door.

8. I had a conversation with Casady through her window where she became angry, inquired how we got her address and stated that she did not want the summons.

9. After repeated efforts to reason with Casady, I informed her that I was "serving her," placed the Summons and Complaint in the mailbox, and told her that the Summons was in her mailbox.

10. I then left Casady's residence with my partner, John Mazzola, and we drove around the block for approximately ten minutes, when we returned, the Summons and Complaint had been removed from the mailbox.

Further affiant sayeth not.

                                                      *James M. Delorto*
                                                      JIM DELORTO

SUBSCRIBED and SWORN to before
me this 13th day of June, 2008.

*Carrie A. Kinowski*
NOTARY PUBLIC

OFFICIAL SEAL
CARRIE A. KINOWSKI
Notary Public - State of Illinois
My Commission Expires May 31, 2011

*B.F.G. et al. v. Blackmon, et al.*
Case No.: 08-1565
Our File No.: 07-2045

# EXHIBIT B

STATE OF ILLINOIS     )
                      )SS.
COUNTY OF DUPAGE      )

### AFFIDAVIT OF JAMES DELORTO

I, JAMES DELORTO, being first duly sworn upon oath, do state and depose that I have personal knowledge of all facts which follow and, if called, I could testify to the following:

1. I am a partner of Delorto, Mazzola & Associates ("DMA"), a private investigation firm in Batavia, Illinois.

2. On June 13, 2008, DMA was hired by James G. Sotos & Associates, Ltd. to serve Rhonda Casady with a Motion for Default.

3. I traveled to Ms. Casady's home at 1511 W. Greenleaf in Chicago, Illinois on June 14, 2008 to serve the motion.

4. When I arrived at Ms. Casady's home, I rang the doorbell and could hear movement inside though there was no answer.

5. I placed the motion in Ms. Casady's mailbox, walked back to my car, and waited until I saw Ms. Casady retrieve the papers.

6. I then returned to Ms. Casady's residence and rang the doorbell in an attempt to confirm service.

7. Ms. Casady did not answer the door, but I could hear her inside trying to quiet a barking dog.

Further affiant sayeth not.

_____
JAMES DELORTO

SUBSCRIBED and SWORN to before me this 6th day of August, 2008.

_____
NOTARY PUBLIC

OFFICIAL SEAL
CARRIE A. KINOWSKI
Notary Public - State of Illinois
My Commission Expires May 31, 2011