**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| **B.F.G.**, by his parents and next friends, | ) | |
| **R.G** and **B.G.**, and **R.G.**, and **B.G.**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 08 C 1565 |
| | ) | |
| Willie Blackmon, et al., | ) | Judge Conlon |
| | ) | Magistrate Judge Nolan |
| Defendants. | ) | |

<u>**PLAINTIFFS' RESPONSE TO DEFENDANT CASADY'S MOTION TO DISMISS**</u>

Plaintiffs B.F.G., by his parents and next friends, R.G. and B.G., and R.G. and B.G., by

and through their attorneys, James G. Sotos and Julie K. Bisbee of JAMES G. SOTOS &

ASSOCIATES, LTD., and Lance D. Northcutt of BERG NORTHCUTT & BERG, in Response

to Defendant Rhonda Casady's Motion to Dismiss, state as follows:

**I. BACKGROUND**

Plaintiffs are a minor child, B.F.G., and his parents, R.G. and B.G., who, before B.F.G.

was falsely accused and "indicated" on a charge of sexual exploitation, were all well respected

members of their local neighborhood and school communities. (Am. Compl. ¶¶ 4-5.) On

January 15, 2007, Plaintiffs' minor neighbors, J.L.S. and N.S., then nine and seven years old,

respectively, were caught by their grandmother touching each others' genitals and using sexually

inappropriate language. (*Id.* ¶¶ 16-17.) When confronted by their mother, the children

purportedly attempted to explain their conduct by claiming that they had been abused by B.F.G.

when he had babysat them. (*Id.*) At the time, both J.L.S. and N.S. had histories of lying and

acting out sexually which predated the onset of B.F.G.'s having babysat them. (*Id.* ¶ 18.)

On January 16, 2007, J.L.S. and N.S.' parents, Defendants J.S. and K.S., reported the

alleged abuse to the Willow Springs, Illinois Police Department which referred the matter to the

Illinois Department of Children and Family Services ("DCFS"). (*Id.* ¶ 19.) During the ensuing

DCFS investigation, Defendant Blackmon, violated DCFS protocols intended to safeguard

against false accusations of sexual abuse. (*See Id.* ¶ 28 (a)-(p).) Subsequently, Defendant Butts

conducted fundamentally flawed victims sensitive interviews ("VSI's") of the minor accusers

during which she also ignored well established procedures and protocols designed to minimize the risk that innocent persons will be falsely charged with debilitating charges of sexual abuse. (*Id.* ¶ 29 (a)-(e).)   Further, medical examinations failed to corroborate J.L.S. and N.S.' allegations. (*Id.,* ¶ 31.)

Nonetheless, Defendant Blackmon inexplicably found the charge of sexual exploitation "indicated."  (*Id.* ¶ 35.) However, he did not also indicate the charges of "sexual penetration," "sexual molestation," "substantial risk of sexual injury," or "substantial risk of physical injury" as they were not supported by credible evidence. (*Id.*)   After DCFS made its "indicated finding" based on sexual exploitation, B.F.G.'s name was placed on the State Central Register. (*Id.* ¶ 35.) B.F.G. contested the "indicated finding" through an administrative hearing and sought to expunge his record. (*Id.* ¶¶ 41-44.)

Defendant Casady, a private attorney representing DCFS during B.F.G.'s administrative hearing, engaged in a pattern of "intentional, deliberate, reckless and illegal conduct" that deprived B.F.G. of various constitutional rights. (*Id.* ¶ 43 (a).)  Specifically, she indicated additional unauthorized charges of "sexual penetration," "sexual molestation," "substantial risk of sexual injury," and "substantial risk of physical injury" against B.F.G. despite the fact that DCFS' initial investigation produced no credible evidence to support those charges; she conspired to hide and cover up the refusal to produce evidence; she lied to the tribunal, refused to cooperate with the ALJ, tactically interrupted the presentation of B.F.G.'s case, and used other unconscionable delay tactics to cause the hearing to drag on for five months. (*Id.* ¶ 43 (a)-(i).) B.F.G. ultimately defeated the "indicated finding" lodged against him and his record was expunged. (*Id.* ¶ 44.)  Nonetheless, Defendant Casady's misconduct caused Plaintiffs unwarranted emotional distress due to the extended hearing, and prolonged humiliation of their family in their quest to clear B.F.G.'s name. (*Id.* ¶¶ 69, 79, 83, 89, 93, 99.)

## II. STANDARD OF REVIEW

When deciding a motion to dismiss, the Court must accept as true plaintiff's well-pleaded allegations. *Albright v. Oliver*, 510 U.S. 266, 268 (1994).  The Court must also "draw all inferences and resolve all ambiguities in plaintiff's favor." *Dimming v. Wahl*, 983 F.2d 86, 87 (7th Cir. 1993).  The complaint must "describe the claim in sufficient detail to give the defendant

'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(*citing Bell Atlantic Corp. v. Twombly*, —U.S.—, 127 S. Ct. 1955, 1964 (167 L.Ed.2d 929 (2007)). Further, the allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Id.* A plaintiff may state a claim arising § 1983 against a person who, under the color of law, subjects, or causes to be subjected, a citizen to a deprivation of constitutional rights. *Johnson v. Larabida Children's Hosp.*, 372 F.3d 894, 896 (7th Cir. 2004).

## III. ARGUMENT

### A. Casady, An Independent Contractor, Is Not Entitled To Assert An Immunity Defense

Casady has asserted both absolute and qualified immunities as grounds for dismissal of all claims against her. (Mot. to Dismiss, pp. 5-12.) As explored below, Casady, a private attorney working under contract for a state agency, DCFS, cannot claim immunity for her actions taken on behalf of the state[1] as neither history nor the purposes of immunity support her claim.

Section 1983 "'creates a species of tort liability that on its face admits of no immunities.'" *Richardson v. McKnight*, 521 U.S. 399, 404 (1997)(*citing Wyatt v. Cole*, 504 U.S. 158, 163 (1992)). Yet, immunity may be accorded based on a strong tradition of immunity, or strong policy reasons. *See id.* Nonetheless, the Supreme Court has repeatedly cautioned that immunities to civil rights liability must be applied sparingly because "a broad construction of § 1983 is compelled by the statutory language, which speaks of deprivations of '*any* rights, privileges, or immunities secured by the Constitution and laws.'" *Dennis v. Higgins*, 498 U.S. 439, 442 (1991). Moreover, the burden lies with the defendant to prove that there "'is anything special enough about [her] job . . . that would warrant' an extension of governmental immunity." *See Malinowski v. Deluca*, 177 F.3d 623, 627 (7th Cir. 1999)(*citing Richardson*, 521 U.S. at 412).

When determining whether a private defendant, acting under the color of law, is entitled

---

[1] Plaintiffs have alleged that Defendant Casady was either an employee, or an independent contractor of DCFS. (Am. Compl. ¶ 6.) Based on DCFS' and the Illinois Attorney General's refusal to provide Casady with a defense, Plaintiffs assume, though without the benefit of discovery have not established, that Defendant Casady is in fact an independent contractor.

to qualified immunity from suit under section 1983, courts must look to both the "history and the purposes that underlie government employee immunity." *Richardson*, 521 U.S. at 404. *See also, e.g. Payton v. Rush-Presbyterian-St. Luke's Med. Center*, 82 F. Supp. 2d 901, 905 (N.D. Ill. 2000); *Malinowski*, 177 F.3d at 626-627. First, the focus is on whether there is a "firmly rooted" tradition of immunity applicable to the actor's function. *Richardson*, 521 U.S. at 404. Second, the Court should assess whether immunity would "protect the 'government's ability to perform its traditional functions by providing immunity where necessary to preserve' the ability of government officials 'to serve the public good or to ensure that talented candidates were not deterred by threat of damages from suits from entering public service.'" *Id.* at 408 (*citing Wyatt*, 504 U.S. at 167).

### 1. There is No "Firmly Rooted" Tradition of Immunity Accorded to Private Attorneys Working for Child Protective Services.

In *Richardson,* the private actors in question were prison guards, employed by a private firm, working in a state institution. In rejecting the guards' claim to qualified immunity, the Court first quickly discerned that, despite a long history of privatized prison systems, there has been no tradition of immunity for privately employed prison guards, analogous to that available to government-employed prison guards. *Id.* at 405-407.

Similarly, child protective services were historically performed not by the government, but by private agencies. Kate Hollenbeck, Between a Rock and a Hard Place: Child Abuse Registries at the Intersection of Child Protection, Due Process, and Equal Protection, 11 Tex. J. Women & L., Fall 2001, at *5-6. It was not until between 1965 and 1966 that Illinois first established a child abuse registry, and it was 1974 before national guidelines were set for states which outlined expungement procedures for unsubstantiated reports of child abuse. *Id.* at *8-9.

As in the prison guard context, research has not uncovered any history of according immunity to privately employed child protection workers, although there is some tradition of immunity for government child protection workers who initiate proceedings, or serve in a judicial capacity as ALJ's. *See Doyle v. Camelot Care Centers, Inc*, 305 F.3d. 603, 623 (7th Cir. 2002) (immunity for ALJ in administrative hearing); and *Millspaugh v. County Dept. of Public Welfare of Wabash County*, 937 F.2d 1172, 76 (7th Cir. 1991)(absolute immunity for government

4

social workers who initiated child custody proceedings for in court conduct).

In this matter, Casady is a private actor, contracting with the state, and history provides no sign of any tradition of immunity for purposes serving in such positions. Accordingly, Casady's status as a private contractor prevents her from claiming any official immunities based on a firmly rooted tradition of immunity.

### 2. Immunity for Private DCFS Contract Attorneys is Not Necessary to Protect the Government's Ability to Provide Child Protective Services.

To determine whether immunity is necessary for a private actor in order to protect the provision of public services, the *Richardson* Court outlined a test with three somewhat related factors: 1) whether unwarranted timidity is less likely when a private company is subject to competitive market pressures; 2) whether talented candidates are deterred by the threat of damages suits from entering public service; and 3) whether lawsuits will distract the employees from their duties. *See Richardson*, 521 U.S. at 411.

### (A)     Unwarranted Timidity

The first factor, "unwarranted timidity" is sufficiently protected against by competitive market pressures faced by a private actor performing a government function as she is under the constant threat of losing her contract. In *Richardson*, the Court emphasized that one who is subject to being replaced will have "strong incentives to avoid overly timid, insufficiently vigorous, unduly fearful or 'nonarduous' employee job performance." *Id.* at 410.   Specifically, those who are "too timid will face threats of replacement by other firms with records that demonstrate their ability to do . . . a more effective job." *Id.* at 409.

Here, as an independent contractor, Defendant Casady must perform effectively to keep her contract. Were she not to perform her job with zeal, she would face the risk that another attorney, one who is more effective, will be waiting in the wings to take her position. The market then operates to create incentives for Defendant Casady to perform without timidity, and in doing so, serve the public good. Analysis under *Richardson* demonstrates that there is no need for immunity for independent contract attorneys who work for DCFS as market pressures on attorneys will require them to perform government functions effectively in order to keep their government contracts.

**(B)    Deterrence**

The second factor under *Richardson* concerns the effect of privatization on the "immunity-related need 'to ensure that talented candidates' are 'not deterred by the threat of damages suits from entering public service.'" *Id.* at 411 (*citing Wyatt*, 405 U.S. at 167). As part of its inquiry here, the *Richardson* Court emphasized the extent to which insurance-coverage requirements reduce the "employment-discouraging fear of unwarranted liability potential applicants face." *Id.* at 411. Attorneys, like any other entrepreneurs, whether working on a contract basis or not, have the opportunity and incentive to procure malpractice insurance, and it is generally well understood that the overwhelming majority of licensed attorneys carry malpractice insurance. Indeed, it should be expected that DCFS, like private companies hiring attorneys, would require, as a condition of the awarding of a government contract, that its independent contractor/attorneys carry certain specified levels of malpractice insurance. If that is not the case, and Plaintiffs have not yet had the opportunity to conduct discovery on this issue, DCFS's refusal to defend and indemnify Defendant Casady is even more culpable. Thus, as a private actor, any threat that a DCFS contract attorney might be deterred from aggressive performance of her duties is more than compensated for by the availability of insurance, and by the expectation that a responsible government entity, would not award a government contract to a private attorney without ensuring that the attorney carries certain specified levels of liability insurance.

**(C)    Distraction**

The final factor in determining whether the privatization of a government function warrants a grant of immunity under *Richardson* focuses on the negative effects of lawsuit-based distractions. *Id.* The *Richardson* Court discounted this factor, however, in concluding that the threat of "distracting workers from their duties is [not] enough virtually by itself to justify providing an immunity." *Id.* at 412. Indeed, in applying all of these factors, it must be remembered that recognition of immunity can eliminate an aggrieved victim's ability to obtain recompense for egregious wrongs inflicted by government workers, or by private persons performing government functions. *See Richman v. Sheahan*, 270 F.3d 430, 438 (7th Cir. 2001). It should not be surprising, therefore, that the mere fact that defending against a lawsuit can be

6

distracting is not weighed as heavily as the first two factors in determining whether immunity should apply. *Payton, supra,* p. 5, 82 F.Supp.2d at 907.

Against that backdrop, Defendant Casady's status as an independent contractor undermines her claim to immunity, whether qualified or absolute. The traditional reasons behind immunities, whether they are firmly rooted in tradition, or serve the public good by insulating government functions, are not present when a government agency, here DCFS, hires a contract attorney to represent it. First, the government's role in child protective services only emerged as a public function within the last few decades and, there is no firmly rooted tradition of immunity for private workers in the child protective field. Second, the public policy reasons supporting immunity for certain government employees are all but extinguished by the privatization of government jobs, especially in terms of a contract attorney. Therefore, as an independent contractor, Defendant Casady, a private attorney representing DCFS, has no colorable claim for immunity.

**B. Alternatively, Casady's Role as an Attorney for DCFS is not Prosecutorial in Nature, and Does Not Entitle Her to Absolute Immunity.**

Casady has argued that her role as a DCFS contract attorney is analogous to that of a prosecutor and as such she should be entitled to a grant of absolute immunity. (Mot. to Dismiss, pp. 5-7.) "[A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts," specifically in terms of their discretion to initiate proceedings and present evidence. *Butz v. Economou*, 438 U.S. 478, 515-517 (1978). However, in the instant case, Defendant Casady did not initiate the case, and her sole role was to defend DCFS against B.F.G.'s appeal.

Nonetheless, Casady has claimed absolute immunity for any and all claims arising out of her representation of DCFS during B.F.G.'s administrative appeal. (Mot. to Dismiss, p. 7.) Specifically, she argues that in her role as DCFS attorney, she prepared the Department's case, amended charges, presented evidence, and made decisions regarding the presentation of evidence which she claims are prosecutorial functions and should entitle her to immunity. (*Id.*) In support of her claims, she lists a litany of cases where non-prosecutors have been granted absolute immunity based on their arguably prosecutorial functions. (Motion to Dismiss, p. 6, *citing*

*Millspaugh*, 937 F.2d at 1175-76 (finding social worker has immunity for prosecutorial acts in child custody proceedings); *Simonsen v. Bd. of Educ. of the City of Chicago*, No. 01-C3081, 2002 WL 230777, at *10 (N.D.Ill. Feb. 14, 2002)(finding a school attorney who presents a case for a teacher's termination has immunity); and *Potts v. O'Malley*, No. 95-C5171, 1995 WL 745960, at *3 (N.D.Ill. Dec. 1, 1995)(finding child services workers who initiate and prosecute proceedings for protective orders are entitled to prosecutorial immunity).)

However, all of the cases Casady cites are clearly inapposite because the basis upon which the non-prosecutor was granted immunity in each of those case was that the defendant was the interested party who in fact "initiated proceedings." Further, none of the cases are analogous to the defense of administrative appeals of "indicated findings" of child protective services. The simple fact is that Casady was not performing a role analogous to that of a prosecutor in initiating proceedings against an individual, but rather, she was defending DCFS against B.F.G.'s attempt to have his "indicated finding" by DCFS expunged. In fact, DCFS regulations specifically state that during a DCFS administrative appeal, the Department's burden is in "justifying its refusal to amend, expunge or remove the record." 89 ILL.ADMIN.CODE 336 §100 (2008). Casady's duties then, in B.F.G.'s appeal, did not include initiating the charges, but simply to justify DCFS' refusal to remove B.F.G.'s name from the State Central Register.

Furthermore, any argument that Casady's "indication" of further findings against B.F.G. constitutes the initiation of proceedings, and thus entitles her to absolute immunity on those claims, must fail as the "indication" of findings . . against an alleged perpetrator of child abuse is solely based on the investigatory function of the DCFS under the Abused and Neglected Children Act. *See generally*, 325 ILCS 5/7.3. In that regard, it is well established that absolute immunity does not extend to a prosecutor's investigatory functions. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273(1993); *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Further, a DCFS representative such as Casady has only the power to "add or amend the allegations which support the indicated finding against the appellant." 89 ILL.ADMIN.CODE 336 §100. There is nothing in the DCFS regulations that suggests that anyone other than a DCFS investigator is allowed to add additional "indicated findings," or that "indicated findings" are outside the realm of investigation. Therefore, Casady's "indication" of four more charges against

B.F.G. is by statute investigatory, and she is not entitled to absolute immunity for those acts.

**C.  Alternatively, Casady Is Not Entitled to Qualified Immunity.**

A government official performing discretionary functions is "immune from damages as long as [her] conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known' when [she] acted." *Payton, supra, p. 5,* 82 F. Supp. 2d at 905.  Defendant Casady has asserted qualified immunity as a defense to B.F.G.'s claims that she violated B.F.G.'s due process right to a fair administrative hearing, and that she violated his right to be free from the stigma of an "indicated finding."  Each is addressed separately below.

**1. B.F.G.'s Right to a Fair Administrative Hearing.**

Casady does not dispute that Plaintiff B.F.G. had a due process right to a fair administrative proceeding. *See Peters v. Kiff*, 407 U.S. 493, 501 (1972).  Rather, Casady contends that Plaintiff's right was not violated because his claims are similar to *Brady* claims which are not actionable when they arise in the context of civil litigation. (Mot. to Dismiss, pp. 10-12.)  However, Casady mischaracterizes B.F.G.'s due process claim by reading it much too narrowly, by focusing on only one aspect of her behavior during his hearing, to wit, her failure to produce exculpatory evidence. (*Id.*)

The "hallmark of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." *Dupuy v. Samuels*, 397 F.3d 493, 507 (7th Cir. 2005)(*citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).  However, Casady, through a pattern of intentional and reckless behavior, systematically deprived B.F.G. of his due process right to a fair administrative hearing by precluding him from responding to the charges against him meaningfully.  She not only hid exculpatory evidence, but then conspired with other defendants to lie about the evidence, and alter their testimonies accordingly, which precluded B.F.G. from receiving a fair hearing and  unnecessarily prolonged his administrative hearing, thereby compounding his injuries.  (Am. Compl. ¶¶ 69, 79, 83, 89, 93, 99.)  *See Van Kast v. Bd. of Educ. of the City of Chicago*, No. 87-C2582, 1988 WL 2791, at *4 (N.D. Ill. Jan. 12, 1988)(the prolonged nature of an administrative hearing can deprive a plaintiff of constitutionally adequate process).

The evidence that Casady suppressed was in fact the toy stick of butter which was allegedly used to anally assault the alleged victims. (Am. Compl. ¶ 31.) The evidence, had it been produced before Casady initiated her concerted efforts to prevent its production to the tribunal, could have demonstrated that B.F.G. did not use it to assault anyone as it would have caused substantial damage that would have been detected by medical professionals, and thus seriously discredited the alleged victims' stories– and allowed B.F.G. to respond fully to the charges against him.

However, Casady refused to produce the evidence and proceeded to prolong the hearing another four months while she and K.S. and J.S. repeatedly lied and coordinated fabricated stories to cover up their refusal to produce it, causing extreme prejudice to B.F.G. and interfering with his right to a fair hearing. (Am. Compl. ¶ 43(d)-(e).) Casady's repeated continuances of the hearing, and repeated delay tactics during the presentation of B.F.G.'s evidence further created a situation where his response to the charges against him could not made appropriately. These acts together, in addition to the time required to correct them, severely deprived B.F.G. of a fair administrative hearing. B.F.G. has sufficiently claimed a violation of his right to a fair administrative hearing well beyond the mere failure to disclose exculpatory evidence, and Casady should not be granted immunity for her actions.

## 2. B.F.G.'s Right to be Free from an Indicated Finding Unsupported by Credible Evidence.

Plaintiff B.F.G. has asserted a liberty interest under the due process clause of the Fourteenth Amendment to be free from the consequences of an "indicated finding" by DCFS without credible evidence. (Am. Compl. ¶ 65.) Casady challenges B.F.G.'s claim based on the ruling in *Dupuy v. Samuels*, 397 F.3d 493, 506-7 (7th Cir. 2005) that upheld DCFS' "use of the credible evidence standard as the standard by which to 'indicate' or substantiate reports of child abuse." (Mot. to Dismiss, p. 9.) However, Plaintiffs are not challenging DCFS' credible evidence standard; instead, they challenge Casady's decision to add unauthorized additional "indicated findings" against B.F.G., after the DCFS investigator had found no credible evidence as to the additional findings, and which is outside her statutory authority. The unauthorized "indication" of additional findings after a proper finding of no credible evidence strongly

10

implicates a violation of due process or at the very least creates a strong presumption that
Casady's decision to indicate further charges was without reason.   As such, Casady's Motion to
Dismiss based on qualified immunity must be denied.

**D.  Plaintiffs Have Stated Conspiracy Claims Against Casady Under Section
1983 and Illinois Common Law.**

A section 1983 conspiracy claim requires allegations that "defendants directed themselves
toward an unconstitutional action by virtue of a mutual understanding." *Amundsen v. Chicago
Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000).   Traditional notice pleading standards apply to
conspiracy claims.  *Orange v. Burge*, No. 04-C0168, 2005 WL 742641, at *14 (N.D. Ill. Mar. 30,
2005).   It is "enough in pleading a conspiracy merely to indicate the parties, general purpose, and
approximate date so that the defendant has notice of what he is charged with." *Walker v.
Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002).   Similarly, under Illinois law, a claim for civil
conspiracy "must include allegations of an agreement and a tortuous act committed in
furtherance of that agreement." *Theriault v. Vill. of Schaumburg*, No. 02-C7058, 2002 WL
31803826, at *4 (N.D.Ill. Dec. 12, 2002).

Plaintiffs have explicitly alleged an agreement among defendants to deprive B.F.G. of his
right to a fair administrative hearing (Am. Compl. ¶ 82) and also an agreement among defendants
to maliciously prosecute B.F.G. (*Id.*, ¶ 92.)   Casady argues that Plaintiffs' conspiracy claims are
deficient because they fail to allege "any injury over and above the underlying torts at issue [or
cast] the net of liability over any additional defendants not otherwise reached." (Mot. to Dismiss,
p. 12.)  She further argues that a conspiracy cannot stand when the underlying claims have been
dismissed. (*Id.*, p. 13.)   However, not only have Plaintiffs sufficiently stated claims for
conspiracy against Casady under both section 1983 and Illinois law, but these claims have been
upheld against Casady's co-conspirators. Thus, Casady's motion must be denied.

**E.  Casady's Continuation of B.F.G.'s Administrative Hearing Constituted Malicious
Prosecution.**

Casady contends that Plaintiffs' malicious prosecution claims arising out of his
administrative hearing fail because there was probable cause for B.F.G.'s arrest. (Mot. to
Dismiss, p. 13.)  However, Casady overlooks the fact that the proceeding at issue was not brought

11

on the basis of B.F.G.'s arrest, but on the basis of the "indicated findings" against him. To state a claim for malicious prosecution, a plaintiff must show 1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; 2) the termination of the proceeding in favor of the plaintiff; 3) the absence of probable cause for such proceeding; 4) the presence of malice; and 5) damages. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921-22 (7th Cir. 2001). Plaintiff, contends, however, that the test for malicious prosecution in a DCFS administrative appeal must be adapted to reflect whether or not there was credible evidence to initiate or continue the proceeding as an "indicated finding" is based on "credible evidence" and not probable cause.

As such, regardless of whether there was probable cause for B.F.G.'s arrest, B.F.G. has stated a claim against Casady for the malicious prosecution of his administrative appeal. In response to Casady's causing further "indicated findings" against B.F.G. without credible evidence, he was forced to appeal these findings at his administrative hearing. The newly indicated findings of "sexual penetration," "sexual molestation," "substantial risk of Sexual Injury," and "Substantial Risk of Physical Injury," which were wrongfully indicated only upon Casady's own volition (Am. Compl. ¶ 43(a)) caused a substantial continuance in B.F.G.'s administrative hearing. Further, Casady "indicated" these findings after the DCFS investigator had determined there was no credible evidence to do so. The extra time required for B.F.G. to defend against the newly "indicated" findings, which were not based on a scintilla of credible evidence, caused undue delay in B.F.G.'s administrative hearing. B.F.G. was ultimately successful in his appeal, yet has suffered substantial damages due to the delay caused by Casady's malicious prosecution of him as evidenced by her adding "indicated findings" against him without credible evidence. Thus, B.F.G. has stated a claim for malicious prosecution as against Casady and her motion must be denied.

**F.  Plaintiffs Have Stated a Claim for IIED Against Casady.**

In seeking dismissal of Plaintiffs' IIED claim, Casady distorts and minimizes her actions during B.F.G.'s administrative appeal. She claims that her actions in adding "indicated findings" against B.F.G., seeking continuances, and/or presenting evidence do not rise to the level of extreme and outrageous conduct. (Mot. to Dismiss, p.14.) Casady's description of her actions

12

completely ignores the serious allegations against her regarding her conspiratorial efforts to suppress critical evidence; her tactical disruption of the presentation of B.F.G.'s case causing the administrative hearing to drag on for months (Am. Compl. ¶ 43(g)); and her behavior which caused her not only to be ejected from the hearing, but to be subject to review by the Illinois Attorney Registration and Disciplinary Commission. (*Id.*, ¶ 43(h).)

Plaintiff's allegations regarding Casady's behavior during B.F.G.'s administrative appeal, including her efforts to deprive B.F.G. of a fair administrative hearing through the suppression of evidence, and related conspiracies, satisfies the standard for alleging extreme and outrageous conduct. Therefore, Plaintiffs have satisfied their burden as to stating a claim for IIED in that Casady's intentional acts were extreme and outrageous, were intended to inflict severe emotional distress, and did in fact cause extreme emotional distress. *See Cangemi v. Advocate South Suburban Hosp.*, 264 Ill. App. 3d 446, 470 (1st Dist. 2006). Whether Casady's conduct was in fact "extreme and outrageous" is an ultimate issue of fact that should be explored during discovery. Casady's motion to dismiss as to this claim must be denied.

## IV. CONCLUSION

Defendant Casady may not claim immunity from her actions while acting as a contract attorney for DCFS during B.F.G.'s administrative appeal. Alternatively, even if she could claim official immunity, she was not acting as a prosecutor and should not be given absolute immunity. Similarly, Casady cannot claim qualified immunity as Plaintiffs have sufficiently alleged that her actions violated B.F.G.'s clearly established rights. Further, Plaintiff has sufficiently alleged causes of action for conspiracy, malicious prosecution, and intentional infliction of emotional distress.

WHEREFORE, Plaintiffs respectfully request this Honorable Court deny Defendant Casady's Motion to Dismiss in its entirety.

13

Date: August 18, 2008

s/Julie K. Bisbee
JULIE K. BISBEE, Attorney No. 06292401
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon, Suite 150
Itasca, Illinois  60143
630-735-3300
630-773-0980 (fax)
jbisbee@jsotoslaw.com
*One of the Attorneys for Plaintiffs*

STATE OF ILLINOIS          )
                           )
COUNTY OF DUPAGE           )

## CERTIFICATE OF SERVICE

The undersigned having first been duly sworn under oath, states that she electronically filed a complete copy of the foregoing **Plaintiffs' Response to Defendant Casady's Motion to Dismiss** with the Clerk of the Court on **August 18, 2008** using the CM/ECF system, which will send notification of such filing to the attached service list.

s/Julie K. Bisbee
JULIE K. BISBEE, Attorney No. 6292401
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon, Suite 150
Itasca, Illinois 60143
630-735-3300
630-773-0980 (fax)
jbisbee@jsotoslaw.com
*One of the Attorneys for Plaintiff*

**B.F.G. v. BLACKMON, et al**
**Case No. 08-1565**

## SERVICE LIST

**Counsel for Village of Willow Springs, Officer Craig Widlacki &**
**Detective Robert Tabordan**

Michael J. McGrath                    Paul Rettberg
Mark Sterk                            Stacey McGlynn Atkins
Odelson & Sterk, Ltd.                 Jason S. Callicoat
3318 West 95th Street                 Querrey & Harrow, Ltd.
Evergreen Park, Illinois 60805        175 West Jackson Boulevard, Suite 1600
708-424-5678                          Chicago, Illinois 60604
708-425-1898 (fax)                    312-540-7040
                                      312-540-0578 (fax)

**Counsel for Willie Blackmon and Kimberly Smith-Foote**

James C. Stevens
Barbara Greenspan
Illinois Attorney General's Office
Child Welfare Bureau
100 West Randolph Street, 11th Floor
Chicago, Illinois 60601
312-814-6788
312-814-6885 (fax)

**Counsel for Danielle Butts**

Mitchell A. Orpett                    Steven C. Wolf
Tribler Orpett & Meyer, P.C.          Wolf & Wolfe, Ltd.
225 West Washington, Suite 1300       25 E. Washington, Suite 700
Chicago, Illinois 60606-3408          Chicago, Illinois 60602
312-201-6413                          312-855-0500
312-201-6401 (fax)                    312-855-0510 (fax)

**Counsel for Dr. John G. & Kathleen A. Scaramella**

Michael D. Ettinger                   Daniel Noland
Cheryl Ann Schroeder                  Sonia Desai
Ettinger, Besbekos & Schroeder, P.C.  Molly E. Thompson
12413 South Harlem Avenue, Suite 203  Dykema Gossett PLLC
Palos Heights, Illinois 60464         10 South Wacker Drive, Suite 2300
708-923-0368                          312-876-1700
708-923-0386 (fax)                    312-876-1155 (fax)

16

**Counsel for Rhonda Casady**
Silvia Mercado Masters
Stacy A. Benjamin
John J. Rock
Eileen Rosen
Rock Fusco, LLC
321 N. Clark Street, Suite 2200
Chicago, IL 60610
312-494-1000