**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| B.F.G., by his parents and next friends, R.G and B.G., and R.G., and B.G., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 1565 |
| Willie Blackmon, Investigator, Division of Child Protection, ("DCP"), of the Illinois Department of Children and Family Services("DCFS"), in his individual capacity; Kimberly Smith-Foote, Investigative Supervisor (DCP), in her individual capacity; Danielle Butts, supervisor, Child Advocacy Center of Southwest Cook County, Illinois ("CAC"), in her individual capacity; Rhonda Casady, attorney for DCFS, in her individual capacity, Detective Tabordon and Officer Widlacki, police officers, Willow Springs Police Department, in their individual capacities; Village of Willow Springs, Illinois, a Municipal Corporation; and J.S. and K.S. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Conlon Magistrate Judge Nolan Jury Demand |
| Defendants. | ) | |

## PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS J.S. AND K.S.' COUNTERCLAIM

Plaintiffs/Counter-Defendants, B.F.G., by and through his parents R.G. and B.G., and

R.G. and B.G. by and through their attorneys James G. Sotos and Julie K. Bisbee of JAMES G.

SOTOS & ASSOC., LTD., and Lance D. Northcutt of BERG, NORTHCUTT & BERG, move

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the counterclaim of

Defendants/Counter-Plaintiffs J.S. and K.S. for failure to state a claim upon which relief can be

granted. In support thereof, Plaintiffs/Counter-Defendants state as follows:

## I. FACTS

Plaintiffs/Counter-Defendants, B.F.G., R.G. and B.G. ("Counter-Defendants") have brought an underlying action alleging various civil rights claims and supplemental state claims arising out of the false allegations of child abuse against B.F.G. by their neighbors J.L.S. and N.S. Defendants/Counter-Plaintiffs, J.S. and K.S. ("Counter-Plaintiffs"), are J.L.S. and N.S.' parents (collectively, the "S family"). (Countercl., ¶ 4.) Counter-Plaintiffs have asserted a counterclaim against Counter-Defendants for intentional infliction of emotional distress ("IIED"). (*Id.*, ¶¶ 1, 32.)

Counter-Plaintiffs' counterclaim as against B.F.G. is based initially on B.F.G.'s alleged abuse and exploitation of J.L.S. and N.S. (*Id.*, ¶¶ 7-12); his appeal of the DCFS "indicated" finding against him (*Id.*, ¶ 19); the alleged intimidation and interference by B.F.G. of the S family, as evidenced by his having maliciously stared them down, at times with his arms crossed (*Id.*, ¶¶ 22, 27); and, his participation in an alleged family conspiracy to cover up B.F.G.'s alleged abuse of J.L.S. and N.S. as evidenced by his failure to attend sexual offender diversion counseling.[1] (*Id.*, ¶ 29.)

The counterclaim is also based on the alleged conduct of B.F.G.'s parents, R.G. and B.G. Specifically, Counter-Plaintiffs challenge R.G.'s alleged preparation of her two minor children, E.G. and M.G. for their victim sensitive interviews (*Id.*, ¶ 17); as well as her alleged involvement

---

[1]To the extent that Counter-Plaintiffs attempt to assert a claim for conspiracy, they have failed to state a claim as they fail to "include allegations of an agreement and a tortious act committed in furtherance of that agreement." *Theriault v. Village of Schaumburg*, No. 02-C7058, 2002 WL 31803826, at *4 (N.D. Ill. Dec. 12, 2002). As argued below, B.F.G.'s failure to attend counseling does not reach the level of "extreme and outrageous conduct" as is required to state a claim for IIED.

in the family conspiracy to cover up the allegations of abuse against B.F.G. by allowing him to

refuse sexual offender diversion counseling. (*Id.*, ¶ 29.)  Further, Counter-Plaintiffs challenge

acts on the part of B.G. wherein he allegedly stared down members of the S family with his arms

crossed (*Id.*, ¶ 22, 25), took photographs of J.L.S. and N.S. (*Id.*, ¶ 23),  called the police on J.L.S.

he rode his minibike on the sidewalk, and forbade the S children from stepping on his property

(*Id.*, ¶ 24), yelled at J.L.S. and N.S. while they were sledding with their family and friends on

their property (*Id.*, ¶ 25), interfered with and made K.S.' guests feel uncomfortable (*Id.*, ¶ 26),

and allowed B.F.G. to refuse sexual offender diversion counseling.  (*Id.*, 29.)  However, based on

these allegations, Counter-Plaintiffs have failed to state a claim for the intentional infliction of

emotional distress as against all Counter-Defendants and as such, their counterclaim must be

dismissed.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) must be granted when

"it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Fox v. Tomczak*, 04-C7309, 2006 WL 1157466, at *1 (N.D.

Ill. Apr. 26, 2006).  The court shall consider "all facts alleged in the complaint and any

reasonable inferences drawn therefrom in the light most favorable to the plaintiff." *Id.*  A

plaintiff states a claim for IIED in Illinois when he has alleged the following: "1) extreme and

outrageous conduct; 2) intent or recklessness to cause emotional distress; 3) severe or extreme

emotional distress suffered by plaintiff; and 4) actual or proximate causation of the emotional

distress by defendant's conduct." *Sornberger v. City of Knoxville*, 434 F. 3d 1006, 1030 (7th Cir.

2006).

The conduct in question is evaluated on an objective standard based on all facts and circumstances. *See Thomas v. Fuerst*, 345 Ill. App. 3d, 929, 936 (1st Dist. 2004). Further, "liability does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions or trivialities.'" *Id. citing Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 89-90 (1976). A claim for IIED will only stand if the defendant's actions are "so outrageous in character, and extreme in degree, as to go beyond all possible bounds of decency." *Id.* The extreme and outrageous nature of the conduct is affected by the following factors: "1) the power and control the defendant has over the plaintiff; 2) whether the defendant reasonably believed his objective was legitimate; and (3) the defendant's awareness that the plaintiff is particularly susceptible to emotional distress." *Matthews v. Homecoming Financial Network*, No. 03-C3115, 2005 WL 2387688, at *7 (N.D.Ill. Sept. 26, 2005). Under Illinois law, a third-party may only assert a claim for IIED based on actions against a victim "when the defendant intentionally or recklessly causes severe emotional distress . . .to a member of [the direct victim's] immediate family who is present at the time." *Fox*, 2006 WL 1157466, at *6.

## III. ARGUMENT

### 1. Claims against B.F.G.

J.S. and K.S. may not proceed on a claim for IIED based on B.F.G.'s alleged abuse of their children. As stated above, a third-party may not state a claim for IIED waged against a family member unless he was present when the conduct was committed. *Id.*. Even viewing the facts in the light most favorable to J.S. and K.S., they in no way, shape or form allege that they were present at any time B.F.G. is alleged to have committed any sexual abuse against their children. Therefore, J.S. and K.S. have failed to state a claim for IIED based on B.F.G.'s alleged

4

abuse of J.L.S. and N.S.

In terms of the remaining claims based upon B.F.G.'s conduct, the threshold question is whether B.F.G.'s conduct was in fact extreme and outrageous. The specific conduct B.F.G. is alleged to have engaged in involves appealing the indicated finding against him, staring down members of the S family with his arms crossed, and not going to counseling. (Countercl. ¶¶ 19, 21-22, 27, 29.) None of this conduct can be deemed extreme and/or outrageous. First, B.F.G. had a right to appeal an indicated finding against him at the administrative level and his exercise of that right is within the "bounds of decency."

Second, staring down a person with one's arms crossed would be considered only a mere annoyance, or a threat, which is not actionable under Illinois law. *See Public Finance Corp.*, 66 Ill. 2d at 89-90. Indeed, extensive research has not uncovered a single case which even remotely suggested that analogous conduct might support a claim for IIED.

Third, Counter-Plaintiffs have simply alleged that they were told by the State's Attorney that B.F.G. had agreed to undergo counseling. (Counterclaim, ¶ 18.) They have failed to plead that B.F.G., in his refusal, was acting in an extreme or outrageous manner. Further, there is nothing in the counterclaim to suggest that B.F.G.'s failure to undergo counseling was directed at Counter-Plaintiffs, that he had any reason to believe that his refusal to undergo counseling was not legitimate, or that the conduct was any more than an annoyance to them. Certainly, B.F.G.'s refusal to undergo counseling is not outside the bounds of decency. Therefore, Counter-Plaintiffs have not stated a claim for IIED against B.F.G.

## 2. Claims Against R.G.

The first of two allegations directed against R.G. is that she "interfered with the DCFS

Investigation by preparing E.G. and M.G. for their victim sensitive interviews at the CAC." (*Id.*, ¶ 17.) Even if it were true, R.G.'s conduct was not extreme and outrageous; indeed, there is nothing improper alleged. A mother's alleged decision to prepare her children for an event of that nature cannot even arguably be considered an extreme and outrageous act directed at Counter-Plaintiffs. It is neither alleged that R.G.'s "preparation" of her children was directed at any of the Counter-Plaintiffs nor do they claim that it caused them any harm.

The second allegation directed against R.G. is that she conspired with B.F.G. and B.G. to cover up the alleged abuse of the S children by allowing B.F.G. to refuse counseling. (*Id.*, ¶ 29.) However, Counter-Plaintiffs do not, and cannot allege that R.G.'s failure to ensure that B.F.G. obtained counseling was directed at Counter-Plaintiffs. Moreover, as with the remainder of Counter-Plaintiffs' allegations, research has uncovered not a single case which begins to suggest that a parties' failure to undergo some form of corrective treatment could be considered extreme and outrageous, and outside the bounds of decency for purposes of supporting an IIED claim. Accordingly, Counter-Plaintiffs cannot, under these facts, state a claim against R.G. for IIED.

### 3.  Claims Against B.G.

Counter-Plaintiffs have alleged conduct on the part of B.G. which they claim was intentional and calculated to inflict extreme emotional distress upon them. Namely, they allege that B.G. has a goal of, and has initiated a campaign to intimidate the S family. (Countercl., ¶ 21, 27.) In support, they allege that B.G. has stared down members of the S family with his arms crossed (*Id.*, ¶ 22, 25), has taken photographs of J.L.S. and N.S. (*Id.*, ¶ 23), has called the police on J.L.S. for riding his minibike on the sidewalk, and forbidden J.L.S. and N.S. to step on his property (*Id.*, ¶ 24), has yelled at J.L.S. and N.S. while they were sledding with their family and

6

friends on their property (*Id.*, ¶ 25), interfered with and made K.S.' guests feel uncomfortable (*Id.*, ¶ 26), and allowed B.F.G. to refuse sexual offender diversion counseling.  (*Id.*, 29.)

As argued above, any allegations that Counter-Plaintiffs advance that arise out of B.G.'s conduct towards others are inactionable.  To survive a motion to dismiss based on B.G.'s alleged conduct against their children (*Id.*, ¶¶ 22-25) Counter-Plaintiffs must allege that they were present for said conduct. *See Fox*, 2006 U.S. Dist. WL 1157466, at *6. However, Counter-Plaintiffs have failed to allege they were present any of the times that B.G. had any contact with their children, aside from the incident where B.G. yelled at J.L.S. and N.S. while they were sledding as a family with friends. (*Id.*, ¶25.)  Aside from the sledding incident, where J.S. and K.S. were present, the claim for IIED based on B.G.'s alleged conduct toward the children cannot stand.  Further, any of Counter-Plaintiffs' claims against B.G. for his alleged conduct toward their friends (*Id.*, ¶¶ 21, 25-26) must also fail because Counter-Plaintiffs have not alleged that any of these friends, not members of the direct victim's family, sustained physical harm. *See* Restatement (Second) of Torts, § 46(2) at 72 (1965)(liability attaches only if one intentionally, or recklessly, causes severe emotional distress . . . to any other person, not a member of the direct victim's family, present at the time, if such distress results in physical harm).

The only remaining allegations against B.G. are his intimidation of the S family through staring them down with his arms crossed,  yelling at the S children while they were sledding on their property, and his alleged failure to ensure that  B.F.G. received counseling.  However, Counter-Plaintiffs have not plead any conduct on the part of B.G. that was extreme or outrageous and thus their claim for IIED based on his actions must fail.

As stated above, allegedly staring down one's neighbors, while perhaps unpleasant,

certainly does not qualify as extreme or outrageous behavior. At its very worst, it could only be described as a mere threat. Mere threats, however, are not considered extreme and outrageous conduct. *See Public Finance Corp.,* 66 Ill. 2d at 89-90. The same applies to yelling at the S children—it is nothing outside the bounds of decency, particularly, where as here, all that is alleged is that he yelled at them to get off of their own property when they were with their parents. Indeed, B.G. is not alleged to have threatened the children, harmed them physically, or even been in close proximity to them. Even if the children felt threatened, and there is no allegation that they did, mere threats are not extreme and outrageous. *Id.*

Finally, B.G.'s failure to ensure that B.F.G. underwent counseling is not extreme and outrageous, or outside the bounds of decency, for the reasons described above. Further, without more than an allegation that the State's Attorney told the S family that B.F.G. would undergo counseling, Counter-Plaintiffs have not alleged that B.G. was unreasonable in his belief that B.F.G. was not required to undergo counseling. Counter-Plaintiffs have therefore alleged no extreme and/or outrageous conduct on the part of B.G. and their Counterclaim must be dismissed.

## 4. Punitive Damages

To the extent that Counter-Plaintiffs have stated a claim for IIED, Counter-Defendants move to strike their claim for punitive damages as "the Illinois Supreme Court has held that punitive damages would be duplicative for an IIED claim." *Peck v. West Aurora Sch. Dist. 129,* 06-C1153, 2006 WL 2579678, at * 8 (N.D. Ill. Aug. 30, 2006)(*citing Knierem v. Izzo,* 174 N.E. 2d 125, 165 (Ill. 1961).

## IV. CONCLUSION

Counter-Plaintiffs have failed to state a claim for IIED against Counter-Defendants as they may not assert a claim for the emotional distress of third-parties.  Further, they have failed to state any conduct on the part of Counter-Defendants that would be considered extreme or outrageous, or that is beyond the bounds of decency.  Therefore, even viewing the pleading in the light most favorable to Counter-Plaintiffs, they have failed to state a claim upon which relief can be granted.

WHEREFORE, Counter-Defendants, hereby move this Honorable Court to Dismiss Counter-Plaintiffs' Counterclaim in its entirety.

Dated: September 3, 2008

s/Julie K. Bisbee
JULIE K. BISBEE, Attorney No. 6292401
James G. Sotos
JAMES G. SOTOS & ASSOCIATES, LTD.
550 East Devon, Suite 150
Itasca, Illinois  60143
630-735-3300
630-773-0980 (fax)
jbisbee@jsotoslaw.com
*One of the Attorneys for Plaintiff*