IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| B.F.G., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No.: 08 C 1565 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| WILLIE BLACKMON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

B.F.G. by his parents and next friends, R.G. and B.G., sue, *inter alia*, Rhonda Casady, an attorney who represented the Illinois Department of Children and Family Services ("DCFS") in B.F.G.'s administrative appeal from a DCFS credible evidence finding of sexual exploitation against B.F.G. Plaintiffs allege Casady violated B.F.G.'s due process right under 42 U.S.C. § 1983 by adding unauthorized charges against B.F.G. in his administrative appeal (Count IV), depriving B.F.G. of a fair hearing in his administrative appeal (Count VI), and conspiring to deny B.F.G. a fair administrative hearing (Count VII). Plaintiffs allege state law claims against Casady for malicious prosecution (Count VIII), conspiracy (Count IX), and intentional infliction of emotional distress ("IIED") (Count XI). Casady moves to dismiss plaintiffs' amended complaint for failure to state a claim. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following allegations are derived from plaintiffs' amended complaint. B.F.G., a minor, babysat minors J.L.S. and N.S. over a period of five months between July and November 2006. On January 15, 2007, J.L.S. and N.S. were found touching each other in their genital areas

and using sexual language. When K.S., the children's mother, questioned them, they stated they had been abused by B.F.G. J.L.S. and N.S. stated the abuse included forcing toy objects into J.L.S.'s anus and forcing N.S. to do naked flips. At the time of the allegations, J.S. and K.S. knew their children had histories of fabricating false stories and acting out sexually, which predated B.F.G.'s babysitting.

J.S. and K.S. reported the accusations to Willow Springs Police Officer Craig Widlacki and gave him toys, which they said had been inserted into J.L.S.'s anus. On the same day, Widlacki contacted DCFS. DCFS conducted an investigation and concluded a charge of sexual exploitation against B.F.G. was supported by credible evidence and thus "indicated." The effect of an indicated finding is placement on the State Central Register of persons against whom DCFS has indicated abuse or neglect charges and which is disclosed to schools and employers. Widlacki arrested B.F.G. for criminal sexual assault. The state did not pursue charges against B.F.G.

B.F.G. appealed the indicated finding under the Abused and Neglected Child Reporting Act, 325 ILCS 5/7.16. Casady is an attorney and employee, and/or independent contractor, providing attorney services to DCFS. She represented DCFS in B.F.G.'s administrative appeal. Despite knowing DCFS previously found no credible evidence of sexual penetration, Casady unilaterally added charges of sexual penetration, as well as sexual molestation, substantial risk of sexual injury, and substantial risk of physical injury against B.F.G. Casady stated DCFS's case-in-chief would last three hours but disrupted the presentation of evidence through repeated unconscionable delay tactics, which caused the hearing to last several months.

2

At the administrative hearing, K.S., J.S., and DCFS investigator Willie Blackmon falsely testified about inconsistencies in the childrens' sexual abuse accounts. Casady conspired with other defendants to present false testimony and suppress exculpatory evidence, lied to the administrative law judge ("ALJ") to cover up the circumstances surrounding the suppression, and refused to cooperate with the ALJ's efforts to investigate the suppression. The ALJ ultimately ejected Casady from the hearing because of her obstreperous conduct. The ALJ found DCFS had not met its burden of proving the allegations against B.F.G.

## DISCUSSION

### I. Legal Standard

A motion to dismiss may challenge the complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, all well-pleaded allegations are accepted as true, and all reasonable inferences are drawn in plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The complaint need only provide a short and plain statement giving defendants fair notice of the nature and basis of the claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007); *Tamayo*, 526 F.3d at 1081; Fed. R. Civ. P. 8(a)(2). This requires more than labels and conclusions, or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp.*, 127 S. Ct. at 1964-65. Factual allegations must be sufficient to state a claim to relief that is plausible on its face, rather than merely speculative. *Id.* at 1965, 1974; *Tamayo*, 526 F.3d at 1083.

### II. Immunity

Casady claims absolute prosecutorial immunity or, alternatively, qualified immunity for her alleged conduct because she represented DCFS, a state agency, in B.F.G.'s administrative

3

appeal. She argues her function to prove the indicated finding of sexual exploitation equates to a prosecutorial role.

Prosecutors may be entitled to either absolute or qualified immunity from civil liability under § 1983 for actions taken pursuant to their official duties. *Mendenhall v. Goldsmith*, 59 F.3d 685, 689 (7th Cir. 1995). Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct intimately associated with the judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Mendenhall*, 59 F.3d at 689. Absolute immunity does not apply to a prosecutor's administrative or investigative functions. *Mendenhall*, 59 F.3d at 689. Absolute immunity allows prosecutors to exercise requisite discretion in initiating and continuing proceedings without harassment or intimidation. *Butz v. Economou*, 438 U.S. 478, 512, 515, 517 (1978). Absolute prosecutorial immunity applies even if the prosecutor initiates charges maliciously, unreasonably, without probable cause, or based on false testimony or evidence. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). Only when a prosecutor acts in the clear absence of all statutory authority immunity lost. *Id.* at 743.

Absolute prosecutorial immunity extends beyond the criminal context. Government officials performing functions analogous to a prosecutor's duties are also entitled to absolute immunity with respect to those functions. *See, e.g., Butz*, 438 U.S. at 517 (Department of Agriculture attorney who initiated and pursued enforcement proceeding to revoke commodity merchant's registration may assert absolute prosecutorial immunity); *Millspaugh v. County Dep't of Public Welfare of Wabash County*, 937 F.2d 1172, 1175-76 (7th Cir. 1991) (social worker who

initiated child custody proceedings may assert absolute prosecutorial immunity for in-court conduct).

Qualified immunity shields government officials performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights known to a reasonable person. *Malinowski v. DeLuca*, 177 F.3d 623, 626 (7th Cir. 1999). Like the justification for absolute prosecutorial immunity, the policy considerations underlying qualified immunity include protecting the public from unwarranted timidity on the part of public officials and ensuring talented candidates are not deterred from entering public service by the threat of personal liability. *See Richardson v. McKnight*, 521 U.S. 399, 409-11 (1997).

Immunity for private actors was discussed in *Richardson*. *Id.* There, a prison inmate brought a § 1983 action against prison guards employed by a private corporation under contract with the state to manage the prison. *Id.* at 408-09. The guards' qualified immunity claim was rejected because no firmly rooted tradition of immunity existed for private prison guards. *Id.* at 407. Indeed, both government and private contractors historically have performed prison management. *Id.* Threat of competition from other private prison management firms would prevent unwarranted timidity from the guards, and private insurance and compensation ensured talented employees would not be deterred from employment. *Id.* at 409-13; *accord Malinowski*, 177 F.3d at 627 (employees of private property inspection agency performing services for public entity not entitled to qualified immunity).

The *Richardson* decision was limited to its facts, *i.e.*, a private firm, systematically organized to perform for profit, and in competition with other firms, a major, lengthy administrative task with limited direct supervision by the government. 521 U.S. at 413. The

case did not involve a private individual briefly associated with the government, serving as an adjunct to the government, or acting under close official supervision. *Id.*

Proper application of the *Richardson* analysis to Casady's immunity claim is premature given the undeveloped state of the record. Plaintiffs allege Casady is an attorney and employee, and/or an independent contractor, providing attorney services to DCFS. Am. Compl. ¶ 6. She represented DCFS in B.F.G.'s administrative appeal. *Id.* This is the extent of information provided in the amended complaint regarding Casady's relationship with DCFS. On a motion to dismiss for failure to state a claim, the truth of these allegations must be assumed, and no further information may be considered. *Tamayo*, 526 F.3d at 1081.

Even assuming a tradition of immunity for private attorneys working for child protective services, there is no information regarding Casady's autonomy and relationship with DCFS – dispositive factors in *Richardson*. *See Sain v. Wood*, 512 F.3d 886, 892-93 (7th Cir. 2008) (lack of record regarding relationship between state detention facility and private company providing services at the facility precluded challenge on appeal to private clinical director's qualified immunity claim). The degree of DCFS's supervision over Casady and her reporting requirements are unknown. The volume of Casady's work for DCFS and whether she competes with other firms for the work is not ascertainable. Whether Casady works alone or for a firm providing services to DCFS is unclear. The terms of her contract or fee arrangement with DCFS are unknown. The dearth of factual information prevents resolution of Casady's immunity claims at this juncture.

### III. Malicious Prosecution

Count VIII (malicious prosecution) alleges Casady caused judicial proceedings against B.F.G. without probable cause and with malice. To prevail on a claim of malicious prosecution, plaintiffs must show the commencement or continuance of an original criminal or civil judicial proceeding by Casady, termination of the proceeding in plaintiffs' favor, the absence of probable cause, malice, and damages. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921-22 (7th Cir. 2001) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). Probable cause provides a complete defense to malicious prosecution claims. *Id.* at 926. As held in granting J.S. and K.S.'s motion to dismiss Count VIII (malicious prosecution), the amended complaint reflects probable cause existed for B.F.G.'s arrest. Count VIII (malicious prosecution) against Casady is dismissed.

### IV. Conspiracy

Counts VII (§ 1983 conspiracy) and IX (state conspiracy) allege a conspiracy to maliciously prosecute B.F.G. and deprive B.F.G. of a fair administrative hearing through false testimony and suppression of exculpatory evidence. For private actors to be liable under § 1983, plaintiffs must show they were deprived of a Constitutional right and the deprivation was under color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982). A conspiracy between a private party and a state official to violate a Constitutional right fulfills both requirements. *Id.* Notice pleading requires a claim of conspiracy to identify the parties, the purpose, and the approximate date of agreement to form the conspiracy. *Estate of Sims v. County of Bureau*, 506 F.3d 509, 517 (7th Cir. 2007).

7

As held in denying in part J.S. and K.S.'s motion to dismiss Counts VII (§ 1983 conspiracy) and IX (state conspiracy), the amended complaint provides fair notice of the nature and basis of the claim. Counts VII and IX against Casady stand with respect to conspiracy to deprive B.F.G. of a fair administrative hearing. However, a conspiracy claim cannot stand when the underlying claim is dismissed. *U.S. v. All Meat and Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 829 (N.D. Ill. 2007). Count VIII (malicious prosecution) is dismissed. Counts VII (§1983 conspiracy) and IX (state conspiracy) against Casady, therefore, fail with respect to conspiracy to maliciously prosecute.

## V.     Intentional Infliction of Emotional Distress

Casady argues Count XI (IIED) does not allege extreme and outrageous conduct. A claim for IIED requires three elements: (1) the conduct must be extreme and outrageous; (2) the actor must intend to inflict severe emotional distress, or know there is a high probability the conduct will cause severe emotional distress; and (3) the conduct must cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Casady claims amending charges, seeking continuances, and presenting evidence are not extreme and outrageous acts. Casady mischaracterizes plaintiffs' allegations. Assuming the truth of plaintiffs' amended complaint, for purposes of this motion, Casady charged B.F.G. for sexual misconduct even though DCFS's investigation yielded no credible evidence, she presented false testimony, she hid key physical evidence, and she lied to the court about it. These allegations state a plausible claim for IIED. Count XI (IIED) was sustained against K.S. and J.S.'s motion to dismiss. Count XI (IIED) against Casady stands.

8

## CONCLUSION

Casady's motion to dismiss the amended complaint is granted in part and denied in part. The undeveloped record and procedural posture prevent resolution of Casady's immunity claims at this juncture. Count VIII (malicious prosecution) against Casady is dismissed because the amended complaint reflects probable cause for B.F.G.'s arrest. Counts VII (§ 1983 conspiracy) and IX (state conspiracy) against Casady stand in part because they state a claim with respect to conspiracy to deprive B.F.G. of a fair administrative hearing. Counts VII (§ 1983 conspiracy) and IX (state conspiracy) against Casady are dismissed in part because they fail to state a claim with respect to conspiracy to maliciously prosecute. Count XI (IIED) against Casady stands because plaintiffs sufficiently allege extreme and outrageous conduct.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

September 8, 2008